UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05  11067  PBS

VOLKSWAGEN AG, VOLKSWAGEN OF AMERICA, :
INC. and BUGATTI INTERNATIONAL, S.A., :
: CASE NO.
Plaintiffs, :
:
v. : MAGISTRATE JUDGE _____
:
: **JURY TRIAL DEMANDED**
THE BUGATTI, INC. :
: RECEIPT # _____
Defendant. : AMOUNT $ 250
: SUMMONS ISSUED  yes
: LOCAL RULE 4.1 _____
  WAIVER FORM _____
  MCF ISSUED _____
**COMPLAINT FOR DAMAGES AND** BY DPTY. CLK. _____
**INJUNCTIVE RELIEF** DATE 5/22/05

Volkswagen AG ("VWAG") and Volkswagen of America, Inc. ("VWoA") (VWAG and VWoA collectively "Volkswagen") and Bugatti International, S.A. ("Bugatti International"), (VWAG, VWoA and Bugatti International collectively "Plaintiffs"), by and through their undersigned attorneys, file this civil action against The Bugatti, Inc. ("Defendant"), as follows:

## THE PARTIES

1. VWAG is a corporation organized and existing under the laws of Germany, with a principal place of business in Wolfsburg, Federal Republic of Germany.

2. VWoA is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business in Auburn Hills, Michigan.

3. Bugatti International is a corporation organized and existing under the laws of Luxembourg, with a principal place of business in Luxembourg.

4.      Upon information and belief, Defendant is a Massachusetts corporation with its principal place of business at 100 Condor Street, East Boston, Massachusetts 02128.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case involves trademarks and arises under the laws of the United States, *inter alia*, 15 U.S.C. §§ 1114, 1117 and 1125.

6.      This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims falling within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the Constitution of the United States.

7.      This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant: is a corporation organized under the laws of the forum state; transacts business within and has availed itself of this forum; contracts to sell goods and render services within the forum, both through traditional means and through the Internet; engages in a persistent course of conduct in this forum; expects, or should reasonably expect, its acts to have legal consequences in this forum; and maintains substantial, systematic and continuous minimum contacts in this forum.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims are based here.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Volkswagen AG's Business and Marks

9. VWAG is a manufacturer of automobiles, which have achieved worldwide fame and recognition. VWAG is recognized worldwide as the source of VW automobiles. VWAG is the owner of the letter mark VW and the VW Concentric Circle Logo (collectively, "the VW Marks"). VWAG owns hundreds of trademark registrations throughout the world for the VW Marks, including in the United States the following U.S. Trademark Registration Nos.: 1,883,332 dated March 14, 1995, which covers *inter alia* International classes 12 and 18 and is incontestable; 2,100,963 dated September 30, 1997, which covers International class 12 and is incontestable; 2,299,293 dated December 14, 1999, which covers *inter alia* International class 12; 2,181,615 dated March 2, 2004, which covers *inter alia* International class 12; 2,849,974 dated June 8, 2004, which covers *inter alia* International classes 12 and 18; 2,930,238 dated March 8, 2005, which covers International class 11; and 2,932,356 dated March 15, 2005, which covers *inter alia* International class 12. VWAG is also the owner of the following pending U.S. Trademark Application Nos.: 79001131 for the VW Logo in International classes 12 and 18 *inter alia* and 79001133 for the mark VW which covers *inter alia* International class 12 and 79001521 for a color version of the VW Logo in International class 12 *inter alia*.

3

10. VWAG has expended substantial financial resources developing, testing and promoting its automobiles under the distinctive VW Marks. As a result of VWAG's worldwide promotional activities under the VW Marks, and its adherence to the highest standards of quality control in the design and engineering of its VW line of automobiles, the VW Marks have become famous, and are widely recognized by the public, the trade and media.

11. The VW Marks became famous long prior to Defendant's unauthorized adoption and use of the VW Marks for its leather goods.

### Volkswagen of America's Business, Use and Enforcement Activities

12. VWoA is the United States importer and distributor of automobiles manufactured by VWAG, and, as such, is charged with protecting the trademarks associated with those automobiles in the United States.

13. VWoA is authorized to use the VW Marks in the United States and VWoA has also expended substantial financial resources actively advertising and promoting automobiles manufactured by VWAG under the VM Marks. VWoA also uses the VW Marks to promote accessories and gear including, *inter alia*, leather wallets and CD cases.

### Bugatti International's Business and Marks

14. In the early part of the 20th century, Mr. Ettore Bugatti founded a company in Molsheim, France, for the design, manufacture and sale of racing automobiles in connection with the BUGATTI mark. During this time, the BUGATTI mark became world famous and synonymous

4

with excellence in design and extravagant luxury, which connotations persist until this day. BUGATTI branded automobiles continued to be raced until the late 1950s.

15.   Prior to his death in 1947, Ettore Bugatti's company had transitioned to the design and manufacture of aircraft engines and aircraft. In 1963, Messier-Hispano-Bugatti assumed all rights, title and interest in the BUGATTI mark and continued in the aircraft manufacturing business.

16.   In 1987, Bugatti International was founded for the purpose of designing, manufacturing, and selling world-class luxury automobiles in the tradition of Ettore Bugatti.

17.   On or about July 1, 1988, Bugatti International acquired the U.S. trademark registrations, Reg. Nos. 1,407,200, 1,440,535, and 1,444,0536, for the marks BUGATTI and the logo mark

**BUGATTI**

, which is a Red Oval Logo bearing the word BUGATTI and the stylized initials "EB" (collectively referred to as the "BUGATTI Marks").

18.   In 1992, Bugatti International's Italian subsidiary, Bugatti Automobili, began manufacturing automobiles and had built 139 before 1995 when it incurred financial difficulties. One of these automobiles was exhibited in the U.S. in 1993 at the Detroit Auto Show. In 1996, Bugatti International's other Italian subsidiary, Ettore Bugatti SrL, signed a license agreement with Ralston Investments Inc. to operate a Bugatti boutique in Honolulu, Hawaii, specializing in luxury, branded products including pens, champagne, and watches.

19. In 1998, Ettore Bugatti SrL assigned its United States trademark registrations for EB ETTORE BUGATTI Logo and EB Logo, Reg. Nos. 2026214 (since cancelled) and 1787760, respectively, to Bugatti International.

20. Bugatti International maintains priority rights in the BUGATTI Marks and is the owner of all right, title and interest to the BUGATTI Marks and to the related federal trademark registrations.

21. In addition, Bugatti International is the owner of all right, title and interest to over eight-hundred trademark registrations worldwide for its BUGATTI Marks.

22. In 1998, Bugatti International was purchased by VWAG and the original Bugatti factory of Ettore Bugatti in France was re-opened.

23. Pursuant to license, Bugatti International's affiliated companies and licensees, Bugatti Automobiles S.A.S., a French corporation, and Bugatti Engineering GmbH, a German company, began to design and manufacture BUGATTI branded automobiles.

24. The first new BUGATTI automobile was exhibited in Paris in 1998. Auto shows followed in 1999 in Geneva and Tokyo. The first BUGATTI automobile offered for sale, the VEYRON, was exhibited in January of 2000 at the Detroit Auto Show. The VEYRON bears as a badge on its grille the Red Oval Logo bearing the word BUGATTI and the stylized initials "EB." The list price for the VEYRON is more than $1 million. BUGATTI branded automobiles have been exhibited at the annual Pebble Beach Auto show in California since 2000. The VEYRON is

116333.00120/35675783v1
00067528.DOC / 2

considered a "Super Car" and holds the distinction of being the fastest production automobile on the market.

25. Bugatti International is the owner of pending U.S. trademark applications filed December 4, 1998, namely, Serial No. 75/599,753 for the mark BUGATTI for automobiles and U.S. Serial No. 75/983,482 for the mark BUGATTI for watches, jewelry and tie clips, printed materials, namely, brochures in the field of automobiles and subjects of interest to automotive enthusiasts, and decorative china plates, cups, saucers. Bugatti International is also the owner of pending U.S. trademark application Serial No. 78/175,475 for the logo mark,

**BUGATTI**

, filed October 17, 2002, for "leather goods, namely suitcases, bags, namely, athletic bags, travel bags, cosmetic cases sold empty, ladies' bags, namely, clutch bags, shoulder bags, purses, pocket wallets and toy cars, model cars for collectors, leather golf bags."

26. Bugatti International registered its distinctive trademark VEYRON with the U.S. Patent and Trademark Office under Registration No. 2,829,102, which issued April 6, 2004 for vehicles and toy model cars.

27. Bugatti International has expended substantial financial resources developing, testing, exhibiting, promoting and marketing its automobiles under the BUGATTI Marks. As a result of Bugatti International's worldwide promotional activities under the BUGATTI Marks, including in

7

the United States, and its adherence to the highest standards of quality control in the design and engineering of its BUGATTI line of automobiles, distinctiveness of the BUGATTI Marks and the fame of such marks have been further enhanced and extended, and are widely recognized by the public, the trade and the media.

28. Bugatti International is recognized worldwide as the source of BUGATTI automobiles.

**Defendant Bugatti, Inc.'s Unauthorized Use of the VW Marks**

29. On information and belief, Defendant is fully aware that VWAG is the owner of the VW Marks.

30. On information and belief, Defendant is fully aware that the VW Marks are famous marks.

31. On information and belief, Defendant is fully aware that VWAG owns U.S. Trademark Registration No. 1,883,332 and 2,849,974 for leather goods.

32. On information and belief, Defendant has applied the VW Marks to leather goods and accessories. Such application is shown in Defendant's advertisements and catalogs and on the websites <www.Bugatti.com> and <www.atalante.com> operated by Defendant.

33. On information and belief, Defendant has applied the VW Marks to leather goods and accessories because the VW Marks are famous marks.

8

34. On information and belief, Defendant is fully aware that it is not authorized to apply the VW Marks to any goods, or to manufacture, advertise and sell goods identified by the VW Marks.

35. Defendant includes pictures of certain leather goods bearing the VW Marks on its websites <www.Bugatti.com> and <www.atalante.com>.

36. The <www.atalante.com> website is linked to the <www.Bugatti.com> website and is accessed by clicking on "Distributors." On the <www.atalante.com> website Defendant has provided the following instructions:

> This site is provided compliments of your Bugatti® Atalante™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.
>
> Distributors are encouraged to copy and paste pictures and descriptions from this web site. To save a copy of a picture to your own hard disk just click and hold down your mouse button on the picture you'd like to use and choose save, name it with a name you can remember or write down, and save it to a folder where you will be sure to find it – or to your desktop.

As of April 15, 2005, on the <www.atalante.com> website, Defendant was providing the following instructions:

> This site is provided compliments of your Atalante ™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.
>
> Distributors are encouraged to use pictures and descriptions from this web site.

37. Such instructions on Defendant's <www.atalante.com> website encourage and induce Defendant's distributors to copy and paste pictures of certain leather goods bearing the VW Marks without authorization from Volkswagen. Defendant is fully aware that such copying and pasting of pictures of certain leather goods bearing the VW Marks is without authorization of Volkswagen.

9

38. Long after Volkswagen's adoption, use and registration of the VW Marks, with full knowledge of Volkswagen's prior rights in the VW Marks, and without Volkswagen's authorization or consent, Defendant commenced use of the VW Marks as trademarks in connection with its business activities in the Commonwealth of Massachusetts and elsewhere in the United States.

39. By reason of Volkswagen's prior rights in and to the distinctive and famous VW Marks, Defendant's use of the VW Marks as trademarks in connection with its business is likely to cause confusion and mistake in the minds of the purchasing public, and tends to and does falsely create the impression that the goods and services of the Defendant are provided, sponsored or licensed by Volkswagen, or are otherwise affiliated with or authorized by Volkswagen.

**Defendant Bugatti, Inc.'s Unauthorized Use of the Bugatti Marks**

40. Defendant Bugatti, Inc. is a purveyor of leather goods and accessories.

41. Defendant previously owned a U.S. Trademark Registration No. 1,155,090 for the mark BUGATTI for leather goods and accessories. Such Trademark Registration was cancelled on June 29, 2002. Defendant is fully aware of the cancellation of its Trademark Registration.

42. Defendant filed an application Serial No. 76/536,905 for registration of the mark BUGATTI for leather goods and accessories on July 25, 2003, over one year after Trademark Registration No. 1,158,090 was cancelled.

43. Application Serial No. 76/536,905 was suspended on September 15, 2004. As a consequence of such suspension, Defendant cannot obtain a registration of the mark BUGATTI for leather goods and accessories until such time as the suspension is lifted.

10

44. Since June 29, 2002, Defendant has had no U.S. Trademark Registration of the mark BUGATTI for leather goods and accessories. Defendant is fully aware that it has no such U.S. Trademark Registration.

45. Defendant has no U.S. Trademark Registration for a Red Oval Logo bearing the word BUGATTI. Defendant has no pending application for U.S. Trademark Registration of a Red Oval Logo bearing the word BUGATTI.

46. Defendant is fully aware that it has no U.S. Trademark Registration for a Red Oval Logo bearing the word BUGATTI. Defendant is also fully aware that it has no pending application for U.S. Trademark Registration of a Red Oval Logo bearing the word BUGATTI.

47. Despite the fact that Defendant has no U.S. Trademark Registration for the mark BUGATTI, Defendant has deliberately and willfully falsely asserted that it has a U.S. Trademark Registration for the mark BUGATTI by using the ® symbol with the word BUGATTI and on a Red Oval Logo bearing the word BUGATTI. Such false claim of registration has occurred in Defendant's advertisements and catalogs and on websites <www.Bugatti.com> and <www.atalante.com> operated by Defendant which have been updated and/or copyrighted by Defendant as recently as April 15, 2005, subsequent to the cancellation of Defendant's U.S. Trademark Registration No. 1,158,090 and subsequent to the filing of U.S. Trademark Application Serial No. 76/536,905.

48.     Defendant's false use of the ® symbol is willful and deliberate and made with full knowledge and awareness that Defendant has no U.S. Trademark Registration for the mark BUGATTI and/or the Red Oval Logo bearing the word BUGATTI.

49.     Defendant adopted a Red Oval Logo bearing the word BUGATTI subsequent to and with the full knowledge and awareness that Bugatti International had previously adopted a Red Oval Logo bearing the word BUGATTI.

50.     In operating the website <www.Bugatti.com>, Defendant has without authorization from Bugatti International used Bugatti International's registered trademark VEYRON on Defendant's website and has provided links to photographs of Bugatti International's VEYRON automobile identified by the Red Oval Logo bearing the word BUGATTI. Such links were provided by Defendant in order to associate itself with the VEYRON automobile, and with Plaintiff Bugatti International, when in fact, no such association exists or has been authorized.

51.     In operating the website <www.atalante.com>, Defendant has provided the following instructions to its distributors:

> This site is provided compliments of your Bugatti® Atalante™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.
>
> Distributors are encouraged to copy and paste pictures and descriptions from this web site. To save a copy of a picture to your own hard disk just click and hold down your mouse button on the picture you'd like to use and choose save, name it with a name you can remember or write down, and save it to a folder where you will be sure to find it – or to your desktop.

Defendant has also instructed its distributors:

> This site is provided compliments of your Atalante™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.

12

Distributors are encouraged to use pictures and descriptions from this website.

52. The instructions provided to Defendant's distributors encourage and induce Defendant's distributors to copy and paste the Red Oval Logo bearing the word BUGATTI. By following the instructions provided by Defendant, Defendant's distributors can copy and paste the Red Oval Logo bearing the word BUGATTI.

53. When the Red Oval Logo bearing the word BUGATTI is copied from the <www.atalante.com> website by Defendant's distributors, the ® applied by Defendant is also copied. Thus, Defendant is encouraging its distributors to falsely claim a U.S. Trademark Registration.

54. Long after Bugatti International's adoption, use and registration of the BUGATTI Marks, with full knowledge of Bugatti International's prior rights in the BUGATTI Marks, and without Bugatti International's authorization or consent, Defendant commenced use of the Red Oval Logo bearing the word BUGATTI as a trademark in connection with its business activities in the Commonwealth of Massachusetts and elsewhere in the United States.

55. By reason of Bugatti International's prior rights in and to the distinctive and famous BUGATTI Marks for automobiles, Defendant's use of BUGATTI in its trademarks, is likely to cause confusion and mistake in the minds of the purchasing public, and tends to and does falsely create the impression that the goods of the Defendant are provided, sponsored or licensed by Bugatti International, or are otherwise affiliated with or authorized by Bugatti International.

116333.00120/35675783v1
00067528.DOC / 2

## COUNT I
### [VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114; INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK]

56. Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

57. Defendant has been and still is infringing Volkswagen's distinctive and famous VW Marks pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114, by the unauthorized use of the VW Marks in the advertising, promotion, marketing and sale of its leather goods in the United States, including in the Commonwealth of Massachusetts, which acts have caused a likelihood of confusion, mistake or deception to consumers, prospective purchasers and the trade as to the source of Defendant's goods, believing them to emanate from Volkswagen as being authorized, sponsored or approved by Volkswagen, thus impairing Volkswagen's goodwill symbolized by the VW Marks.

58. Defendant has knowingly, willfully and wantonly infringed Volkswagen's VW Marks.

59. Defendant's actions infringing Volkswagen's rights in the VW Marks have caused and shall continue to cause great injury and damage to Volkswagen and Volkswagen's goodwill, which injury and damage cannot be adequately quantified.

60. As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of infringement, Volkswagen will have no adequate remedy at law.

14

## COUNT II
### [VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a); FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION AND FALSE REPRESENTATION]

61. Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

62. Defendant has been and still is engaging in false designation of origin and false representation under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by the unauthorized use of the VW Marks and in the advertising, promotion, marketing and sale of its leather goods in the United States, including the Commonwealth of Massachusetts, thereby falsely representing that the Defendant's goods are somehow provided, sponsored or licensed by, or somehow otherwise affiliated with Volkswagen.

63. Defendant's deliberate and wrongful acts of false designation of origin and false representation have caused and will continue to cause great injury and damage to Volkswagen and to Volkswagen's goodwill, which injury and damage cannot be adequately quantified.

64. As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of false designation of origin and false representation, Volkswagen will have no adequate remedy at law.

## COUNT III
### [COMMON LAW TRADEMARK INFRINGEMENT]

65. Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

15

66. Defendant's use of the identical VW Marks is likely to cause confusion to consumers, prospective purchasers and the trade as to the source or origin of the goods of the Defendant, unfairly competing with, and to the detriment of, Volkswagen, which injury and damage cannot be adequately quantified.

67. As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of unfair competition, Volkswagen will have no adequate remedy at law.

### COUNT IV
### [VIOLATION OF THE FEDERAL TRADEMARK DILUTION ACT, 15 U.S.C. § 1125(C); DILUTION OF FAMOUS MARK AND INJURY TO BUSINESS REPUTATION]

68. Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

69. Volkswagen has advertised, promoted and distributed Volkswagen automobiles and related services throughout the United States under the distinctive VW Marks, and as a result of such advertising, promotion and distribution of such goods and services, the VW Marks associated therewith have become famous and are recognized by the consuming public and the trade throughout the U.S. as indication of origin in Volkswagen.

70. The VW Marks are famous and distinctive within the purview of 15 U.S.C. § 1125(c)(1) and the meaning of 15 U.S.C. § 1127.

71. Defendant's unauthorized use of the VW Marks has diluted and is diluting the distinctiveness of Volkswagen's VW Marks, which unlawful conduct constitutes dilution in

16

violation of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c)(1). Defendant's unlawful conduct commenced after the VW Marks had become famous and was undertaken with full recognition and knowledge of Volkswagen's ownership and prior use of its famous VW Marks worldwide and in the U.S.

72. Volkswagen is informed and believes, and on that basis alleges, that Defendant's conduct was undertaken with the intent to trade on Volkswagen's goodwill and reputation and with the intent to dilute the VW Marks.

73. This conduct has diluted, and is likely to and will continue to dilute, the distinctive quality of the VW Marks by lessening their capacity to identify and distinguish the goods and services of Volkswagen.

74. Defendant's deliberate and wrongful acts of dilution have caused, are likely to cause and will continue to cause great injury and damage to the goodwill of Volkswagen, which injury and damage cannot be adequately quantified.

75. As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of dilution, Volkswagen will have no adequate remedy at law.

### COUNT V
### [VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 110B, SECTION 12; INJURY TO BUSINESS REPUTATION AND DILUTION]

76. Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

17

77. Volkswagen has advertised, promoted and distributed its goods and services throughout the United States under the VW Marks, and as a result of this advertising, promotion and sales of such goods and services, the VW Marks associated therewith have come to mean, and are recognized in the relevant channels of trade as indicating that the goods and services so identified emanate from Volkswagen.

78. As a result of the longstanding, continuous and exclusive use of the VW Marks by Volkswagen, the VW Marks have become strongly associated with Volkswagen in the minds of consumers.

79. Defendant's unlawful use of the VW Marks has injured, and is likely to continue to injure, Volkswagen's business reputation; and that Defendant's conduct has diluted, and will continue to dilute, the distinctive quality of the VW Marks.

80. Defendant's unlawful conduct constitutes injury to business reputation, as well as dilution, in violation of Massachusetts General Laws Ch. 110B, § 12.

81. Defendant's deliberate and wrongful acts of dilution have caused and will continue to cause great injury and damage to Volkswagen, and the business reputation and goodwill of Volkswagen, which injury and damage cannot be adequately quantified.

82. As a result of Defendant's conduct, Volkswagen has suffered and continue to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of dilution, Volkswagen will have no adequate remedy at law.

## COUNT VI
## [COMMON LAW UNFAIR COMPETITION]

83. Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

84. Volkswagen is the exclusive owner of the VW Marks for use in connection with automobiles, auto parts and related products and services. Products and services offered under the VW Marks are widely recognized as originating with Volkswagen.

85. Defendant's use of the VW Marks in intrastate and interstate commerce constitutes false designation of origin, false representation, and wrongfully and falsely designates Defendant's goods and services as originating from or connected with Volkswagen.

86. Defendant's use of the VW Marks is an intentional misappropriation of the goodwill of Volkswagen's VW Marks, and is likely to cause confusion or to cause mistake among, or to deceive, consumers, prospective purchasers, and the trade.

87. Defendant's unlawful conduct constitutes unfair competition in violation of the common law.

88. Defendant's deliberate and wrongful acts of unfair competition have caused and will continue to cause great injury and damage to Volkswagen, and Volkswagen's goodwill, which injury and damage cannot be adequately quantified.

89. As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of unfair competition, Volkswagen will have no adequate remedy at law.

19

## COUNT VII
### [VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114; INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK]

90. Bugatti International realleges and incorporate herein the averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

91. Defendant has been and still is infringing Bugatti International's distinctive and famous BUGATTI Marks pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114, by the unauthorized use of the Red Oval Logo bearing the word BUGATTI as the dominant portion of its trademark and in the advertising, promotion, marketing and sale of its leather goods in the United States, including in the Commonwealth of Massachusetts, which acts have caused a likelihood of confusion, mistake or deception to consumers, prospective purchasers and the trade as to the source of Defendant's goods and services, believing them to emanate from Bugatti International, or as being authorized, sponsored or approved by Bugatti International, thus impairing Bugatti International's goodwill symbolized by the Red Oval Logo.

92. Defendant has knowingly, willfully and wantonly infringed Bugatti International's Red Oval Logo.

93. Defendant's actions infringing Bugatti International's rights in the Red Oval Logo have caused and shall continue to cause great injury and damage to Bugatti International, and Bugatti International's goodwill, which injury and damage cannot be adequately quantified.

20