## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>VOLKSWAGEN AG, VOLKSWAGEN OF )<br>AMERICA, INC. AND BUGATTI )<br>INTERNATIONAL, S.A. )<br>                 Plaintiffs, )<br>      v. )<br> )<br>THE BUGATTI, INC.        , )<br>           Defendant. )<br>_____) | C.A. No. 05-11067-PBS<br>(Judge Patti B. Saris). |

### NOTICE OF FILING WITH CLERK'S OFFICE

Pursuant to the terms of the Protective Order entered in the above case, I hereby give notice that the following *highly confidential* document will be manually filed with the Court under seal:

> Defendant The Bugatti, Inc.'s Motion to Compel Documents and Interrogatory Answers from Plaintiffs Volkswagen AG and Bugatti International, S.A.
>
> The Bugatti, Inc.'s Memorandum in Support of The Bugatti, Inc.'s Motion to Compel
>
> Declaration of Geri L. Haight, Esq. in Support of The Bugatti, Inc.'s Motion to Compel

The following documents were filed electronically with the Court this day:

(1)    Notice of Filing

(2)    Exhibits A, B, C, F, G, H, I, J,K,L,W

Dated:  February 23, 2006

/s/ Geri L. Haight_____
Joseph Hameline (BBO# 218710)
Geri L. Haight (BBO # 349440)
Philip J. Catanzano (BBO # 654873)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111

### Certificate of Service

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filings (NEF) and paper copies will be sent to those indicated as non-registered participants

on February 23, 2006.

(617) 542-6000

_/s/ Geri L. Haight_____
Geri L. Haight, BBO #349440

**ATTORNEYS FOR DEFENDANT
THE BUGATTI, INC.,**

LIT 1562250v.1

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

05 11067 PBS

VOLKSWAGEN AG, VOLKSWAGEN OF AMERICA,        :
INC. and BUGATTI INTERNATIONAL, S.A.,        :
                                             :
                                             :   CASE NO.
                 Plaintiffs,                 :
                                             :   MAGISTRATE JUDGE _____
v.                                           :
                                             :   **JURY TRIAL DEMANDED**
THE BUGATTI, INC.                            :
                                             :
                 Defendant.                  :
_____     :

RECEIPT # _____
AMOUNT $ 250
SUMMONS ISSUED ___ yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 5/22/05

**COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF**

Volkswagen AG ("VWAG") and Volkswagen of America, Inc. ("VWoA") (VWAG and

VWoA collectively "Volkswagen") and Bugatti International, S.A. ("Bugatti International"),

(VWAG, VWoA and Bugatti International collectively "Plaintiffs"), by and through their

undersigned attorneys, file this civil action against The Bugatti, Inc. ("Defendant"), as follows:

**THE PARTIES**

1.      VWAG is a corporation organized and existing under the laws of Germany, with a

principal place of business in Wolfsburg, Federal Republic of Germany.

2.      VWoA is a corporation organized and existing under the laws of the State of New

Jersey, with a principal place of business in Auburn Hills, Michigan.

3.      Bugatti International is a corporation organized and existing under the laws of

Luxembourg, with a principal place of business in Luxembourg.

4.       Upon information and belief, Defendant is a Massachusetts corporation with its principal place of business at 100 Condor Street, East Boston, Massachusetts 02128.

**JURISDICTION AND VENUE**

5.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case involves trademarks and arises under the laws of the United States, *inter alia*, 15 U.S.C. §§ 1114, 1117 and 1125.

6.       This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims falling within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the Constitution of the United States.

7.       This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant: is a corporation organized under the laws of the forum state; transacts business within and has availed itself of this forum; contracts to sell goods and render services within the forum, both through traditional means and through the Internet; engages in a persistent course of conduct in this forum; expects, or should reasonably expect, its acts to have legal consequences in this forum; and maintains substantial, systematic and continuous minimum contacts in this forum.

8.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims are based here.

2

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**Volkswagen AG's Business and Marks**

9.      VWAG is a manufacturer of automobiles, which have achieved worldwide fame and

recognition.  VWAG is recognized worldwide as the source of VW automobiles.  VWAG is the



owner of the letter mark VW and the VW Concentric Circle Logo

(collectively, "the VW Marks").  VWAG owns hundreds of trademark registrations throughout the

world for the VW Marks, including in the United States the following U.S. Trademark Registration

Nos.: 1,883,332 dated March 14, 1995, which covers *inter alia* International classes 12 and 18 and

is incontestable; 2,100,963 dated September 30, 1997, which covers International class 12 and is

incontestable; 2,299,293 dated December 14, 1999, which covers *inter alia* International class 12;

2,181,615 dated March 2, 2004, which covers *inter alia* International class 12; 2,849,974 dated June

8, 2004, which covers *inter alia* International classes 12 and 18; 2,930,238 dated March 8, 2005,

which covers International class 11; and 2,932,356 dated March 15, 2005, which covers *inter alia*

International class 12.  VWAG is also the owner of the following pending U.S. Trademark

Application Nos.:  79001131 for the VW Logo in International classes 12 and 18 *inter alia* and

79001133 for the mark VW which covers *inter alia* International class 12 and 79001521 for a color

version of the VW Logo in International class 12 *inter alia*.

3

10.    VWAG has expended substantial financial resources developing, testing and promoting its automobiles under the distinctive VW Marks.  As a result of VWAG's worldwide promotional activities under the VW Marks, and its adherence to the highest standards of quality control in the design and engineering of its VW line of automobiles, the VW Marks have become famous, and are widely recognized by the public, the trade and media.

11.    The VW Marks became famous long prior to Defendant's unauthorized adoption and use of the VW Marks for its leather goods.

**Volkswagen of America's Business, Use and Enforcement Activities**

12.    VWoA is the United States importer and distributor of automobiles manufactured by VWAG, and, as such, is charged with protecting the trademarks associated with those automobiles in the United States.

13.    VWoA is authorized to use the VW Marks in the United States and VWoA has also expended substantial financial resources actively advertising and promoting automobiles manufactured by VWAG under the VM Marks.  VWoA also uses the VW Marks to promote accessories and gear including, *inter alia*, leather wallets and CD cases.

**Bugatti International's Business and Marks**

14.    In the early part of the 20th century, Mr. Ettore Bugatti founded a company in Molsheim, France, for the design, manufacture and sale of racing automobiles in connection with the BUGATTI mark.  During this time, the BUGATTI mark became world famous and synonymous

4

with excellence in design and extravagant luxury, which connotations persist until this day. BUGATTI branded automobiles continued to be raced until the late 1950s.

15.    Prior to his death in 1947, Ettore Bugatti's company had transitioned to the design and manufacture of aircraft engines and aircraft. In 1963, Messier-Hispano-Bugatti assumed all rights, title and interest in the BUGATTI mark and continued in the aircraft manufacturing business.

16.    In 1987, Bugatti International was founded for the purpose of designing, manufacturing, and selling world-class luxury automobiles in the tradition of Ettore Bugatti.

17.    On or about July 1, 1988, Bugatti International acquired the U.S. trademark registrations, Reg. Nos. 1,407,200, 1,440,535, and 1,444,0536, for the marks BUGATTI and the logo mark



, which is a Red Oval Logo bearing the word BUGATTI and the stylized initials "EB" (collectively referred to as the "BUGATTI Marks").

18.    In 1992, Bugatti International's Italian subsidiary, Bugatti Automobili, began manufacturing automobiles and had built 139 before 1995 when it incurred financial difficulties. One of these automobiles was exhibited in the U.S. in 1993 at the Detroit Auto Show. In 1996, Bugatti International's other Italian subsidiary, Ettore Bugatti SrL, signed a license agreement with Ralston Investments Inc. to operate a Bugatti boutique in Honolulu, Hawaii, specializing in luxury, branded products including pens, champagne, and watches.

5

19.    In 1998, Ettore Bugatti SrL assigned its United States trademark registrations for EB

ETTORE BUGATTI Logo and EB Logo, Reg. Nos. 2026214 (since cancelled) and 1787760,

respectively, to Bugatti International.

20.    Bugatti International maintains priority rights in the BUGATTI Marks and is the

owner of all right, title and interest to the BUGATTI Marks and to the related federal trademark

registrations.

21.    In addition, Bugatti International is the owner of all right, title and interest to over

eight-hundred trademark registrations worldwide for its BUGATTI Marks.

22.    In 1998, Bugatti International was purchased by VWAG and the original Bugatti

factory of Ettore Bugatti in France was re-opened.

23.    Pursuant to license, Bugatti International's affiliated companies and licensees, Bugatti

Automobiles S.A.S., a French corporation, and Bugatti Engineering GmbH, a German company,

began to design and manufacture BUGATTI branded automobiles.

24.    The first new BUGATTI automobile was exhibited in Paris in 1998. Auto shows

followed in 1999 in Geneva and Tokyo. The first BUGATTI automobile offered for sale, the

VEYRON, was exhibited in January of 2000 at the Detroit Auto Show. The VEYRON bears as a

badge on its grille the Red Oval Logo bearing the word BUGATTI and the stylized initials "EB."

The list price for the VEYRON is more than $1 million. BUGATTI branded automobiles have been

exhibited at the annual Pebble Beach Auto show in California since 2000. The VEYRON is

6

considered a "Super Car" and holds the distinction of being the fastest production automobile on the market.

25.    Bugatti International is the owner of pending U.S. trademark applications filed December 4, 1998, namely, Serial No. 75/599,753 for the mark BUGATTI for automobiles and U.S. Serial No. 75/983,482 for the mark BUGATTI for watches, jewelry and tie clips, printed materials, namely, brochures in the field of automobiles and subjects of interest to automotive enthusiasts, and decorative china plates, cups, saucers.  Bugatti International is also the owner of pending U.S. trademark     application     Serial     No.     78/175,475     for     the     logo     mark,



, filed October 17, 2002, for "leather goods, namely, suitcases, bags, namely, athletic bags, travel bags, cosmetic cases sold empty, ladies' bags, namely, clutch bags, shoulder bags, purses, pocket wallets and toy cars, model cars for collectors, leather golf bags."

26.    Bugatti International registered its distinctive trademark VEYRON with the U.S. Patent and Trademark Office under Registration No. 2,829,102, which issued April 6, 2004 for vehicles and toy model cars.

27.    Bugatti International has expended substantial financial resources developing, testing, exhibiting, promoting and marketing its automobiles under the BUGATTI Marks.  As a result of Bugatti International's worldwide promotional activities under the BUGATTI Marks, including in

7

the United States, and its adherence to the highest standards of quality control in the design and

engineering of its BUGATTI line of automobiles, distinctiveness of the BUGATTI Marks and the

fame of such marks have been further enhanced and extended, and are widely recognized by the

public, the trade and the media.

28.    Bugatti International is recognized worldwide as the source of BUGATTI

automobiles.

**Defendant Bugatti, Inc.'s Unauthorized Use of the VW Marks**

29.    On information and belief, Defendant is fully aware that VWAG is the owner of the

VW Marks.

30.    On information and belief, Defendant is fully aware that the VW Marks are famous

marks.

31.    On information and belief, Defendant is fully aware that VWAG owns U.S.

Trademark Registration No. 1,883,332 and 2,849,974 for leather goods.

32.    On information and belief, Defendant has applied the VW Marks to leather goods and

accessories. Such application is shown in Defendant's advertisements and catalogs and on the

websites <www.Bugatti.com> and <www.atalante.com> operated by Defendant.

33.    On information and belief, Defendant has applied the VW Marks to leather goods and

accessories because the VW Marks are famous marks.

116333.00120/35675783v1
00067528.DOC / 2

34.     On information and belief, Defendant is fully aware that it is not authorized to apply the VW Marks to any goods, or to manufacture, advertise and sell goods identified by the VW Marks.

35.     Defendant includes pictures of certain leather goods bearing the VW Marks on its websites <www.Bugatti.com> and <www.atalante.com>.

36.     The <www.atalante.com> website is linked to the <www.Bugatti.com> website and is accessed by clicking on "Distributors."   On the <www.atalante.com> website Defendant has provided the following instructions:

> This site is provided compliments of your Bugatti® Atalante™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.
>
> Distributors are encouraged to copy and paste pictures and descriptions from this web site.  To save a copy of a picture to your own hard disk just click and hold down your mouse button on the picture you'd like to use and choose save, name it with a name you can remember or write down, and save it to a folder where you will be sure to find it – or to your desktop.

As of April 15, 2005, on the <www.atalante.com> website, Defendant was providing the following instructions:

> This site is provided compliments of your Atalante ™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.
>
> Distributors are encouraged to use pictures and descriptions from this web site.

37.     Such instructions on Defendant's <www.atalante.com> website encourage and induce Defendant's distributors to copy and paste pictures of certain leather goods bearing the VW Marks without authorization from Volkswagen.  Defendant is fully aware that such copying and pasting of pictures of certain leather goods bearing the VW Marks is without authorization of Volkswagen.

9

38.     Long after Volkswagen's adoption, use and registration of the VW Marks, with full knowledge of Volkswagen's prior rights in the VW Marks, and without Volkswagen's authorization or consent, Defendant commenced use of the VW Marks as trademarks in connection with its business activities in the Commonwealth of Massachusetts and elsewhere in the United States.

39.     By reason of Volkswagen's prior rights in and to the distinctive and famous VW Marks, Defendant's use of the VW Marks as trademarks in connection with its business is likely to cause confusion and mistake in the minds of the purchasing public, and tends to and does falsely create the impression that the goods and services of the Defendant are provided, sponsored or licensed by Volkswagen, or are otherwise affiliated with or authorized by Volkswagen.

**Defendant Bugatti, Inc.'s Unauthorized Use of the Bugatti Marks**

40.     Defendant Bugatti, Inc. is a purveyor of leather goods and accessories.

41.     Defendant previously owned a U.S. Trademark Registration No. 1,155,090 for the mark BUGATTI for leather goods and accessories. Such Trademark Registration was cancelled on June 29, 2002. Defendant is fully aware of the cancellation of its Trademark Registration.

42.     Defendant filed an application Serial No. 76/536,905 for registration of the mark BUGATTI for leather goods and accessories on July 25, 2003, over one year after Trademark Registration No. 1,158,090 was cancelled.

43.     Application Serial No. 76/536,905 was suspended on September 15, 2004. As a consequence of such suspension, Defendant cannot obtain a registration of the mark BUGATTI for leather goods and accessories until such time as the suspension is lifted.

116333.00120/35675783v1
00067528.DOC / 2

44.     Since June 29, 2002, Defendant has had no U.S. Trademark Registration of the mark BUGATTI for leather goods and accessories.  Defendant is fully aware that it has no such U.S. Trademark Registration.

45.     Defendant has no U.S. Trademark Registration for a Red Oval Logo bearing the word BUGATTI.  Defendant has no pending application for U.S. Trademark Registration of a Red Oval Logo bearing the word BUGATTI.

46.     Defendant is fully aware that it has no U.S. Trademark Registration for a Red Oval Logo bearing the word BUGATTI.  Defendant is also fully aware that it has no pending application for U.S. Trademark Registration of a Red Oval Logo bearing the word BUGATTI.

47.     Despite the fact that Defendant has no U.S. Trademark Registration for the mark BUGATTI, Defendant has deliberately and willfully falsely asserted that it has a U.S. Trademark Registration for the mark BUGATTI by using the ® symbol with the word BUGATTI and on a Red Oval Logo bearing the word BUGATTI.  Such false claim of registration has occurred in Defendant's advertisements and catalogs and on websites <www.Bugatti.com> and <www.atalante.com> operated by Defendant which have been updated and/or copyrighted by Defendant as recently as April 15, 2005, subsequent to the cancellation of Defendant's U.S. Trademark Registration No. 1,158,090 and subsequent to the filing of U.S. Trademark Application Serial No. 76/536,905.

116333.00120/3567578.v1
00067528.DOC / 2

48.    Defendant's false use of the ® symbol is willful and deliberate and made with full knowledge and awareness that Defendant has no U.S. Trademark Registration for the mark BUGATTI and/or the Red Oval Logo bearing the word BUGATTI.

49.    Defendant adopted a Red Oval Logo bearing the word BUGATTI subsequent to and with the full knowledge and awareness that Bugatti International had previously adopted a Red Oval Logo bearing the word BUGATTI.

50.    In operating the website <www.Bugatti.com>, Defendant has without authorization from Bugatti International used Bugatti International's registered trademark VEYRON on Defendant's website and has provided links to photographs of Bugatti International's VEYRON automobile identified by the Red Oval Logo bearing the word BUGATTI. Such links were provided by Defendant in order to associate itself with the VEYRON automobile, and with Plaintiff Bugatti International, when in fact, no such association exists or has been authorized.

51.    In operating the website <www.atalante.com>, Defendant has provided the following instructions to its distributors:

> This site is provided compliments of your Bugatti® Atalante™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.

> Distributors are encouraged to copy and paste pictures and descriptions from this web site. To save a copy of a picture to your own hard disk just click and hold down your mouse button on the picture you'd like to use and choose save, name it with a name you can remember or write down, and save it to a folder where you will be sure to find it – or to your desktop.

Defendant has also instructed its distributors:

> This site is provided compliments of your Atalante™ Leather Accessories distributor, who can arrange to have these leather accessories personalized for you.

12

Distributors are encouraged to use pictures and descriptions from this website.

52.    The instructions provided to Defendant's distributors encourage and induce Defendant's distributors to copy and paste the Red Oval Logo bearing the word BUGATTI. By following the instructions provided by Defendant, Defendant's distributors can copy and paste the Red Oval Logo bearing the word BUGATTI.

53.    When the Red Oval Logo bearing the word BUGATTI is copied from the <www.atalante.com> website by Defendant's distributors, the ® applied by Defendant is also copied. Thus, Defendant is encouraging its distributors to falsely claim a U.S. Trademark Registration.

54.    Long after Bugatti International's adoption, use and registration of the BUGATTI Marks, with full knowledge of Bugatti International's prior rights in the BUGATTI Marks, and without Bugatti International's authorization or consent, Defendant commenced use of the Red Oval Logo bearing the word BUGATTI as a trademark in connection with its business activities in the Commonwealth of Massachusetts and elsewhere in the United States.

55.    By reason of Bugatti International's prior rights in and to the distinctive and famous BUGATTI Marks for automobiles, Defendant's use of BUGATTI in its trademarks, is likely to cause confusion and mistake in the minds of the purchasing public, and tends to and does falsely create the impression that the goods of the Defendant are provided, sponsored or licensed by Bugatti International, or are otherwise affiliated with or authorized by Bugatti International.

13

## COUNT I
### [VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114;
### INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK]

56.     Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through

39, inclusive.

57.     Defendant has been and still is infringing Volkswagen's distinctive and famous VW

Marks pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114, by the unauthorized use of the

VW Marks in the advertising, promotion, marketing and sale of its leather goods in the United

States, including in the Commonwealth of Massachusetts, which acts have caused a likelihood of

confusion, mistake or deception to consumers, prospective purchasers and the trade as to the source

of Defendant's goods, believing them to emanate from Volkswagen as being authorized, sponsored

or approved by Volkswagen, thus impairing Volkswagen's goodwill symbolized by the VW Marks.

58.     Defendant has knowingly, willfully and wantonly infringed Volkswagen's VW

Marks.

59.     Defendant's actions infringing Volkswagen's rights in the VW Marks have caused

and shall continue to cause great injury and damage to Volkswagen and Volkswagen's goodwill,

which injury and damage cannot be adequately quantified.

60.     As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer

irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of

infringement, Volkswagen will have no adequate remedy at law.

116333001201/356757831v1
00067528.DOC / 2

<u>**COUNT II**</u>
**[VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a); FALSE DESIGNATION
OF ORIGIN, FALSE DESCRIPTION AND FALSE REPRESENTATION]**

61.     Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through

39, inclusive.

62.     Defendant has been and still is engaging in false designation of origin and false

representation under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by the unauthorized use

of the VW Marks and in the advertising, promotion, marketing and sale of its leather goods in the

United States, including the Commonwealth of Massachusetts, thereby falsely representing that the

Defendant's goods are somehow provided, sponsored or licensed by, or somehow otherwise

affiliated with Volkswagen.

63.     Defendant's deliberate and wrongful acts of false designation of origin and false

representation have caused and will continue to cause great injury and damage to Volkswagen and to

Volkswagen's goodwill, which injury and damage cannot be adequately quantified.

64.     As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer

irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of

false designation of origin and false representation, Volkswagen will have no adequate remedy at

law.

<u>**COUNT III**</u>
**[COMMON LAW TRADEMARK INFRINGEMENT]**

65.     Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through

39, inclusive.

116333/001201/3567578301
00067528.DOC / 2

66.    Defendant's use of the identical VW Marks is likely to cause confusion to consumers, prospective purchasers and the trade as to the source or origin of the goods of the Defendant, unfairly competing with, and to the detriment of, Volkswagen, which injury and damage cannot be adequately quantified.

67.    As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of unfair competition, Volkswagen will have no adequate remedy at law.

## COUNT IV
### [VIOLATION OF THE FEDERAL TRADEMARK DILUTION ACT, 15 U.S.C. § 1125(C); DILUTION OF FAMOUS MARK AND INJURY TO BUSINESS REPUTATION]

68.    Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

69.    Volkswagen has advertised, promoted and distributed Volkswagen automobiles and related services throughout the United States under the distinctive VW Marks, and as a result of such advertising, promotion and distribution of such goods and services, the VW Marks associated therewith have become famous and are recognized by the consuming public and the trade throughout the U.S. as indication of origin in Volkswagen.

70.    The VW Marks are famous and distinctive within the purview of 15 U.S.C. § 1125(c)(1) and the meaning of 15 U.S.C. § 1127.

71.    Defendant's unauthorized use of the VW Marks has diluted and is diluting the distinctiveness of Volkswagen's VW Marks, which unlawful conduct constitutes dilution in

16

116333.00120/3567578v1
00067528.DOC / 2

violation of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c)(1). Defendant's unlawful conduct commenced after the VW Marks had become famous and was undertaken with full recognition and knowledge of Volkswagen's ownership and prior use of its famous VW Marks worldwide and in the U.S.

72.　　　Volkswagen is informed and believes, and on that basis alleges, that Defendant's conduct was undertaken with the intent to trade on Volkswagen's goodwill and reputation and with the intent to dilute the VW Marks.

73.　　　This conduct has diluted, and is likely to and will continue to dilute, the distinctive quality of the VW Marks by lessening their capacity to identify and distinguish the goods and services of Volkswagen.

74.　　　Defendant's deliberate and wrongful acts of dilution have caused, are likely to cause and will continue to cause great injury and damage to the goodwill of Volkswagen, which injury and damage cannot be adequately quantified.

75.　　　As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of dilution, Volkswagen will have no adequate remedy at law.

## COUNT V
### [VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 110B, SECTION 12; INJURY TO BUSINESS REPUTATION AND DILUTION]

76.　　　Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

17

77.     Volkswagen has advertised, promoted and distributed its goods and services throughout the United States under the VW Marks, and as a result of this advertising, promotion and sales of such goods and services, the VW Marks associated therewith have come to mean, and are recognized in the relevant channels of trade as indicating that the goods and services so identified emanate from Volkswagen.

78.     As a result of the longstanding, continuous and exclusive use of the VW Marks by Volkswagen, the VW Marks have become strongly associated with Volkswagen in the minds of consumers.

79.     Defendant's unlawful use of the VW Marks has injured, and is likely to continue to injure, Volkswagen's business reputation; and that Defendant's conduct has diluted, and will continue to dilute, the distinctive quality of the VW Marks.

80.     Defendant's unlawful conduct constitutes injury to business reputation, as well as dilution, in violation of Massachusetts General Laws Ch. 110B, § 12.

81.     Defendant's deliberate and wrongful acts of dilution have caused and will continue to cause great injury and damage to Volkswagen, and the business reputation and goodwill of Volkswagen, which injury and damage cannot be adequately quantified.

82.     As a result of Defendant's conduct, Volkswagen has suffered and continue to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of dilution, Volkswagen will have no adequate remedy at law.

116333/00120/3567578v1
00067528.DOC / 2

## COUNT VI
### [COMMON LAW UNFAIR COMPETITION]

83.    Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive.

84.    Volkswagen is the exclusive owner of the VW Marks for use in connection with automobiles, auto parts and related products and services.  Products and services offered under the VW Marks are widely recognized as originating with Volkswagen.

85.    Defendant's use of the VW Marks in intrastate and interstate commerce constitutes false designation of origin, false representation, and wrongfully and falsely designates Defendant's goods and services as originating from or connected with Volkswagen.

86.    Defendant's use of the VW Marks is an intentional misappropriation of the goodwill of Volkswagen's VW Marks, and is likely to cause confusion or to cause mistake among, or to deceive, consumers, prospective purchasers, and the trade.

87.    Defendant's unlawful conduct constitutes unfair competition in violation of the common law.

88.    Defendant's deliberate and wrongful acts of unfair competition have caused and will continue to cause great injury and damage to Volkswagen, and Volkswagen's goodwill, which injury and damage cannot be adequately quantified.

89.    As a result of Defendant's conduct, Volkswagen has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of unfair competition, Volkswagen will have no adequate remedy at law.

116333/00120/35675783v1
00067528.DOC / 2

## COUNT VII
### [VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114; INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK]

90.     Bugatti International realleges and incorporate herein the averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

91.     Defendant has been and still is infringing Bugatti International's distinctive and famous BUGATTI Marks pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114, by the unauthorized use of the Red Oval Logo bearing the word BUGATTI as the dominant portion of its trademark and in the advertising, promotion, marketing and sale of its leather goods in the United States, including in the Commonwealth of Massachusetts, which acts have caused a likelihood of confusion, mistake or deception to consumers, prospective purchasers and the trade as to the source of Defendant's goods and services, believing them to emanate from Bugatti International, or as being authorized, sponsored or approved by Bugatti International, thus impairing Bugatti International's goodwill symbolized by the Red Oval Logo.

92.     Defendant has knowingly, willfully and wantonly infringed Bugatti International's Red Oval Logo.

93.     Defendant's actions infringing Bugatti International's rights in the Red Oval Logo have caused and shall continue to cause great injury and damage to Bugatti International, and Bugatti International's goodwill, which injury and damage cannot be adequately quantified.

1163333001120/35675783v1
00067528.DOC / 2

94.     As a result of Defendant's conduct, Bugatti International has suffered and continues

to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of

such acts of infringement, Bugatti International will have no adequate remedy at law.

### COUNT VIII
### [VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a); FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION AND FALSE REPRESENTATION]

95.     Bugatti International realleges and incorporates herein the averments of Paragraphs 1

through 28 and 40 through 55, inclusive.

96.     Defendant has been and still is engaging in false designation of origin and false

representation under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by the unauthorized use

of the Red Oval Logo bearing the word BUGATTI as the dominant portion of its trademark and in

the advertising, promotion, marketing and sale of its leather goods in the United States, including the

Commonwealth of Massachusetts, thereby falsely representing that the Defendant's services and

goods are somehow provided, sponsored or licensed by, or somehow otherwise affiliated with

Bugatti International.

97.     Defendant's deliberate and wrongful acts of false designation of origin and false

representation have caused and will continue to cause great injury and damage to Bugatti

International and to Bugatti International's goodwill, which injury and damage cannot be adequately

quantified.

98.     As a result of Defendant's conduct, Bugatti International has suffered and continues

to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of

116333.00120/35675783v1
00067528.DOC / 2

such acts of false designation of origin and false representation, Bugatti International will have no adequate remedy at law.

## COUNT IX
### [COMMON LAW TRADEMARK INFRINGEMENT]

99. Bugatti International realleges and incorporates herein the averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

100. Defendant's use of the confusingly similar Red Oval Logo bearing the word BUGATTI trademark is likely to cause confusion to consumers, prospective purchasers and the trade as to the source or origin of the goods of the Defendant, unfairly competing with, and to the detriment of, Bugatti International, which injury and damage cannot be adequately quantified.

101. As a result of Defendant's conduct, Bugatti International has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of unfair competition, Bugatti International will have no adequate remedy at law.

## COUNT X
### [VIOLATION OF THE FEDERAL TRADEMARK DILUTION ACT, 15 U.S.C. § 1125(c); DILUTION OF FAMOUS MARK AND INJURY TO BUSINESS REPUTATION]

102. Bugatti International realleges and incorporates herein the averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

103. Bugatti International, and its predecessors, have advertised, promoted and sold its goods and services throughout the United States under the Red Oval Logo, and as a result of such advertising, promotion and sales, the Red Oval Logo associated therewith has come to mean, and is

22

recognized in the relevant channels of trade as indicating that the goods so identified emanate from Bugatti International.

104.    As a result of the longstanding, continuous and exclusive use of the Red Oval Logo by Bugatti International and its predecessors, such mark has become strongly associated in the minds of consumers with Bugatti International.

105.    The Red Oval Logo is famous and distinctive within the purview of 15 U.S.C. § 1125(c)(1) and the meaning of 15 U.S.C. § 1127.

106.    Defendant's unlawful conduct constitutes dilution in violation of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c)(1). This conduct was undertaken with full recognition and knowledge of Bugatti International's prior use of the Red Oval Logo worldwide and in the U.S., and commenced after such mark had become famous.

107.    Bugatti International is informed and believes, and on that basis alleges, that Defendant's unlawful conduct was undertaken with the intent to erode and tarnish Bugatti International's reputation and the goodwill associated with the Red Oval Logo.

108.    This conduct has diluted, is likely to dilute and will continue to dilute, the distinctive quality of the Red Oval Logo by lessening its capacity to identify and distinguish Bugatti International's goods.

109.    Defendant's deliberate and wrongful acts of dilution have caused, is likely to cause and will continue to cause great injury and damage to Bugatti International and to Bugatti International's goodwill, which injury and damage cannot be adequately quantified.

23

110.   As a result of Defendant's conduct, Bugatti International has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of dilution, Bugatti International will have no adequate remedy at law.

## COUNT XI
## [VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 110B, SECTION 112; INJURY TO BUSINESS REPUTATION AND DILUTION]

111.   Bugatti International realleges and incorporates herein the averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

112.   Bugatti International, and its predecessors, have advertised, promoted and sold its goods and services throughout the United States under the Red Oval Logo, and as a result of this advertising, promotion and sales, the Red Oval Logo associated therewith has come to mean, and is recognized in the relevant trading areas and channels of trade as, the goods and services of Bugatti International.

113.   As a result of the longstanding, continuous and exclusive use of the Red Oval Logo by Bugatti International and its predecessors, the Red Oval Logo has become strongly associated with Bugatti International in the minds of consumers.

114.   Bugatti International is informed and believes, and on that basis alleges, that Defendant's unlawful conduct was subsequent to Bugatti International's adoption and use of the Red Oval Logo; that Defendant's conduct has injured, and is likely to continue to injure, Bugatti International's business reputation; and that Defendant's conduct has diluted, and will continue to dilute, the distinctive quality of the Red Oval Logo.

24

115.   Defendant's unlawful conduct constitutes injury to business reputation, as well as dilution, in violation of Massachusetts General Laws Ch. 110B, § 12.

116.   Defendant's deliberate and wrongful acts of dilution have caused and will continue to cause great injury and damage to Bugatti International, and Bugatti International's business reputation and goodwill, which injury and damage cannot be adequately quantified.

117.   As a result of Defendant's conduct, Bugatti International has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of dilution, Bugatti International will have no adequate remedy at law.

## COUNT XII
## [COMMON LAW UNFAIR COMPETITION]

118.   Bugatti International realleges and incorporates herein the averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

119.   Bugatti International is the exclusive owner of the Red Oval Logo for use in connection with automobiles, auto parts and related products and services. Products and services offered under the Red Oval Logo are widely recognized as originating with Bugatti International.

120.   Defendant's use of the Red Oval Logo in intrastate and interstate commerce constitutes false designation of origin, false representation, and wrongfully and falsely designates Defendant's goods as originating from or connected with Bugatti International.

121.   Defendant's use of the Red Oval Logo is an intentional misappropriation of the goodwill of Bugatti International's Red Oval Logo, and is likely to cause confusion or to cause mistake among, or to deceive, consumers, prospective purchasers, and the trade.

25

122.    Defendant's unlawful conduct constitutes unfair competition in violation of the common law.

123.    Defendant's deliberate and wrongful acts of unfair competition have caused and will continue to cause great injury and damage to Bugatti International, and Bugatti International's goodwill, which injury and damage cannot be adequately quantified.

124.    As a result of Defendant's conduct, Bugatti International has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendant from further commission of such acts of unfair competition, Bugatti International will have no adequate remedy at law.

## COUNT XIII
## [DEFENDANT'S UNCLEAN HANDS]

125.    Volkswagen realleges and incorporates herein the averments of Paragraphs 1 through 39, inclusive. Bugatti International realleges and incorporates herein the averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

126.    Defendant Bugatti, Inc. has engaged in conduct which constitutes unclean hands. As a consequence, Defendant is precluded from registering the mark BUGATTI in any form in the U.S. Patent and Trademark Office.

127.    Defendant has deliberately and willfully misrepresented that it has a U.S. Trademark Registration for the mark BUGATTI when it was fully aware that it has no such registration and that its application to register the mark BUGATTI is suspended. Despite this knowledge and awareness, Defendant has used the ® designation with the word BUGATTI and with a Red Oval Logo bearing the word BUGATTI.

26

128.    Defendant has operated a website in which it has deliberately and actively encouraged and induced its distributors to copy and paste images, including the Red Oval Logo bearing the word BUGATTI, such Red Oval Logo falsely marked with the ® designation, as well as pictures of leather goods bearing the VW Marks.

129.    Defendant is in the business of appropriating to itself the famous marks of others, including the Red Oval Logo bearing the word BUGATTI used by Bugatti International for luxury automobiles, the VW marks used by Volkswagen, and the marks of third parties such as JAGUAR and HONDA, as well as many others.

130.    Defendant's misappropriation of famous third party marks is carried out in conjunction with its misappropriation of the VW Marks and the Red Oval Logo.

131.    Defendant has falsely misrepresented an association with the VEYRON Super Car when no such association exists or has been authorized.

132.    The totality of Defendant's conduct in is misrepresentations and misappropriations reflect that Defendant does not respect the unfair competition laws, trademark laws nor the trademark rights of others. As such, Defendant is guilty of unclean hands and should be precluded from availing itself of the protection of the same laws that it has willfully, knowingly and deliberately breached.

116333.00120/3567578v1
00067528.DOC / 2

## RELIEF SOUGHT

**WHEREFORE,** Volkswagen demand that:

A.      Judgment be entered in favor of Volkswagen and against Defendant as to each of the above Counts I – VI and XIII;

B.      Defendant pay damages incurred by Volkswagen as a result of the unlawful acts perpetrated by Defendant;

C.      An accounting be ordered to determine the profits realized by Defendant due to the unauthorized use of the VW Marks;

D.      Defendant pay three times such profits or damages, whichever is greater;

E.      Defendant, and any of its officers, directors, agents, servants, employees, representatives, successors, assigns, attorneys, licensees, distributors and all persons in active concert or participation with Defendant, be enjoined from directly or indirectly:

    i.        using the VW Marks, and using any confusingly similar designation, alone or in combination with other words, as a trademark, service mark, domain name, or trade name to identify, market, distribute, advertise, promote, to offer for sale or to provide any goods or services;

    ii.       otherwise infringing the VW Marks;

    iii.      continuing acts of false designation of origin or unfair trade practices herein complained of, or doing any acts that may cause Defendant's

28

116333.001120/35675783v1
00067528.DOC / 2

goods or services to be mistaken for, confused with or passed off as Volkswagen's goods or services; and

F.      Defendant be directed to file with this Court and to serve on Volkswagen, within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

G.      Defendant be required to deliver up for destruction all goods, signs, literature, advertising and other materials bearing the VW Marks or any name or mark, or colorable imitation thereof, that is confusingly similar to the VW Marks, used in connection with Defendant's goods or services;

H.      Defendant be required to remove the VW Marks and any confusingly similar name or mark from its website(s), HTML code, metatags, search engine query terms and any other electronic communications hosts, links and devices;

I.      Defendant be ordered to pay costs of this action, including attorney's fees, incurred by Volkswagen in connection with Defendant's willful acts of infringement, dilution, unfair competition, and deceptive and unfair trade practices; and

J.      Such other and further relief as this Court deems just and proper.

116333.00120/35675783v1
00067528.DOC / 2

**WHEREFORE**, Bugatti International demands that:

K.    Judgment be entered in favor of Bugatti International and against Defendant as to each of the above Counts VII - XIII;

L.    Defendant pay damages incurred by Bugatti International as a result of the unlawful acts perpetrated by Defendant;

M.    An accounting be ordered to determine the profits realized by Defendant due to the unauthorized use of the Red Oval Logo;

N.    Defendant pay three times such profits or damages, whichever is greater;

O.    Defendant, and any of their officers, directors, agents, servants, employees, representatives, successors, assigns, attorneys, licensees, distributors and all persons in active concert or participation with Defendant, be enjoined from directly or indirectly:

i.    using the Red Oval Logo, and using any confusingly similar designation, alone or in combination with other words, as a trademark, service mark, domain name, or trade name to identify, market, distribute, advertise, promote, to offer for sale or to provide any goods or services;

ii.    otherwise infringing the BUGATTI Marks;

iii.    continuing acts of false designation of origin or unfair trade practices herein complained of, or doing any acts that may cause Defendant's goods or services to be mistaken for, confused with or passed off as Bugatti International's goods or services;

30

iv.     applying for or attempting to register with any governmental entity, including but not limited to the Commonwealth of Massachusetts and the U.S. Patent and Trademark Office, any trademark or service mark consisting in whole or in part of the word BUGATTI;

v.     interfering with Bugatti International's use and registration of its BUGATTI Marks, including but not limited to, maintaining the prosecution of Opposition No. 91160515, now pending in the U.S. Patent and Trademark Office before the Trademark Trial and Appeal Board; and

vi.     linking, associating or attempting to associate itself with the VEYRON automobile or any other automobile bearing the BUGATTI Marks.

P.     Defendant be directed to file with this Court and to serve on Bugatti International, within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

Q.     Defendant be required to deliver up for destruction all goods, signs, literature, advertising and other materials bearing the Red Oval Logo or any name or mark, or colorable imitation thereof, that is confusingly similar thereto, used in connection with Defendant's goods or services;

R.     Defendant be required to remove the Red Oval Logo and any confusingly similar name or mark from its website(s), HTML code, metatags, search engine query terms and any other electronic communications hosts, links and devices;

31

S.    Defendant be ordered to pay costs of this action, including attorney's fees,

incurred by Bugatti International in connection with Defendants' willful acts of infringement,

dilution, unfair competition, and deceptive and unfair trade practices; and

T.    Such other and further relief as this Court deems just and proper.

32

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims that may be tried before a jury.

Respectfully submitted,

VOLKSWAGEN AG, VOLKSWAGEN OF
AMERICA, INC. and BUGATTI
INTERNATIONAL, S.A.,

By their attorneys,

David A. Brown (BBO# 556161)
Margaret H. Paget (BBO# 567679)
SHERIN AND LODGEN LLP
101 Federal Street
Boston, Massachusetts 02110
Telephone: 617.646.2000
Facsimile: 617-646-2222

Of Counsel:

Susan B. Flohr
Michael D. White
BLANK ROME LLP
600 New Hampshire Avenue, NW
Washington, DC 20037
Telephone: (202) 772-5800
Facsimile: (202) 772-5858

Dated: May 23, 2005

33

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11067-PBS

| | |
|---|---|
| VOLKSWAGEN AG,<br>VOLKSWAGEN OF AMERICA, INC.<br>and BUGATTI INTERNATIONAL, S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>THE BUGATTI, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### STIPULATED PROTECTIVE ORDER

AND NOW, this 4Th day of Ucranpt 2005, upon stipulation and agreement of plaintiffs and defendant, the following is hereby ORDERED and DECREED with regard to the production and protection of confidential and proprietary information of plaintiffs Volkswagen AG ("VWAG"), Volkswagen of America, Inc. ("VWoA"), and Bugatti International , S.A. ("Bugatti International") and the defendant The Bugatti, Inc. ("The Bugatti"), in the form of documents containing trade secrets or other confidential research, development, testing or commercial business information disclosed by VWAG, VWoA, Bugatti International and The Bugatti in discovery proceeding in this case:

  1.  All Confidential Information obtained through the disclosure outlined above shall be used only for the prosecution or defense of this action and is being produced and disclosed in reliance upon the terms and conditions of this Order. Such Confidential Information will not be used for any other purpose. As such, no Confidential Information may be disclosed to any person or organization, except as provided herein.

00089165.DOC /

2.      In connection with the discovery authorized by this Order, any party may, by written notice, or by a statement on the record at a deposition, designate any document, material or information as "Confidential" under the terms of this Order. The terms of this Order also shall apply to any non-party who provides testimony, documents or information in such discovery proceedings and who agrees to be bound by the terms of this Order. References to a "party" or "parties" herein shall also include such non-parties.

3.      As used herein, "document" and "information" are intended in an all-encompassing sense to include the entire subject matter of potential discovery. The term "document" shall mean, without limitation, the original, regardless of origin or location, of any discoverable correspondence, memorandum, report, record, letter, email, summary, working paper, computer printout, computer tape, computer disk, computer diskette, all retrievable information in computer storage, data processing card or disc, pamphlet, periodical, diary, telegram, cable, study, stenographic or handwritten note, invoice, voucher, check, statement, chart, graph, map, diagram, blueprint, table, index, picture, voice or video recording, tape or microfilm or any other written, recorded, transcribed, punched, taped, electromechanical, filmed or graphic matter, however produced or reproduced and copies or reproductions of any of the above that replicate, or differ in any respect from, the original, including copies containing marginal notations or other variation, and all other records or writings, however produced or reproduced, and shall also include, but not be limited to, interrogatory questions and answers and exhibits thereto, requests to admit or admissions, demands for the production of documents and responses thereto, and any other documents produced or served by any party in this action, whether pursuant to any rule, subpoena or by agreement, deposition transcripts produced in connection with this action and any exhibits thereto, any other physical object or things, as may

00089165.DOC /

be appropriate for the implementation of the purposes of this order, and any papers, including court papers, which quote from, summarize or refer to any of the foregoing.

4.    Attorneys-Eyes-Only Designation:  Any party producing information (whether by document, by deposition testimony, by interrogatory answer, or otherwise) in the course of discovery herein which relates to non-public competitive business information, forecasts, projections, business plans, asset valuations, proposed transactions, potential investors, or similarly highly confidential and sensitive commercial, financial, or business matters, may designate such information as for "Attorneys Eyes Only," provided that the producing party can establish that the potential harm incurred from disclosure of such information to the receiving party (rather than merely to the receiving party's attorneys and experts) outweighs the potential need of the receiving party (rather than merely the receiving party's attorneys and experts) to review such information, and thereby subject to the provisions of this order any document or other information produced by either party, or any agent or representative of either party, including the contents and substance thereof, and all copies of the document or information.

5.    All documents for which confidential status is claimed under this order shall be stamped "Confidential" and/or "Attorneys Eyes Only" on each page of each such document, or in the case of computer disks or diskettes on the face of the computer disk or diskette, except that transcripts of depositions or other Actions may be so designated on the front page of each such document.   Notwithstanding the provisions of paragraph 5, any party may designate as "Confidential" or "Attorneys Eyes Only" any portion of any document or deposition transcript by clearly identifying the portion of such document or deposition transcript so designated in the margin of the document or deposition transcript.

00089165.DOC /

6.    A.    If a party inadvertently produces a document containing confidential information without marking or labeling it as such, or inadvertently discloses other information without designating it confidential, the information shall not lose its protected status through such production or disclosure and the parties shall take all steps reasonably required to assure its continued confidentiality if the producing party provides written notice to the receiving party identifying the document or information in question and of the corrected confidential designation for the document or information.

B.    Inadvertent production of documents or information subject to the attorney-client privilege or work product immunity shall not constitute a waiver of such privilege.  After receiving notice from the producing party that such documents or information have been inadvertently produced, the receiving party shall not review, copy, or disseminate such documents or information.  The receiving party shall return such documents or information to the producing party immediately.

7.    In the event counsel for the party receiving documents, material, or information designated as "Confidential" or "Attorneys Eyes Only" objects to such designation of any or all of such items, which objection shall be made at any time following receipt of such documents absent agreement by the parties, said counsel shall advise the party producing the item(s) (the "producing party") of such objection and the reasons therefore.  Counsel for the producing party shall have ten (10) days from receipt of such objection to cure it prior to any application to the Court for resolution of the issues.  If the producing party maintains that the items are confidential after receipt of the notice of objection, all items shall be treated as "Confidential" or "Attorneys Eyes Only" as originally designated, pending a resolution of the parties' dispute.  It shall be the obligation of the party receiving the item(s) (the "receiving party") designated as "Confidential"

4

or "Attorneys Eyes Only" to obtain a prompt hearing before the Court on the propriety of the designation. In the event that the receiving party seeks such a hearing, the producing party will cooperate in obtaining a prompt hearing with respect thereto.

8.     If any party wishes to use or inquire at any deposition concerning documents, material or information designated as "Confidential" or "Attorneys Eyes Only" the portion of the deposition transcript relating to such documents, material or information shall be designated by the witness giving the testimony, or by any party to the deposition, and treated as "Confidential" or "Attorneys Eyes Only" and subject to the confidentiality provisions hereof. Such designation shall be made no later than thirty (30) days after receipt of the deposition transcript.

9.     Documents, information or material (including portions of deposition transcripts) designated as "Confidential" or "Attorneys Eyes Only" or information derived therefrom, may only be disclosed or made available by the party receiving such information to "Qualified Persons," who, in the case of documents, material or information designated as "Confidential" are defined to consist solely of:

      (a)     The Court (at any trial, appeal or oral hearing and in the manner provided by paragraph 9 hereof) and its authorized personnel;

      (b)     Counsel to the named parties to this action and the paralegal, clerical and secretarial staff employed by such counsel;

      (c)     The parties to this named action;

      (d)     Court reporters;

      (e)     Experts and/or advisors for the named parties or their counsel, in connection with this action, whether or not retained to testify at trial. Counsel for the party making the disclosure to any expert and/or advisor shall deliver a copy of this Order to the expert and/or advisor, shall explain its terms to the expert and/or advisor, and shall secure the signature of the expert

5

and/or advisor on the attached "Limited Special Appearance
and Agreement For Access to Confidential Information" (the
"Special Appearance"). It shall be the obligation of counsel,
upon learning of any breach or threatened breach of this Order
by any expert and/or advisor, promptly to notify opposing
counsel of such breach or threatened breach.

10.    Nothing herein shall impose any restrictions on the use or disclosure by a party or

witness of documents or information obtained through discovery proceedings between the parties

in this action which have also been obtained lawfully by a party or witness from an independent

source.

11.    If documents, information or material (including portions of deposition

transcripts) designated as "Confidential" or "Attorneys Eyes Only" information derived

therefrom, are to be included in any papers to be filed in Court, such papers shall be labeled

"Confidential - - Filed Under Seal" and filed under seal and kept under seal until further Order of

the Court.

12.    All persons given access to documents, material or information designated

"Confidential" or "Attorneys Eyes Only" pursuant to the terms hereof shall be advised that the

documents, material, or information are being disclosed pursuant to and subject to the terms of

this Order and may not be disclosed other than pursuant to the terms hereof.

13.    Complying with the terms of this Order shall not (a) operate as an admission by

any party that any particular documents, material or information contain or reflect currently

valuable proprietary or commercial information; or (b) prejudice in any way the right of a party

at any time: (i) to seek a determination by the Court of whether any particular documents, item of

material, or piece of information should be subject to the terms of this Order; or (ii) to seek relief

on appropriate notice from any provision(s) of this Order, either generally or as to any particular

documents, item of material, or piece of information.

00089165.DOC /

14.     Upon request of a party and within thirty (30) days of the termination of this action, including all appeals, all Confidential Information and all copies thereof shall be returned to counsel for the party (except that counsel for each party may maintain in their files pleadings, briefs and other documents filed with the Court and depositions, transcripts and exhibits, provided that all such documents otherwise remain subject to the terms of this Order).

15.     Nothing in this Order shall be construed to prohibit a party from producing documents, material or information designated as "Confidential" or "Attorneys Eyes Only" in its possession pursuant to a subpoena or other legal process provided that, the party in possession of such documents, materials or information, if subpoenaed, shall give notice of such subpoena to the original producing party as soon as possible and, in any event within five (5) days after receiving such subpoena.  The subpoenaed party shall not produce any of the producing party's Confidential Information for a period of at least ten (10) days after providing the required notice to the producing party unless required to do so by the court issuing the subpoena.  If, within five (5) days of receiving such notice, the producing party opposes production of its Confidential Information pursuant to the subpoena, the subpoenaed party shall reasonably cooperate with the producing party in seeking to quash such subpoena and shall not thereafter produce such Confidential Information pursuant to the subpoena except pursuant to a court order requiring compliance with the subpoena.

16.     This Order shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

17.     The terms and conditions of this Order shall be governed by the laws of the State of Massachusetts.  Any action to enforce this Order shall be brought in the United States District Court for the District of Massachusetts.

00089165.DOC /

**SO ORDERED**, this ___4___ day of ___August___ 2005.

_____
U.S.D.J.

00089165.DOC /

**EXHIBIT C**



# The Commonwealth of Massachusetts
## Secretary of the Commonwealth
### State House, Boston, Massachusetts 02133

**William Francis Galvin**
**Secretary of the**
**Commonwealth**

**October 20, 2005**

TO WHOM IT MAY CONCERN:

    I hereby certify that according to the records of this office,

### THE BUGATTI, INC.

is a domestic corporation organized on **October 29, 1973,** under the General Laws of the Commonwealth of Massachusetts.

    I further certify that there are no proceedings presently pending under the Massachusetts General Laws Chapter 156D section 14.21 for said corporation's dissolution; that articles of dissolution have not been filed by said corporation; that, said corporation has filed all annual reports, and paid all fees with respect to such reports, and so far as appears of record said corporation has legal existence and is in good standing with this office.



In testimony of which,

I have hereunto affixed the

Great Seal of the Commonwealth

on the date first above written.

*William Francis Galvin*

Secretary of the Commonwealth

rocessed By: CMM

BUG03138

*9 7647*

**RECEIVED**

OCT 29 1973

CORPORATION DIVISION
**SECRETARY'S OFFICE**

**THE COMMONWEALTH OF MASSACHUSETTS**

**ARTICLES OF ORGANIZATION**
GENERAL LAWS, CHAPTER 156B, SECTION 12

I hereby certify that, upon an examination of the within-written articles of organization, duly submitted to me, it appears that the provisions of the General Laws relative to the organization of corporations have been complied with, and I hereby approve said articles; and the filing fee in the amount of $_____ having been paid, said articles are deemed to have been filed with me this _____ day of _____ 19 73

*Effective date*

*John F. X. Davoren*

**JOHN F. X. DAVOREN**
*Secretary of the Commonwealth*

A TRUE COPY ATTEST

*[signature]*

WILLIAM FRANCIS GALVIN
SECRETARY OF THE COMMONWEALTH
DATE _____ /CLERK

**TO BE FILLED IN BY CORPORATION**

PHOTO COPY OF ARTICLES OF ORGANIZATION TO BE SENT

TO: ........................................

........................................

........................................

FILING FEE: 1-20 of 1% of the total amount of the authorized capital stock with par value, and one cent a share for all authorized shares without par value, but not less than $75. General Laws, Chapter 156B. Shares of stock with a par value of less than one dollar shall be deemed to have par value of one dollar per share.

Copy Mailed    NOV 2 1973

BUG03139

**EXHIBIT F**

III. Appendix

Int. Cl.: 18

Prior U.S. Cl.: 3

## United States Patent and Trademark Office

Reg. No. 1,158,090
Registered Jun. 23, 1981

### TRADEMARK
Principal Register

# BUGATTI

The Bugatti, Inc. (Massachusetts corporation)
222 Third St.
Cambridge, Mass. 02142

For: LEATHER GOODS AND ACCESSORIES —NAMELY, HANDBAGS, PURSES, WALLETS, POCKETBOOKS, BILLFOLDS, DUFFLE BAGS, TOTE BAGS, KNAPSACKS, RUCKSACKS, COSMETIC BAGS SOLD EMPTY, SHAVING BAGS SOLD EMPTY, SATCHELS, SUITCASES, TRAVELLING BAGS, VALISES, OVERNIGHT BAGS, ONE SUITER BAGS, TWO SUITER BAGS, SADDLE BAGS, LUGGAGE TYPE BOOT AND SHOE BAGS, AND KEY CASES, in CLASS 18 (U.S. Cl. 3).

First use Jun. 15, 1972; in commerce Sep. 15, 1972.

Ser. No. 158,794, filed Feb. 15, 1978.

DAVID C. REIHNER, Primary Examiner

REGISTERED FOR A TERM OF 20 YEARS FROM June 23, 1981

BUG0001

Certified to be a true copy of the registration issued by the United States Patent & Trademark Office, which registration is in full force and effect.

Attest:

MAR 30 1982

Attesting Officer

COMMISSIONER OF PATENTS AND TRADEMARKS

**EXHIBIT G**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VOLKSWAGEN AG, VOLKSWAGEN OF AMERICA, INC. and BUGATTI INTERNATIONAL, S.A.<br><br>Plaintiffs,<br><br>v.<br><br>THE BUGATTI, INC.<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION
NO.  05-11067 PBS

## AMENDED ANSWER, COUNTERCLAIMS AND JURY DEMAND OF DEFENDANT THE BUGATTI, INC.

Now comes the defendant, The Bugatti, Inc. ("Bugatti"), and answers the complaint of

the plaintiffs Volkswagen AG, Volkswagen of America, Inc. and Bugatti International, S.A

(collectively "VW"), as follows:

### THE PARTIES

1.     Bugatti is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 1 of the Complaint, and therefore denies same.

2.     Bugatti is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 2 of the Complaint, and therefore denies same.

3.     Bugatti is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 3 of the Complaint, and therefore denies same.

4.     Bugatti admits that it is a corporation and has a principal place of business at 100

Condor Street, East Boston, Massachusetts 02128.

JURISDICTION

5.      In response to the allegations of paragraph 5 of the Complaint, Bugatti states that it contains statements and conclusions of law, as to which no responsive pleading is required. To the extent that a responsive pleading is required, Bugatti states that the statutes to which reference is made speak for themselves, and denies each and every other allegation contained in paragraph 5 of the Complaint.

6.      In response to the allegations of paragraph 6 of the Complaint, Bugatti states that it contains statements and conclusions of law, as to which no responsive pleading is required. To the extent that a responsive pleading is required, Bugatti states that the statutes to which reference is made speak for themselves, and denies each and every other allegation contained in paragraph 6 of the Complaint.

7.      In response to the allegations of paragraph 7 of the Complaint, Bugatti states that it contains statements and conclusions of law, as to which no responsive pleading is required. To the extent that a responsive pleading is required, Bugatti states that the statutes to which reference is made speak for themselves, and denies each and every other allegation contained in paragraph 7 of the Complaint.

8.      In response to the allegations of paragraph 8 of the Complaint, Bugatti states that it contains statements and conclusions of law, as to which no responsive pleading is required. To the extent that a responsive pleading is required, Bugatti states that the statutes to which reference is made speak for themselves, and denies each and every other allegation contained in paragraph 8 of the Complaint.

FACTS

9.     Bugatti admits that U.S. Trademark Registration Nos. 1,883,332, 2,100,963,

2,299,293, 2,849974, 2,930,238, and 2,932,356 appear from the USPTO's TESS database to be

registered by Volkswagen Aktiengesellschaft Corporation Fed Rep Germany Brieffach 1770 D-

38436 Wolfsburg Fed Rep Germany.  U.S. Trademark Registration No. 2,181,615 (now cancelled)

for the mark CHARITABLE LEGACY PLAN appears from the USPTO's TESS database to be

registered by Robert Ritter dba InsMark Insurance Services; Stone Valley Road, Alamo California

94507.  U.S. Trademark Applications bearing Serial Nos. 79001131 and 79001133 appear from the

USPTO's TESS database to be applied for by Volkswagen Aktiengesellschaft Corporation Fed

Rep Germany Brieffach 1770 D-38436 Wolfsburg Fed Rep Germany.    U.S. Trademark

Application bearing Serial Nos. 79001521 appears from the USPTO's TESS database to be applied

for by Volkswagen AG Corporation Fed Rep Germany D-38436 Wolfsburg Fed Rep Germany.

Bugatti is without knowledge or information sufficient to form a belief as to the truth of the

remainder of the allegations contained in paragraph 9 of the Complaint, and therefore denies same.

10.     Bugatti is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 10 of the Complaint, and therefore denies same.

11.     Bugatti is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 11 of the Complaint, and therefore denies same.

12.     Bugatti is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 12 of the Complaint, and therefore denies same.

13.     Bugatti is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 13 of the Complaint, and therefore denies same.

14.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint, and therefore denies same.

15.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint, and therefore denies same.

16.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint, and therefore denies same.

17.    Bugatti admits that U.S. Trademark Registration Nos. 1,407,200 and 1,440,535 appear from the USPTO's TESS database to be registered by Bugatti International of Luxembourg 8 Rue Nicolas Petit.  Bugatti is unable to locate any information on U.S. Trademark Registration No. 1,444,0536.  Bugatti is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 17 of the Complaint, and therefore denies same.

18.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint, and therefore denies same.

19.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint, and therefore denies same.

20.    Bugatti denies the allegations contained in paragraph 20 of the Complaint.

21.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint, and therefore denies same.

22.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint, and therefore denies same.

23.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint, and therefore denies same.

24.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, and therefore denies same.

25.    Bugatti admits that U.S. Trademark Application No. 78/175,475 for the EB BUGATTI mark for leather goods, namely suitcases, bags, namely, athletic bags, travel bags, cosmetic cases sold empty, ladies' bags, namely, clutch bags, shoulder bags, purses, pocket wallets, toy cars, model cars for collectors, and leather golf bag appears from the USPTO's TESS database to be applied for by Bugatti International S.A. Corporation, Fed Rep Germany 8 - 10, rue Mathias Hardt Luxembourg 1717.  Bugatti is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 25 of the Complaint, and therefore denies same.

26.    Bugatti admits that U.S. Trademark Registration No. 2,829,102 appears from the USPTO's TESS database to be registered to Bugatti International S.A. Corporation, Fed Rep Germany Luxembourg 1717.  Bugatti is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 26 of the Complaint, and therefore denies same.

27.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint, and therefore denies same.

28.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint, and therefore denies same.

29.    Bugatti denies the allegations contained in paragraph 29 of the Complaint.

30.    Bugatti denies the allegations contained in paragraph 30 of the Complaint.

31.    Bugatti admits that U.S. Trademark Registration No. 1,883,332 and 2,849,974 appear from the USPTO's TESS database to be registered to Volkswagen Aktiengesellschaft

Company Fed Rep Germany Wolfsburg Fed Rep Germany. To the extent that this allegation relies on documents and/or website content, those documents and/or website content speak for themselves. Bugatti denies each and every other allegation contained in paragraph 31 of the Complaint.

32.     To the extent that this allegation relies on documents and/or website content, those documents and/or website content speak for themselves. Bugatti denies each and every other allegation contained in paragraph 32 of the Complaint.

33.     Bugatti denies the allegations contained in paragraph 33 of the Complaint.

34.     Bugatti denies the allegations contained in paragraph 34 of the Complaint.

35.     Bugatti denies the allegations contained in paragraph 35 of the Complaint.

36.     To the extent that this allegation relies on documents and/or website content, those documents and/or website content speak for themselves. Bugatti denies each and every other allegation contained in paragraph 36 of the Complaint.

37.     Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint, and therefore denies same.

38.     Bugatti denies the allegations contained in paragraph 38 of the Complaint.

39.     Bugatti denies the allegations contained in paragraph 39 of the Complaint.

40.     Bugatti admits that it is a manufacturer and distributor of fine hand crafted leather goods and accessories.

41.     Bugatti admits that it is the holder of U.S. Trademark Registration No. 1,155,090 (now cancelled) for the mark BUGATTI for leather goods and accessories and that this registration has been cancelled. Bugatti denies each and every other allegation contained in paragraph 41 of the Complaint.

42.    Bugatti admits that it is the applicant in an application for U.S. Trademark bearing application No. 76/536,905 for the mark BUGATTI.    Bugatti denies each and every other allegation contained in paragraph 42 of the Complaint.

43.    Bugatti admits that its application for U.S. Trademark bearing application No. 76/536,905 was suspended.    Bugatti denies each and every other allegation contained in paragraph 43 of the Complaint.

44.    Bugatti admits that it is the holder of U.S. Trademark Registration No. 1,155,090 (now cancelled) for the mark BUGATTI for leather goods and accessories and that this registration has been cancelled and that it has no other U.S. Trademark Registrations for leather goods and accessories, but that it has continuously used the BUGATTI mark in connection with leather goods and accessories continuously in commerce for over 25 years and has established significant goodwill in such mark.    Bugatti denies each and every other allegation contained in paragraph 44 of the Complaint.

45.    Bugatti admits that it has no pending application for a U.S. Trademark for a Red Oval Logo bearing the word BUGATTI, but it has continuously used a Red Oval with a Dot Surround Logo having the word BUGATTI thereon in commerce for over 25 years and has established significant goodwill in such mark.    Bugatti denies each and every other allegation contained in paragraph 45 of the Complaint.

46.    Bugatti admits that it has no U.S. Trademark Registration for a Red Oval Logo bearing the word BUGATTI but it has continuously used a Red Oval with a Dot Surround Logo having the word BUGATTI thereon in commerce for over 25 years and has established significant goodwill in such mark.    Bugatti admits that it has no pending application for a U.S. Trademark for a Red Oval Logo bearing the word BUGATTI but it has continuously used a Red Oval with a Dot

Surround Logo having the word BUGATTI thereon in commerce for over 25 years and has established significant goodwill in such mark. Bugatti denies each and every other allegation contained in paragraph 46 of the Complaint.

47.    Bugatti denies the allegations contained in paragraph 47 of the Complaint.

48.    Bugatti denies the allegations contained in paragraph 48 of the Complaint.

49.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the Complaint, and therefore denies same.

50.    To the extent that this allegation relies on documents and/or website content, those documents and/or website content speak for themselves. Bugatti denies each and every other allegation contained in paragraph 50 of the Complaint.

51.    To the extent that this allegation relies on documents and/or website content, those documents and/or website content speak for themselves. Bugatti denies each and every other allegation contained in paragraph 51 of the Complaint.

52.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 of the Complaint, and therefore denies same.

53.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the Complaint, and therefore denies same.

54.    Bugatti denies the allegations contained in paragraph 54 of the Complaint.

55.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55 of the Complaint, and therefore denies same.

COUNT I
[VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114;
INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK]

56.     Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 39,

inclusive.

57.     Bugatti denies the allegations contained in paragraph 57 of the Complaint.

58.     Bugatti denies the allegations contained in paragraph 58 of the Complaint.

59.     Bugatti denies the allegations contained in paragraph 59 of the Complaint.

60.     Bugatti denies the allegations contained in paragraph 60 of the Complaint.

COUNT II
[VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a); FALSE DESIGNATION
OF ORIGIN, FALSE DESCRIPTION AND FALSE REPRESENTATION]

61.     Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 39,

inclusive.

62.     Bugatti denies the allegations contained in paragraph 62 of the Complaint.

63.     Bugatti denies the allegations contained in paragraph 63 of the Complaint.

64.     Bugatti denies the allegations contained in paragraph 64 of the Complaint.

COUNT III
[COMMON LAW TRADEMARK INFRINGEMENT]

65.     Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 39,

inclusive.

66.     Bugatti denies the allegations contained in paragraph 66 of the Complaint.

67.     Bugatti denies the allegations contained in paragraph 67 of the Complaint.

COUNT IV
[VIOLATION OF THE FEDERAL TRADEMARK DILUTION ACT, 15 U.S.C. § 1125(c);
DILUTION OF FAMOUS MARK AND INJURY TO BUSINESS REPUTATION]

68.     Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 39, inclusive.

69.     Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Complaint, and therefore denies same.

70.     In response to the allegations of paragraph 70 of the Complaint, Bugatti states that it contains statements and conclusions of law, as to which no responsive pleading is required.  To the extent that a responsive pleading is required, Bugatti states that the statutes to which reference is made speak for themselves, and denies each and every other allegation contained in paragraph 70 of the Complaint.

71.     Bugatti denies the allegations contained in paragraph 71 of the Complaint.

72.     Bugatti denies the allegations contained in paragraph 72 of the Complaint.

73.     Bugatti denies the allegations contained in paragraph 73 of the Complaint.

74.     Bugatti denies the allegations contained in paragraph 74 of the Complaint.

75.     Bugatti denies the allegations contained in paragraph 75 of the Complaint.

COUNT V
[VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 110B,
SECTION 12; INJURY TO BUSINESS REPUTATION AND DILUTION]

76.     Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 39, inclusive.

77.     Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77 of the Complaint, and therefore denies same.

78.     Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78 of the Complaint, and therefore denies same.

79.    Bugatti denies the allegations contained in paragraph 79 of the Complaint.

80.    Bugatti denies the allegations contained in paragraph 80 of the Complaint.

81.    Bugatti denies the allegations contained in paragraph 81 of the Complaint.

82.    Bugatti denies the allegations contained in paragraph 82 of the Complaint.

## COUNT VI
### [COMMON LAW UNFAIR COMPETITION]

83.    Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 39, inclusive.

84.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of the Complaint, and therefore denies same.

85.    Bugatti denies the allegations contained in paragraph 85 of the Complaint.

86.    Bugatti denies the allegations contained in paragraph 86 of the Complaint.

87.    Bugatti denies the allegations contained in paragraph 87 of the Complaint.

88.    Bugatti denies the allegations contained in paragraph 88 of the Complaint.

89.    Bugatti denies the allegations contained in paragraph 89 of the Complaint.

## COUNT VII
### [VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114; INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK]

90.    Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

91.    Bugatti denies the allegations contained in paragraph 91 of the Complaint.

92.    Bugatti denies the allegations contained in paragraph 92 of the Complaint.

93.    Bugatti denies the allegations contained in paragraph 93 of the Complaint.

94.    Bugatti denies the allegations contained in paragraph 94 of the Complaint.

COUNT VIII
[VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a); FALSE DESIGNATION OF
ORIGIN, FALSE DESCRIPTION AND FALSE REPRESENTATION]

95.    Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 28
and 40 through 55, inclusive.

96.    Bugatti denies the allegations contained in paragraph 96 of the Complaint.

97.    Bugatti denies the allegations contained in paragraph 97 of the Complaint.

98.    Bugatti denies the allegations contained in paragraph 98 of the Complaint.

COUNT IX
[COMMON LAW TRADEMARK INFRINGEMENT]

99.    Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 28
and 40 through 55, inclusive.

100.    Bugatti denies the allegations contained in paragraph 100 of the Complaint.

101.    Bugatti denies the allegations contained in paragraph 101 of the Complaint.

COUNT X
[COMMON LAW TRADEMARK INFRINGEMENT]

102.    Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 28
and 40 through 55, inclusive.

103.    Bugatti is without knowledge or information sufficient to form a belief as to the
truth of the allegations contained in paragraph 103 of the Complaint, and therefore denies same.

104.    Bugatti is without knowledge or information sufficient to form a belief as to the
truth of the allegations contained in paragraph 104 of the Complaint, and therefore denies same.

105.    In response to the allegations of paragraph 105 of the Complaint, Bugatti states that
it contains statements and conclusions of law, as to which no responsive pleading is required.  To
the extent that a responsive pleading is required, Bugatti states that the statutes to which reference

is made speak for themselves, and denies each and every other allegation contained in paragraph 105 of the Complaint.

106.    In response to the allegations of paragraph 106 of the Complaint, Bugatti states that it contains statements and conclusions of law, as to which no responsive pleading is required.  To the extent that a responsive pleading is required, Bugatti states that the statutes to which reference is made speak for themselves, and denies each and every other allegation contained in paragraph 106 of the Complaint.

107.    Bugatti denies the allegations contained in paragraph 107 of the Complaint.

108.    Bugatti denies the allegations contained in paragraph 108 of the Complaint.

109.    Bugatti denies the allegations contained in paragraph 109 of the Complaint.

110.    Bugatti denies the allegations contained in paragraph 110 of the Complaint.

COUNT XI<br>
[VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 110B,<br>
SECTION 12; INJURY TO BUSINESS REPUTATION AND DILUTION]

111.    Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

112.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112 of the Complaint, and therefore denies same.

113.    Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 of the Complaint, and therefore denies same.

114.    Bugatti denies the allegations contained in paragraph 114 of the Complaint.

115.    Bugatti denies the allegations contained in paragraph 115 of the Complaint.

116.    Bugatti denies the allegations contained in paragraph 116 of the Complaint.

117.    Bugatti denies the allegations contained in paragraph 117 of the Complaint.

COUNT XII
[COMMON LAW UNFAIR COMPETITION]

118.     Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 28 and 40 through 55, inclusive.

119.     Bugatti is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119 of the Complaint, and therefore denies same.

120.     Bugatti denies the allegations contained in paragraph 120 of the Complaint.

121.     Bugatti denies the allegations contained in paragraph 121 of the Complaint.

122.     Bugatti denies the allegations contained in paragraph 122 of the Complaint.

123.     Bugatti denies the allegations contained in paragraph 123 of the Complaint.

124.     Bugatti denies the allegations contained in paragraph 124 of the Complaint.

COUNT XIII
[UNCLEAN HANDS]

125.     Bugatti reasserts and incorporates herein its averments of Paragraphs 1 through 55, inclusive.

126.     Bugatti denies the allegations contained in paragraph 126 of the Complaint.

127.     Bugatti denies the allegations contained in paragraph 127 of the Complaint.

128.     Bugatti denies the allegations contained in paragraph 128 of the Complaint.

129.     Bugatti denies the allegations contained in paragraph 129 of the Complaint.

130.     Bugatti denies the allegations contained in paragraph 130 of the Complaint.

131.     Bugatti denies the allegations contained in paragraph 131 of the Complaint.

132.     Bugatti denies the allegations contained in paragraph 132 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

VW has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

VW's claims are barred by equitable principles including the doctrines of laches, acquiescence and estoppel.

### THIRD AFFIRMATIVE DEFENSE

Bugatti has priority to the BUGATTI mark in relation to its business as the mark was in use in interstate commerce by Bugatti prior to VW's adoption of the BUGATTI mark.

### FOURTH AFFIRMATIVE DEFENSE

VW has lost its rights to certain of its asserted marks as a consequence of its abandonment of those marks.

### FIFTH AFFIRMATIVE DEFENSE

Any use of any VW mark constitutes a fair use.

### SIXTH AFFIRMATIVE DEFENSE

VW's claims are barred by its own unclean hands.

## COUNTERCLAIM

Now comes the defendant, plaintiff in counterclaim, The Bugatti, Inc. ("Bugatti"), and for its counterclaim against plaintiffs, defendants in counterclaim Volkswagen AG ("VWAG"), Volkswagen of America, Inc. ("VWOA")(VWAG and VWOA collectively "Volkswagen") and Bugatti International, S.A ("BISA")(VWAG, VWOA, and BISA collectively "VW"), as follows:

### THE PARTIES

1.    Bugatti is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 100 Condor Street, Boston, Massachusetts 02128.

2.    Bugatti is informed and believes, and therefore avers, that VWAG is a corporation organized and existing under the laws of Germany, with a principal place of business in Wolfsburg, Federal Republic of Germany.

3.    Bugatti is informed and believes, and therefore avers, that VWOA is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business in Auburn Hills, Michigan.

4.    Bugatti is informed and believes, and therefore avers, that BISA is a corporation organized and existing under the laws of Luxembourg, with a principal place of business in Luxembourg.

### JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition claims). The federal claims include a declaration of trademark priority and unfair competition under the Lanham Act (15 U.S.C. § 1051 *et seq.*). Alternatively, this Court has jurisdiction under 28 U.S.C. § 1332, as this suit involves citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000), not counting interest and costs.

6.    This Court has jurisdiction over the state law and common law claims under the doctrine of pendant jurisdiction 28 U.S.C. § 1337. The state and common law claims arise from or are substantially related to the same acts giving rise to the federal claims.

7.    This Court has personal jurisdiction over defendant BISA under the Massachusetts long arm statute, M.G.L. c. 223A, § 3, because the claims arise from BISA's tortious conduct causing harm in the Commonwealth of Massachusetts.

8.    Venue in this Court is proper under 28 U.S.C. § 1391.  BISA is subject to jurisdiction in this district and a substantial part of the accused infringement, unfair competition, and other unlawful acts occurred in this district.

## FACTUAL BACKGROUND

9.    Plaintiff in counterclaim Bugatti was founded in 1972, and it began using "Bugatti" as its corporate name at that time.  It began using the BUGATTI mark in interstate commerce shortly thereafter, and has continuously used the mark throughout the United States since that time.  Bugatti began using the domain name www.bugatti.com in connection with its Internet web site in October 1995.

10.    Since its founding, Bugatti has been engaged in the business, *inter alia*, of manufacturing and selling various leather goods and accessories to distributors and the general public throughout the United States.

11.    Bugatti uses its BUGATTI mark in connection with its leather goods and accessories including but not limited to handbags, purses, wallets, pocketbooks, billfolds, duffle bags, tote bags, knapsacks, rucksacks, cosmetic bags, shaving bags, satchels, suitcases, traveling bags, valises, overnight bags, one suiter bags, two suiter bags, saddle bags, luggage type boot and shoe bags, and key cases.

12.    In order to succeed in its business, Bugatti relies heavily on the strength and goodwill associated with its marks to differentiate its business as a provider of high quality leather goods.  Bugatti's business is marketed throughout the United States and worldwide,

including via the Internet and at trade events.

13.    Bugatti had registered the mark BUGATTI with the United States Patent and Trademark Office ("USPTO") on June 23, 1981 as Reg. No. 1,158,090 for use in connection with "leather goods and accessories, namely, handbags, purses, wallets, pocketbooks, billfolds, duffle bags, tote bags, knapsacks, rucksacks, cosmetic bags sold empty, shaving bags sold empty, satchels, suitcases, traveling bags, valises, overnight bags, one suiter bags, two suiter bags, saddle bags, luggage type boot and shoe bags, and key cases."

14.    Bugatti has used its BUGATTI mark in connection with the provision of leather goods and accessories, namely, handbags, purses, wallets, pocketbooks, billfolds, duffle bags, tote bags, knapsacks, rucksacks, cosmetic bags sold empty, shaving bags sold empty, satchels, suitcases, traveling bags, valises, overnight bags, one suiter bags, two suiter bags, saddle bags, luggage type boot and shoe bags, and key cases, including in (1) advertising, press releases and press kits, brochures, and materials distributed at trade events; (2) its Internet web site, (3) its letterhead and business cards, and (4) invoices that it issues to customers.

15.    Bugatti inadvertently and unintentionally failed to pay its trademark renewal fee for Registration Number 1,158,090 and, as a result, the said registration was cancelled by the USPTO.

16.    Upon becoming aware of the cancellation of Registration Number 1,158,090, Bugatti filed Application Serial Number 76/536,905 to register the mark BUGATTI for "leather goods and accessories, namely, handbags, purses, wallets, pocketbooks, billfolds, duffle bags, tote bags, knapsacks, rucksacks, cosmetic bags sold empty, shaving bags sold empty, satchels, suitcases, traveling bags, valises, overnight bags, one suiter bags, two suiter bags, saddle bags, luggage type boot and shoe bags, and key cases." This application remains pending before the

USPTO.

17.    By virtue of its continuous use of its BUGATTI mark in the Commonwealth of Massachusetts and throughout the United States, consumers have come to associate the BUGATTI mark with Bugatti's fine quality leather goods, and Bugatti has established trademark, trade name, and service mark rights in its BUGATTI mark under the laws of the Commonwealth of Massachusetts, other states, and the United States, and Bugatti owns invaluable goodwill represented by the BUGATTI trademark.

18.    Bugatti is informed and believes, and therefore avers that BISA has applied to the USPTO to register the trademark EB BUGATTI, Application Serial No. 78/175,475 (the "BISA Application"), for "leather goods, namely suitcases, bags, namely, athletic bags, travel bags, cosmetic cases sold empty, ladies' bags, namely, clutch bags, shoulder bags, purses, pocket wallets" in International Class 18, and "toy cars, model cars for collectors, leather golf bags" in International Class 28.

19.    Bugatti is informed and believes, and therefore avers that BISA has made no use of the trademark EB BUGATTI for any of the goods identified in the BISA Application.

20.    Bugatti was using the BUGATTI mark for well over three decades in connection with leather goods and accessories before the BISA Application.  BISA knew of the existence of the BUGATTI mark at all relevant times as a result of the discussions between Bugatti and BISA exploring business opportunities, the constructive notice provided by the registration of the BUGATTI mark, and Bugatti's continuous use of BUGATTI as a company name in interstate commerce since at least 1972.

21.    Through long and substantial use, sales and advertising of and under the BUGATTI trademark, and since long prior to the filing date of the BISA Application, Bugatti's

BUGATTI trademark acquired a high degree of distinctiveness symbolizing the invaluable goodwill owned by Bugatti.

22.    By virtue of Bugatti's extensive use, advertising and promotion of its BUGATTI trademark, long prior to the filing date of the BISA Application, Bugatti's BUGATTI trademark has become well-known and consumers have come to associate the BUGATTI trademark with Bugatti.

23.    Since long prior to filing date of the BISA Application, the BUGATTI trademark has been famous within the meaning of Section 43(c) of the United States Trademark Act, 15 U.S.C. § 1125(c).

24.    Use by BISA of the trademark EB BUGATTI for applicant's aforesaid goods is likely to cause confusion, deception, or mistake as to the source of origin, sponsorship, or approval of BISA's products, in violation of Section 2(d) of the United States Trademark Act of 1946, 15 U.S.C. § 1052 (d), in that purchasers or others are likely to believe that BISA's products are Bugatti's products, or the products of a company legitimately connected with, or related to, Bugatti.

25.    Any use of the mark EB BUGATTI for applicant's aforesaid goods is likely to dilute the distinctive qualities of Bugatti's BUGATTI trademark in violation of Section 43(c) of the United States Trademark Act of 1946, 15 U.S.C. § 1125(c).

26.    BISA has infringed Bugatti's rights in the BUGATTI mark in interstate commerce. BISA's infringement includes without limitation the following acts: (1) adopting the BUGATTI mark, which is identical to Bugatti's BUGATTI mark; (2) adopting the EB BUGATTI and/or BUGATTI marks, which are identical or  confusingly similar to the BUGATTI mark, and (3) promoting, marketing, and selling BISA products using the identical

and/or confusingly similar EB BUGATTI and/or BUGATTI marks.

27.    Bugatti has never authorized BISA to use, maintain, seek to register, or register the EB BUGATTI or BUGATTI marks or any mark that is confusingly similar to these marks for use in connection with leather goods and accessories.

28.    BISA's use of the BUGATTI mark causes confusion, mistake, and deception as to affiliation, connection, or association of BISA with Bugatti, and as to the origin, sponsorship, or approval of BISA's programs and activities by Bugatti.

29.    Bugatti has been damaged by such use of the BUGATTI marks by BISA.

COUNT I
DECLARATORY JUDGMENT OF PRIORITY TO TRADEMARK
UNDER SECTION 33 OF THE LANHAM ACT

30.    Bugatti repeats and re-alleges each allegation contained in the preceding paragraphs.

31.    BISA has applied for the EB BUGATTI mark in its U.S. Trademark Application No. 78/175,475 in connection with leather goods, namely suitcases, bags, namely, athletic bags, travel bags, cosmetic cases sold empty, ladies' bags, namely, clutch bags, shoulder bags, purses, pocket wallets, toy cars, model cars for collectors, and leather golf bags.

32.    BISA is not entitled to use the EB BUGATTI or BUGATTI marks in the sale, offer for sale, or advertising of leather goods and accessories as Bugatti has priority rights to the BUGATTI mark in connection with the sale, offer for sale, or advertising of leather goods and accessories.

33.    At all times relevant, BISA has been aware of Bugatti's business and attendant goodwill associates with the BUGATTI mark in connection with the sale, offer for sale, or advertising of leather goods and accessories.

34.    An actual and justiciable controversy exists between Bugatti and BISA as to the

priority rights of Bugatti to the BUGATTI mark in connection with the sale, offer for sale and advertisement of leather goods and accessories.

COUNT II
DECLARATORY JUDGMENT OF TRADEMARK INVALIDITY
AND CANCELLATION UNDER SECTION 33 OF THE LANHAM ACT

35.     Bugatti repeats and re-alleges each allegation contained in the preceding paragraphs.

36.     BISA has alleged in its Complaint that Bugatti's sale, offer for sale, or advertising of leather goods and accessories has caused a likelihood of confusion, mistake or deception to consumers, or prospective purchasers and the trade in light of BISA's U.S. Trademark Registrations 1,407,200 and 1,440,535 (the "BISA Registrations"), as registered in 1986 for clocks, watches, jewelry, wines, pens, aircraft, and automobiles.

37.     Bugatti disputes BISA's allegations, but to the extent that BISA's assertion that the offer for sale, or advertising of leather goods and accessories under the Bugatti name has caused a likelihood of confusion, mistake or deception to consumers, or prospective purchasers of clocks, watches, jewelry, wines, pens, aircraft, and automobiles, then Bugatti has priority to the use of the BUGATTI mark in any area of commerce likely to be confused with the Bugatti name, and as a result, BISA's trademark registrations in these goods and services are invalid.

38.     At all times relevant, BISA has been aware of Bugatti's business and attendant goodwill associates with the BUGATTI mark in connection with the sale, offer for sale, or advertising of leather goods and accessories.

39.     An actual and justiciable controversy exists between Bugatti and BISA as to the priority rights of Bugatti to the BUGATTI mark in connection with the sale, offer for sale and advertisement of clocks, watches, jewelry, wines, pens, aircraft, and automobiles or any other classification of goods deemed confusing to Bugatti's BUGATTI mark.

COUNT III
### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER §43 OF THE LANHAM ACT

40.     Bugatti repeats and re-alleges each allegation contained in the preceding paragraphs.

41.     BISA has alleged in its Complaint that Bugatti's sale, offer for sale, or advertising of leather goods and accessories has caused a likelihood of confusion, mistake or deception to consumers, or prospective purchasers and the trade in light of BISA's U.S. Trademark Registrations 1,407,200 and 1,440,535 (the "BISA Registrations"), as registered in 1986 for clocks, watches, jewelry, wines, pens, aircraft, and automobiles.

42.     Bugatti disputes BISA's allegations, but to the extent that BISA's assertion that the offer for sale, or advertising of leather goods and accessories under the Bugatti name has caused a likelihood of confusion, mistake or deception to consumers, or prospective purchasers of clocks, watches, jewelry, wines, pens, aircraft, and automobiles, then Bugatti has priority to the use of the BUGATTI mark in any area of commerce likely to be confused with the Bugatti name, and as a result, BISA has violated and continues to violate Bugatti's BUGATTI mark.

43.     At all times relevant, BISA has been aware of Bugatti's business and attendant goodwill associates with the BUGATTI mark in connection with the sale, offer for sale, or advertising of leather goods and accessories.

44.     BISA has engaged in unlawful acts that constitute unfair competition and false designation of origin in violation of § 43(a) of the Lanham Act, codified at 15 U.S.C. 1125 (a).

45.     BISA's unlawful acts constitute commercial use in interstate commerce.

46.     BISA's acts are causing irreparable injury to Bugatti, for which there is no adequate remedy at law, and will continue to do so unless BISA's use of the BUGATTI mark is

enjoined by this Court.

47.     By reason of the foregoing, Bugatti has suffered monetary damages and loss of

goodwill.

48.     Upon information and belief, BISA's conduct as described above has been

willful, wanton, reckless, and in total disregard for Bugatti's rights.

COUNT IV
TRADEMARK AND TRADE NAME INFRINGEMENT
UNDER MASSACHUSETTS COMMON LAW

49.     Bugatti repeats and re-alleges each allegation contained in the preceding

paragraphs.

50.     BISA has alleged in its Complaint that Bugatti's sale, offer for sale, or

advertising of leather goods and accessories has caused a likelihood of confusion, mistake or

deception to consumers, or prospective purchasers and the trade in light of BISA's U.S.

Trademark Registrations 1,407,200 and 1,440,535 (the "BISA Registrations"), as registered in

1986 for clocks, watches, jewelry, wines, pens, aircraft, and automobiles.

51.     Bugatti disputes BISA's allegations, but to the extent that BISA's assertion that

the offer for sale, or advertising of leather goods and accessories under the Bugatti name causes a

likelihood of confusion, mistake or deception to consumers, or prospective purchasers of clocks,

watches, jewelry, wines, pens, aircraft, and automobiles, then Bugatti has priority to the

BUGATTI mark in any area of commerce likely to be confused with the Bugatti name, and as a

result, BISA's sale, offer for sale, or advertising of goods under the BUGATTI mark or any

confusingly similar derivation thereof is an infringement of Bugatti's long standing rights to the

BUGATTI mark.

52.     BISA has engaged in unlawful acts that constitute trademark, service mark, and

trade name infringement under Massachusetts common law.

53.    BISA is engaged in trade and commerce in the Commonwealth of Massachusetts.

54.    BISA's acts are causing irreparable injury to Bugatti, for which there is no adequate remedy at law, and will continue to do so unless BISA's use of the BISA Registrations, BUGATTI and EB BUGATTI marks is enjoined by this Court.

55.    By reason of the foregoing, Bugatti has suffered monetary damages and loss of goodwill.

56.    Upon information and belief, BISA's conduct as described above has been willful, wanton, reckless, and in total disregard for Bugatti's rights.

COUNT V
VIOLATION OF ANTICYBERSQUATTING CONSUMER PROTECTION ACT

57.    Bugatti repeats and re-alleges each allegation contained in the preceding paragraphs.

58.    BISA has alleged in its Complaint that Bugatti's sale, offer for sale, or advertising of leather goods and accessories has caused a likelihood of confusion, mistake or deception to consumers, or prospective purchasers and the trade in light of BISA's U.S. Trademark Registrations 1,407,200 and 1,440,535 (the "BISA Registrations"), as registered in 1986 for clocks, watches, jewelry, wines, pens, aircraft, and automobiles.

59.    Bugatti disputes BISA's allegations, but to the extent that BISA's assertion that the offer for sale, or advertising of leather goods and accessories under the Bugatti name causes a likelihood of confusion, mistake or deception to consumers, or prospective purchasers of clocks, watches, jewelry, wines, pens, aircraft, and automobiles, then Bugatti has priority to the BUGATTI mark in any area of commerce likely to be confused with the Bugatti name, and as a result, BISA's sale, offer for sale, or advertising of goods under the BUGATTI mark via its www.bugatti-cars.de domain name or any confusingly similar derivation thereof is an

infringement of Bugatti's long standing rights to the BUGATTI mark.

60.    Bugatti repeats and re-alleges each allegation contained in the preceding paragraphs.

61.    With a bad faith intent to profit therefrom, BISA has registered and used the domain name "bugatti-cars.de" which is confusingly similar to Bugatti's distinct and famous BUGATTI mark.

62.    BISA has shown its bad faith intention to profit from Bugatti's name and goodwill through its registration of a domain name that, on information and belief, it knew was strikingly similar to the BUGATTI mark.

63.    Such conduct is in violation of the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), and such violations are ongoing.

64.    Through such conduct, BISA has caused and continues to cause irreparable harm to Bugatti, its BUGATTI mark, and its goodwill and reputation, and has thereby damaged Bugatti.

## COUNT VI
### UNFAIR COMPETITION IN VIOLATION OF MASS. GEN. LAWS C. 93(A)

65.    Bugatti repeats and re-alleges each allegation contained in the preceding paragraphs.

66.    Bugatti and BISA are both engaged in trade and commerce in the Commonwealth of Massachusetts.

67.    BISA has engaged in unlawful acts that constitute unfair competition and willful unfair or deceptive acts or practices in violation of Massachusetts common law.

68.    BISA's unlawful acts have taken place substantially in the Commonwealth of Massachusetts.

69.    BISA's acts are causing irreparable injury to Bugatti, for which there is no adequate remedy at law, and will continue to do so unless BISA's use of the BUGATTI mark is enjoined by this Court.

70.    Upon information and belief, BISA's conduct as described above has been willful, wanton, reckless, and in total disregard for Bugatti's rights.

## REQUEST FOR RELIEF

THEREFORE, Bugatti respectfully asks this Court for the following relief:

A.  Enter judgment in favor of Bugatti and against BISA on Counts I through VI.

B.  A declaration and judgment be entered providing that:

    1.  Bugatti has priority to the BUGATTI mark over VW, including BISA, in connection with the sale, offer for sale, and advertisement of leather goods and accessories;

    2.  Bugatti has priority to the BUGATTI mark over VW, including BISA, in connection with the sale, offer for sale, and advertisement of clocks, watches, jewelry, wines, pens, aircraft, and automobiles should those items be deemed confusing to the leather goods and accessories sold, offered for sale, and advertised under Bugatti's BUGATTI mark;

C.  Order that BISA, its officers, agents, employees, servants, attorneys, successors and assigns, and all those in privity and acting in concert therewith, be preliminarily and permanently enjoined from:

    1.  Using any BUGATTI mark, including without limitation the EB BUGATTI or BUGATTI marks or any other mark confusingly similar to the BUGATTI mark, in connection with the sale, offer for sale, advertising or promotion of leather goods;

    2.  Registering or attempting to register any trademark, service mark, trade name, or domain name that is confusingly similar to the BUGATTI mark, including without limitation the EB BUGATTI and BUGATTI marks.

      3.      Selling, transferring, or attempting to transfer any purported right, title, or interest in any BUGATTI-formative marks.

      4.      Otherwise infringing Bugatti's BUGATTI-formative marks.

D.      Order BISA to assign and transfer all rights in the BISA Application for the EB BUGATTI mark and any domain name and any other confusingly similar domain names to Bugatti.

E.      Order the USPTO to cancel the BISA Registrations and any other trademark registration containing a description of goods and services confusingly similar to the goods sold, offered for sale, and/or advertised by Bugatti under the BUGATTI mark.

F.      Order BISA to pay monetary damages and any of BISA's profits to Bugatti in an amount to be determined at trial.

G.      Multiply the amount of damages awarded to Bugatti as permitted by law.

H.      Order BISA to compensate Bugatti for the costs of this action, including reasonable attorney's fees.

I.      Grant Bugatti such other, further, different, or additional relief as this Court deems equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Bugatti demands a trial by jury for all triable issues of all claims alleged by this complaint.


Dated:    Boston, Massachusetts
          August 19, 2005


                                    **THE BUGATTI, INC.,**

                                    By its attorneys,


                                    /s/David M. Magee                    .
                                    Victor H. Polk, Jr., BBO #546099
                                    David M. Magee, BBO #652399
                                    **BINGHAM McCUTCHEN LLP**
                                    150 Federal Street
                                    Boston, Massachusetts 02110
                                    Tel: (617) 951-8000

                                    *Attorneys for Plaintiff*
                                    *The Bugatti, Inc.*

CERTIFICATE OF SERVICE

The undersigned hereby affirms that he electronically filed the foregoing paper with the

Clerk of the Court using the ECF system and caused copies to be served upon the following

attorneys of record:

| | |
|---|---|
| Susan B. Flohr | David A Brown |
| Michael D. White | Margaret H. Paget |
| BLANK ROME LLP | SHERIN AND LODGEN LLP |
| 600 New Hampshire Avenue, NW | 101 Federal Street |
| Washington, DC 20037 | Boston, Massachusetts 02110 |

by United State Postal Service on the 19th day of August 2005.

Respectfully submitted,

**THE BUGATTI, INC.**

*By its attorneys,*

/s/ David M. Magee                .
David M. Magee, BBO #652399
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, Massachusetts 02110
Tel: (617) 951-8000
Fax: (617) 951-8736

**EXHIBIT H**



**United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Jan 11 04:12:41 EST 2006*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | | CURR LIST |

| | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout** Please logout when you are done to release system resources allocated for you.

**Start** List At:     OR **Jump** to record:     **Record 5 out of 46**

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **EB BUGATTI** |
| **Goods and Services** | IC 018. US 001 002 003 022 041. G & S: Leather goods, namely suitcases, bags, namely, athletic bags, travel bags, cosmetic cases sold empty, ladies' bags, namely, clutch bags, shoulder bags, purses, pocket wallets |
| | IC 028. US 022 023 038 050. G & S: Toy cars, model cars for collectors, leather golf bags |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.03.07 - Ovals with a decorative border, including scalloped, ruffled and zig-zag edges<br>26.03.08 - Letters, numerals or punctuation forming the perimeter of an oval or bordering the perimeter of an oval; Ovals having letters or numerals as a border; Ovals having punctuation as a border |
| **Serial Number** | 78175475 |
| **Filing Date** | October 17, 2002 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 6, 2004 |
| **Owner** | (APPLICANT) Bugatti International S.A. CORPORATION FED REP GERMANY 8 - 10, rue Mathias Hardt Luxembourg LUXEMBOURG 1717 |
| **Attorney of Record** | Susan B. Flohr |

BUG 14783

| | |
|---|---|
| **Prior Registrations** | 1407200;1440535;1440536;1787760;AND OTHERS |
| **Description of Mark** | The mark includes the letters "E" and "B" in stylized form. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Other Data** | The name in the mark, "EB Bugatti", does not identify a living individual. |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | | CURR LIST |
|---|---|---|---|---|---|---|---|---|---|
| | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC | | | | | |

BUG 14784

Latest Status Info

Page 1 of 4

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2006-01-11 19:37:38 ET

**Serial Number:** 79005395

**Registration Number:** (NOT AVAILABLE)

**Mark**



**(words only):** BUGATTI

**Standard Character claim:** No

**Current Status:** A non-final action has been mailed. This is a letter from the examining attorney requesting additional information and/or making an initial refusal. However, no final determination as to the registrability of the mark has been made.

**Date of Status:** 2005-10-06

**Filing Date:** 2004-08-13

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 115

**Attorney Assigned:**
BRODY DANIEL S <u>Employee Location</u>

**Current Location:** M6X -TMO Law Office 115 - Examining Attorney Assigned

**Date In Location:** 2005-10-06

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

1. BUGATTI INTERNATIONAL S.A.

**Address:**                                                            BUG 14785

2005-09-30 - Teas/Email Correspondence Entered

2005-09-23 - Communication received from applicant

2005-09-23 - TEAS Response to Office Action Received

2005-06-30 - International Registration Renewed

2005-05-26 - Attorney Revoked And/Or Appointed

2005-05-26 - TEAS Revoke/Appoint Attorney Received

2005-04-28 - Refusal Processed By IB

2005-03-28 - Non-final action mailed

2005-03-22 - Non-Final Action (Ib Refusal) Prepared For Review

2005-03-21 - Non-Final Action Written

2005-03-16 - Case file assigned to examining attorney

2005-02-03 - Amendment From Applicant Entered

2005-01-18 - Communication received from applicant

2005-01-18 - PAPER RECEIVED

2004-10-22 - New Application Entered In Tram

2004-10-21 - Sn Assigned For Sect 66a Subseq Desig From IB

---

## CORRESPONDENCE INFORMATION

---

**Correspondent**
Susan B. Flohr (Attorney of record)

Susan B. Flohr
Blank Rome LLP
The Watergate 600 New Hampshire Avenue,
Washington DC 20037

**Phone Number:** 2027725870
**Fax Number:** 2025721407

**Domestic Representative**
Susan B. Flohr
**Phone Number:** 2027725870                                    **BUG 14787**
**Fax Number:** 2025721407

BUG 14788

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2006-01-30 14:47:09 ET

**Serial Number:** 78175475

**Registration Number:** (NOT AVAILABLE)

**Mark**



**(words only):** EB BUGATTI

**Standard Character claim:** No

**Current Status:** An opposition is now pending at the Trademark Trial and Appeal Board.

**Date of Status:** 2004-05-14

**Filing Date:** 2002-10-17

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 107

**Attorney Assigned:**
PAPPAS MATTHEW JAMES Employee Location

**Current Location:** 845 -TTAB

**Date In Location:** 2004-11-26

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. Bugatti International S.A.

**Address:**
Bugatti International S.A.
8 - 10, rue Mathias Hardt                                    **BUG 14778**

Luxembourg 1717
Luxembourg
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Fed Rep Germany

---

## GOODS AND/OR SERVICES

**International Class:** 018
Leather goods, namely suitcases, bags, namely, athletic bags, travel bags, cosmetic cases sold empty, ladies' bags, namely, clutch bags, shoulder bags, purses, pocket wallets
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 1(b)

**International Class:** 028
Toy cars, model cars for collectors, leather golf bags
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 1(b)

---

## ADDITIONAL INFORMATION

**Description of Mark:** The mark includes the letters "E" and "B" in stylized form.

**Name Portrait Consent:** The name in the mark, "EB Bugatti", does not identify a living individual.

**Prior Registration Number(s):**
1407200
1440535
1440536
1787760

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2004-05-14 - Opposition instituted for Proceeding

2004-05-14 - Opposition papers filed

2004-04-28 - TEAS Response to Office Action Received

2004-04-06 - Published for opposition                **BUG 14779**

2004-03-17 - Notice of publication

2003-12-29 - Approved for Pub - Principal Register (Initial exam)

2003-10-10 - Communication received from applicant

2003-10-10 - TEAS Response to Office Action Received

2003-09-22 - Final refusal e-mailed

2003-08-21 - Communication received from applicant

2003-08-20 - Communication received from applicant

2003-08-21 - PAPER RECEIVED

2003-07-20 - TEAS Change of Correspondence Received

2003-03-23 - Non-final action e-mailed

2003-03-21 - Case file assigned to examining attorney

---

## CORRESPONDENCE INFORMATION

**Correspondent**
Susan B. Flohr (Attorney of record)

SUSAN B. FLOHR
BLANK ROME LLP
600 NEW HAMPSHIRE AVENUE, N.W.
WASHINGTON, DC 20037

**Phone Number:** 202.772.5870
**Fax Number:** 202.572.8398

**Domestic Representative**
Susan B. Flohr
**Phone Number:** 202 530 7470
**Fax Number:** 202 463 6915

---

**BUG 14780**

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2006-01-30 12:26:23 ET

**Serial Number:** 74119363 Assignment Information

**Registration Number:** 2026214 Assignment Information

**Mark**



**(words only):** EB ETTORE BUGATTI

**Standard Character claim:** No

**Current Status:** Registration canceled under Section 8.

**Date of Status:** 2003-10-04

**Filing Date:** 1990-11-30

**Transformed into a National Application:** No

**Registration Date:** 1996-12-31

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 104

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 900 -File Repository (Franconia)

**Date In Location:** 2002-05-14

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. ETTORE BUGATTI S.r.L.

**Address:**
ETTORE BUGATTI S.r.L.
Via Nazionale 51

BUG 14762

39040 Ora (Bolzano)
Italy
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Italy

---

## GOODS AND/OR SERVICES

**International Class:** 014
jewelry of precious metal, precious gem stones, clocks, watches, costume jewelry, cigarette holders of precious metal, ornaments in bronze and precious metals, statues in bronze and precious metals
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 016
pens, pencils, fountain pens, playing cards, paper cutters, writing paper, calendars, appointment books, pen holders, general feature magazines, weekly newspapers, books of general interest, paper-mache statues
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 018
articles in genuine or imitation leather and skin; namely, chests, suitcases, waling sticks, whips, saddles, change purses and briefcases; umbrellas, and beach umbrellas
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 020
furniture, furniture mirrors, picture frames, ornaments in woods, wax, plaster or plastic, not including Xmas ornaments; statues in wood, wax, plaster or plastic
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 024
silk handkerchiefs
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 028
action skill and board games, children's multiple activity toys, gymnastic sports equipment; namely, horizontal and parallel bars, vaulting horses

**BUG 14763**

**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 033
wines, sparkling wines, and brandy spirits
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 034
tobacco, cigarette lighters, ashtrays, cigarette and cigar holders, not of precious metal, pipes, smoking
pipe cleaners, matches, mouth pieces for cigars and cigarettes, not of precious metal
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 042
hotel concierge services, restaurant services and self-service restaurant services
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

---

## ADDITIONAL INFORMATION

---

**Description of Mark:** The mark consists of a stylized "EB" with script "ETTORE BUGATTI" and
design.

**Lining and Stippling:** The stippling shown in the drawings is a feature of the mark and not intended to
indicate color.

**Name Portrait Consent:** "ETTORE BUGATTI" was a famous car manufacturer and is no longer
living.

**Foreign Application Number:** 5161/C90
**Foreign Registration Number:** 0538450
**Foreign Registration Date:** 1991-01-10
**Country:** Italy
**Foreign Filing Date:** 1990-09-06
**Foreign Expiration Date:** 2010-09-06

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

BUG 14764

## PROSECUTION HISTORY

2003-10-04 - Canceled Section 8 (6-year)

1997-05-21 - Reprinting Registration Certificate

1997-02-27 - Section 7 amendment filed

1996-12-31 - Registered - Principal Register

1996-10-25 - Opposition terminated for Proceeding

1996-10-25 - Opposition dismissed for Proceeding

1996-02-28 - Opposition instituted for Proceeding

1996-02-08 - Opposition papers filed

1996-01-23 - Published for opposition

1995-12-22 - Notice of publication

1995-01-31 - Approved for Pub - Principal Register (Initial exam)

1995-01-23 - Previous allowance count withdrawn

1995-01-06 - Approved for Pub - Principal Register (Initial exam)

1994-05-16 - Unresponsive/Duplicate Paper Received

1994-06-14 - Letter of suspension mailed

1994-03-31 - Communication received from applicant

1992-02-12 - Letter of suspension mailed

1992-01-14 - Communication received from applicant

1991-12-31 - Letter of suspension mailed

1991-11-18 - Communication received from applicant

1991-06-10 - Unresponsive/Duplicate Paper Received

1991-05-16 - Non-final action mailed

1991-04-22 - Case file assigned to examining attorney

## CORRESPONDENCE INFORMATION

**BUG 14765**

**Correspondent**
MARK S SOMMERS (Attorney of record)

MARK S SOMMERS
FINNEGAN HENDERSON FARABOW GARRETT ET AL
1300 I ST NW
WASHINGTON DC 20005

**Domestic Representative**
FINNEGAN HENDERSON FARABOW GARRETT ET AL

**BUG 14766**

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2006-01-30 12:29:12 ET

**Serial Number:** 74119362 Assignment Information

**Registration Number:** 1787760 Assignment Information

**Mark**



**(words only):** EB

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2003-11-13

**Filing Date:** 1990-11-30

**Transformed into a National Application:** No

**Registration Date:** 1993-08-17

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 9

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 900 -File Repository (Franconia)

**Date In Location:** 2003-11-17

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. BUGATTI INTERNATIONAL S.A.

**Address:**
BUGATTI INTERNATIONAL S.A.
38-40, RUE SAINTE ZITHE

BUG 14756

LUXEMBOURG LU1-2763
Luxembourg
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Luxembourg

---

## GOODS AND/OR SERVICES

**International Class:** 003
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 014
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 016
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 018
articles in genuine or imitation leather and skin; namely, chests, suitcases, walking sticks, whips,
saddles, change purses and briefcases; umbrellas, and beach umbrellas
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 020
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 024
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**BUG 14757**

**International Class:** 025
jackets and coats for men, women and children in any type of fabric or material; shoes, boots, slippers, skirts, trousers, shirts, blouses, knitted shirts and blouses, vests, sweaters, undershirts, blazers, raincoats, wind jackets, hats, hoods, scarves, gloves, sport sweat shirts, sweat pants, robes, bathing suits, hoisery, stockings, ties, belts and smocks
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 028
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 033
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 034
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 042
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

---

## ADDITIONAL INFORMATION

**Lining and Stippling:** The stippling shown in the drawings is a feature of the mark and not intended to indicate color.

**Foreign Application Number:** 5162/C-90
**Foreign Registration Number:** 538451
**Foreign Registration Date:** 1991-01-10
**Country:** Italy
**Foreign Filing Date:** 1990-09-06
**Foreign Expiration Date:** 2010-09-06

**BUG 14758**

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

2003-11-13 - First renewal 10 year

2003-11-13 - Section 9 granted/check record for Section 8

2003-11-13 - Partial Section 8 ( 10-Year) accepted/checked record for section

2003-08-18 - Combined Section 8 (10-year)/Section 9 filed

2003-08-21 - PAPER RECEIVED

2003-08-18 - TEAS Section 8 & 9 Received

2003-06-21 - TEAS Change of Correspondence Received

2003-03-11 - PAPER RECEIVED

2000-08-09 - Partial Section 8 (6-year) accepted

2000-06-05 - Response received to Post Registration action - Sections 8

1999-12-01 - Post Registration action mailed - Section 8

1999-08-16 - Section 8 (6-year) filed

1993-08-17 - Registered - Principal Register

1993-05-24 - Notice of Allowance canceled

1992-11-24 - Notice of allowance - mailed

1992-09-01 - Published for opposition

1992-07-31 - Notice of publication

1992-03-02 - Approved for Pub - Principal Register (Initial exam)

1992-01-13 - Communication received from applicant

1991-11-18 - Communication received from applicant

1991-05-16 - Non-final action mailed

1991-04-22 - Case file assigned to examining attorney                    **BUG 14759**

## CORRESPONDENCE INFORMATION

**Correspondent**
SUSAN B. FLOHR
BLANK ROME LLP
600 New Hampshire Avenue, N.W.
Washington DC 20037

**Phone Number:** 202.944.3000
**Fax Number:** 202.572.8398

**Domestic Representative**
Laff, Whitesel, Conte & Saret

**BUG 14760**

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2006-01-30 11:47:40 ET

**Serial Number:** 73520012 Assignment Information

**Registration Number:** 1440536 Assignment Information

**Mark**



**(words only):** EB

**Standard Character claim:** No

**Current Status:** Section 8 and 15 affidavits have been accepted and acknowledged.

**Date of Status:** 1994-05-27

**Filing Date:** 1985-01-30

**Transformed into a National Application:** No

**Registration Date:** 1987-05-26

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 900 -File Repository (Franconia)

**Date In Location:** 1998-01-23

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. BUGATTI INTERNATIONAL

**Address:**
BUGATTI INTERNATIONAL
8 RUE NICOLAS PETIT                                    **BUG 14749**

**LEXEMBOURG**
Luxembourg
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Luxembourg

---

## GOODS AND/OR SERVICES

**International Class:** 012
AUTOMOBILES, PARTS
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 014
WATCHES
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 016
Cancelled, surrendered, or expired
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 033
WINES
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

---

## ADDITIONAL INFORMATION

**Description of Mark:** THE MARK CONSISTS OF A STYLIZED PRESENTATION OF THE LETTER "EB" WITH THE "E" PRESENTED IN REVERSE FORM.

**Foreign Registration Number:** 1135186
**Foreign Registration Date:** 1980-05-19
**Country:** France
**Foreign Expiration Date:** 1990-05-19

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

BUG 14750

## PROSECUTION HISTORY

2003-08-21 - PAPER RECEIVED

2003-07-20 - TEAS Change of Correspondence Received

2003-03-11 - PAPER RECEIVED

1994-05-27 - Section 8 (6-year) accepted & Section 15 acknowledged

1994-05-05 - Response received for Post Registration action

1993-11-26 - Post Registration action mailed Section 8 & 15

1993-05-26 - Section 8 (6-year) and Section 15 Filed

1987-05-26 - Registered - Principal Register

1987-03-26 - Opposition terminated for Proceeding

1987-03-04 - Opposition dismissed for Proceeding

1987-02-20 - Opposition dismissed for Proceeding

1986-05-12 - Opposition instituted for Proceeding

1986-01-28 - Published for opposition

1985-12-29 - Notice of publication

1985-12-09 - Approved for Pub - Principal Register (Initial exam)

1985-12-04 - Examiner's amendment mailed

1985-12-03 - Case file assigned to examining attorney

1985-11-20 - Non-final action mailed

1985-10-18 - Allowance/count withdrawn

1985-10-18 - Communication received from applicant

1985-10-18 - Examiner's amendment mailed

1985-10-02 - Communication received from applicant

1985-05-10 - Non-final action mailed

## CORRESPONDENCE INFORMATION

**BUG 14751**

**Correspondent**
ROBERT G. MCMORROW (Attorney of record)

SUSAN B. FLOHR
BLANK ROME LLP
600 NEW HAMPSHIRE AVENUE, N.W.
Washington DC 20037

**Phone Number:** 202.772.5870
**Fax Number:** 202.572.8398

**Domestic Representative**
SUGHRUE, MION, ZINN, MACPEAK & SEAS

**BUG 14752**

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2006-01-30 11:43:17 ET

**Serial Number:** 73520011 <u>Assignment Information</u>

**Registration Number:** 1440535 <u>Assignment Information</u>

**Mark**



**(words only):** B BUGATTI

**Standard Character claim:** No

**Current Status:** A cancellation proceeding has been filed at the Trademark Trial and Appeal Board and is now pending.

**Date of Status:** 2003-08-04

**Filing Date:** 1985-01-30

**Transformed into a National Application:** No

**Registration Date:** 1987-05-26

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 845 -TTAB

**Date In Location:** 2004-11-16

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. BUGATTI INTERNATIONAL

**Address:**
BUGATTI INTERNATIONAL                                            BUG 14741

8 RUE NICOLAS PETIT
**Legal Entity Type:** Unknown
**State or Country Where Organized:** Luxembourg

---

## GOODS AND/OR SERVICES

---

**International Class:** 012
AUTOMOBILES
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 014
WATCHES, MADE IN WHOLE OR IN PART OF PRECIOUS METALS
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 016
PENS
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

**International Class:** 033
WINES
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**Basis:** 44(e)

---

## ADDITIONAL INFORMATION

---

**Description of Mark:** THE MARK CONSISTS OF THE WORD "BUGATTI", A STYLIZED
PRESENTATION OF THE LETTERS "EB", AND A SURROUNDING DESIGN
REPRESENTATION.

**Foreign Registration Number:** 1135187
**Foreign Registration Date:** 1980-05-19
**Country:** France
**Foreign Expiration Date:** 1990-05-19

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

                                                                **BUG 14742**

## PROSECUTION HISTORY

2006-01-06 - FAX RECEIVED

2003-08-21 - PAPER RECEIVED

2003-08-04 - Cancellation Instituted No. 999999

2003-07-20 - TEAS Change of Correspondence Received

2003-03-11 - PAPER RECEIVED

2003-02-04 - TEAS Change of Correspondence Received

1994-09-12 - Section 8 (6-year) accepted & Section 15 acknowledged

1994-05-05 - Response received for Post Registration action

1993-11-26 - Post Registration action mailed Section 8 & 15

1993-05-26 - Section 8 (6-year) and Section 15 Filed

1987-05-26 - Registered - Principal Register

1987-03-26 - Opposition terminated for Proceeding

1987-03-11 - Opposition dismissed for Proceeding

1986-05-27 - Opposition instituted for Proceeding

1986-02-04 - Published for opposition

1986-01-05 - Notice of publication

1985-12-09 - Approved for Pub - Principal Register (Initial exam)

1985-12-04 - Examiner's amendment mailed

1985-12-03 - Case file assigned to examining attorney

1985-11-18 - Examiner's amendment mailed

1985-10-02 - Communication received from applicant

1985-04-26 - Non-final action mailed

## CORRESPONDENCE INFORMATION

**Correspondent**

**BUG 14743**

ROBERT G. MCMORROW (Attorney of record)

SUSAN B. FLOHR
BLANK ROME, LLP
600 NEW HAMPSHIRE AVENUE, N.W.
WASHINGTON, DC 20037

**Phone Number:** 202.772.5870
**Fax Number:** 202.572.8398

---

**Domestic Representative**
SUGHRUE, MION, ZINN, MACPEAK & SEAS

**BUG 14744**

**EXHIBIT I**



Thinking about relocating?    Click here to compare costs of living.

sal

| Home | News | Sports | Lifestyle | A&E | Events | Business | Jobs | Cars | Classifieds | Subscribe | Se |

## post-gazette.com® Business News

Wednesda

**Business**
Previous Articles
Dateline
Markets
Personal Bus.
Auto News
Consumer
Technology
Mortgage Rates
Consumer Rates



Find the perfect employee anytime, anywhere. post-gazette.com



See listings in more detail.

Place an Ad
Click Here

CARFAX
VEHICLE HISTORY REPORTS
Don't buy a lemon.



post-gazette.com
Headlines by E-mail

# Volkswagen launching Bugatti Veyron, world's priciest car

Wednesday, December 14, 2005

By Stephen Power, The Wall Street Journal

After seven years of false starts, a $1 million car billed as the world's fastest factory-produced automobile is about to arrive on American shores.

Volkswagen AG is launching early next year the Bugatti Veyron, a curvaceous two-seater with air-intake scoops and a large radiator grille that prominently displays the Bugatti badge. For the German car maker, it represents an unusual bet on the high-end market at time of cost cutting for the company and as U.S. car makers continue to struggle with slow sales.

The Bugatti Veyron boasts a massive, rear-mounted 16-cylinder engine with 1,001 horsepower -- roughly the equivalent of a couple of Porsche 911s combined -- and a rear spoiler that helps keep the car from spinning out of control at high speeds. It needs just 2.5 seconds to accelerate from zero to 62 miles per hour, and burns rubber so quickly that its makers had to hire France's Michelin SCA to develop a special compound for its tires. Its top speed: 252.9 mph.

Yet for all the car's horsepower, VW acknowledges that many of those who buy the Veyron will seldom drive it, let alone at its top speed. Few, if any, public streets in the world allow motorists to approach anything near the car's top speed. Repairs are another challenge. Bugatti officials say their dealers will have staff trained to handle routine maintenance needs, such as oil changes. For more complicated problems, the company says it will send over technicians from Europe.

It's also not clear how long VW will keep making the car, which is being produced at the rate of less than one a week at a glass-walled factory in the Alsace region of France. The Veyron will be sold through a half dozen Bentley dealerships across the U.S., including sites in Miami, Troy, Mich., Beverly Hills, Calif., San Diego, Pasadena, Calif., and Greenwich, Conn. VW hopes to sell 300 over the next five years or so,

3 MI

Click h
oul

post-g

BUG 14799

but acknowledges production might stop if it doesn't get enough orders.

Many buyers, who can select a two-color scheme for the exterior, are expected to be collectors who will keep the car largely for displaying. "It's considered more a piece of art than an actual car that's going to be driven," says Dave Mast, a Bugatti sales representative in Troy.

Georg Sturzer, an auto-industry analyst with HVB Corporates &amp; Markets Research in Munich, Germany, has a different view: "It's a complete waste of time and money."

VW officials concede the Veyron is likely to be unprofitable. But they are hoping the exercise of building the car will serve as a kind of research project that will yield technologies they can use in cars for its Audi and Lamborghini divisions.

With oil prices nearing all-time highs, the Veyron is arriving at a difficult time for makers of "super-luxury" cars, generally defined as those selling for roughly $300,000 or more.

The road leading to the Veyron's imminent launch -- it will be presented to American car buyers next month at the Los Angeles auto show -- has been filled with detours. At Volkswagen, the project got rolling in the heady days of the late 1990s after a rebound from near bankruptcy in 1993. Profits were strong again, thanks to pedestrian models like the Golf, Jetta and Passat. Emboldened, Ferdinand Piech -- then VW's chief executive and now chairman of its supervisory board -- decided to turn the inventor of the "people's car" into more of a luxury-car maker.

Mr. Piech, the grandson of legendary German sports-car maker Ferdinand Porsche and an engineer by training himself, spent billions to develop upscale models and acquire Italian sports-car maker Lamborghini and Britain's Bentley. The crown jewel in the effort was to be a super-luxury sports car that would cast an aura of exclusivity over all of VW's brands. For this "halo" car, Mr. Piech paid an undisclosed sum in 1998 for the rights to one of the most storied names of Europe's prewar auto industry -- Bugatti.

Founded by Italian entrepreneur Ettore Bugatti shortly after the dawn of the 20th century, the original Bugatti auto company built elegantly styled race cars and limousines for European royalty and aristocrats. Not quite 8,000 were made between 1909 and 1939, when World War II interrupted production.

The world's clique of Bugatti fans had mixed feelings about the brand's resurrection. While some welcomed VW's investment as a boost to Bugatti's prestige, Veyron's aggressive look and over-the-top power came as a disappointment to others. The car, says Sandy Leith, a Dedham, Mass., stockbroker and Bugatti collector, is "a little too much -- too much money, too much horsepower, too flamboyant."

BUG 14800

In 2002, Mr. Piech retired as CEO and handed off his luxury strategy, and the Bugatti project, to his successor, Bernd Pischetsrieder. It didn't take long for the Veyron's problems to grab Mr. Pischetsrieder's attention. In August 2003, VW invited dozens of Bugatti collectors and potential buyers to a lavish party and presentation of the Veyron at the opulent Stonepine Estate Resort in Carmel Valley, Calif.

But the next day when the car roared down a race tack during a demonstration, it spun out in the first turn and only narrowly avoided a crash. "We were embarrassed for them," says Mr. Leith, who attended the event. "There was a lot of whispered chatter like, 'They spent all this money for this?' "

By that point, Mr. Pischetsrieder, back in Germany, had taken the car for a spin on his own and walked away disgusted with the car's aerodynamics, according to people familiar with incident. A few weeks later, Bugatti's president, Karl-Heinz Neumann, left the company. Mr. Pischetsrieder brought in a former Formula 1 race-car driver, Thomas Bscher, to take over the project. A plan to launch the Veyron by April 2004, in time for Mr. Piech's birthday, was scrapped, according to a company official familiar with the matter.

Volkswagen engineers then retooled the car, tightening its brakes and stiffening its suspension, before announcing that the car's launch was being delayed until the second half of 2005.

Through a spokesman, Mr. Piech declined a request for an interview, but in response to written questions he said VW has to be represented in both the auto industry's mainstream segments and "in the top class" to be profitable. "You have to be represented in well-balanced proportion," he says.

Production began in France in September. Volkswagen has taken orders for about 45 cars, almost a full year's production. Among those waiting, according to a company spokesman: Mr. Piech, who has bought one for his wife, Ursula.

PAID ADVERTISING

**Buy Volkswagen**
Get Info on New 2006 Autos & More. Build Your Own VW - Official Site

Ads by Goooooogle

**Troy Porsche**
Top Deals On Porsches. Find A Great Deal On Your Next Car.

Advertise on this site

E-mail this story  Print this story

Copyright ©1997-2006 PG Publishing Co., Inc. All Rights Reserved.

BUG 14801

**EXHIBIT J**



Phone:     (202) 772-5870
Fax:       (202) 572-1407
Email:     flohr@blankrome.com

February 6, 2006

**VIA EMAIL; CONFIRMATION BY MAIL**

Geri L. Haight, Esq.
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO P.C.
One Financial Center
Boston, MA  02111

       Re:    *Volkswagen AG et al. v. The Bugatti, Inc.*
              Our Ref.:  116333-00124

Dear Geri:

I write in response to your letter dated February 1, 2006 regarding the Plaintiffs' claim of rights in the Bugatti Red Oval Logo. You have complained that the documents we have produced on the issue of the fame or secondary meaning of the Red Oval Logo are deficient. We must protest such a characterization and submit that we have produced documents comprising nationwide, indeed, worldwide advertising, as well as promotional expenditures showing the exposure of the public to our client's mark since the purchase of Bugatti International by Volkswagen AG in 1998. Previous to that event, the mark as used by our predecessors in interest was already famous for decades prior to VWAG's purchase of BISA, and we have produced numerous articles on the subject. Your claim of deficiency is simply not well taken.

Turning to your questions as to whether or not we are asserting trademark rights in the color red a part from the mark as a whole, the answer is no. Additionally, our claim of rights is not limited to the Red Oval Logo, but encompasses any mark confusingly similar thereto, as you would expect.

Sincerely yours,

Blank Rome LLP

Susan B. Flohr

cc:    M. White, Esq.
       L. Savitt, Esq.
       M. Paget, Esq.

**Nickerson, Joanne**

| | |
|---|---|
| **From:** | Haight, Geri |
| **Sent:** | Monday, February 06, 2006 5:36 PM |
| **To:** | Nickerson, Joanne |
| **Subject:** | Fw: Volkswagen AG et al. v. The Bugatti, Inc. |
| **Attachments:** | letter.pdf |

```
-----Original Message-----
From: Brickhouse, Regina
To: Haight, Geri
CC: mhpaget@sherin.com; Flohr, Susan; Savitt, Lisa J.; White,Michael D.
Sent: Mon Feb 06 17:08:46 2006
Subject: Volkswagen AG et al. v. The Bugatti, Inc.
```



letter.pdf (37 KB)

```
Please          see the attached.


Regina Brickhouse | Blank Rome LLP
Patent Secretary for Charles R. Wolfe, Jr. and Michael D. White 600 New Hampshire Ave. NW
| Washington, DC 20037
Phone: (202) 772-5800 (ext.4658) | Fax: (202) 772-5858 | Email: brickhouse@blankrome.com
```

1

**EXHIBIT K**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

VOLKSWAGEN AG, VOLKSWAGEN OF
AMERICA, INC. and BUGATTI
INTERNATIONAL, S.A.

      Plaintiffs and Counterclaim Defendants,

      v.

THE BUGATTI, INC.

      Defendant and Counterclaim Plaintiff.

Civil Action No.  05-11067-PBS

### THE BUGATTI, INC.'S FIRST REQUESTS FOR
### PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, The Bugatti, Inc.

(hereinafter "The Bugatti" or "Defendant"), by and through their undersigned attorneys, request

that Plaintiffs Volkswagen AG ("VWAG"), Volkswagen of America, Inc. ("VWoA") and

Bugatti International, S.A. ("BISA") (collectively "Plaintiffs") produce for inspection and

copying the following documents and things.  Such documents and things shall be produced for

inspection and copying at the offices of Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., One

Financial Center, Boston, Massachusetts 02111, within the time period provided in the Federal

Rules or at such other time or place as may be mutually agreed upon by the parties.

These Requests are intended to cover all documents and things in Plaintiffs' possession,

or subject to their custody or control, including those in the possession of Plaintiffs' agents and

licensees, whether such documents are located in any of Plaintiffs' offices or any other office

maintained by Plaintiffs, their agents, attorneys, investigators or licensees.

## <u>DEFINITIONS</u>

1.      "Document" means all written, printed, or aural matter of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation (made on such copies or otherwise) including, without limitation, correspondence, memoranda, notes, speeches, press releases, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications, offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefaxes, voicemails, e-mails, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or aural records or representations of any kind (including without limitation photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation tapes, cassettes, discs and recordings). A draft or non-identical copy is a separate document within the meaning of this term.

2.      "Volkswagen AG" ("VWAG") means Plaintiff and Counterclaim Defendant Volkswagen AG, including any parent companies, subsidiaries, affiliates and divisions, and all officers, directors, employees, agents and representatives thereof, and any predecessor or successor in interest. Unless otherwise appropriate, Volkswagen AG will be referred to as "Plaintiff(s)," a term that will collectively encompass Volkswagen of America and Bugatti International, S.A.

3.      "Volkswagen of America, Inc." ("VWoA") means Plaintiff and Counterclaim Defendant Volkswagen of America, Inc., including any parent companies, subsidiaries, affiliates and divisions, and all officers, directors, employees, agents and representatives thereof, and any

2

predecessor or successor in interest. Unless otherwise appropriate, Volkswagen of America will be referred to as "Plaintiff(s)," a term that will collectively encompass Volkswagen AG and Bugatti International, S.A.

4.    "Bugatti International, SA" ("BISA") means Plaintiff and Counterclaim Defendant Bugatti International, SA including any parent companies, subsidiaries, affiliates and divisions, and all officers, directors, employees, agents and representatives thereof, and any predecessor or successor in interest. Unless otherwise appropriate, Bugatti International, SA will be referred to as "Plaintiff(s)," a term that will collectively encompass Volkswagen AG and Volkswagen of America.

5.    "Defendant" means The Bugatti, Inc., including any parent companies, subsidiaries, affiliates and divisions, and all officers, directors, employees, agents and representatives thereof, and any predecessor or successor in interest.

6.    The "BISA-BUGATTI Marks" refer to any and all existing and pending BUGATTI trademarks claimed by Plaintiffs in their Complaint for Damages and Injunctive Relief, including but not limited to Reg. Nos. 1,407,200; 1,440,535; 1,440,536; 1,787,760; 2,299,293; 2,956,068; and 2,956,069; as well as Serial Nos. 75/599,753; 75/983,482; and 78/175,475, and any other mark including the word "BUGATTI" as used by Plaintiffs.

7.    The "VW Marks" refer to the letter mark "VW" and the VW Concentric Circle Logo as defined in ¶ 9 of Plaintiff's Complaint. Except where specifically stated, the VW Marks are considered separate from the BUGATTI Marks.

8.    The "BUGATTI Marks" refer to any and all existing and pending BUGATTI trademarks owned by Defendant, including but not limited to Reg. No. 1,158,090 (cancelled) and

3

Application Serial No. 76/536,905, and any other mark including the word "BUGATTI" as used by Defendant.

9.     The "Complaint" refers to Plaintiffs' Complaint for Damages and Injunctive Relief, filed in the District of Massachusetts on or around May 23, 2005.

10.     The "Counterclaim" refers to Defendant's Amended Answer, Counterclaims and Jury Demand, filed in the District of Massachusetts on or around August 22, 2005.

11.     "Media," in addition to its customary and usual meaning, means newspapers, magazines, television, Internet, and radio and anyone associated therewith.

12.     "Confusion" and "likelihood of confusion," in addition to their usual and customary meaning, shall have the meanings ascribed to them by the Trademark Act, Section 2(d), 15 U.S.C. § 1052(d).

13.     "Person" means any natural person or any business, legal or governmental entity or associate.

14.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15.     "You" or "your" means Plaintiffs, their predecessors in interest, and their officers, directors, employees, partners, corporate parent, subsidiaries, franchisees or affiliates.

16.     The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, all documents produced for inspection shall be produced as they are kept in the usual course of business, and each document so produced shall be organized in a manner that clearly corresponds to the Request set forth herein.

2.    If any information or document requested is withheld based upon any privilege, including that of attorney-client or attorney work product privilege, Plaintiffs shall:

    (a)    identify the privilege;

    (b)    identify the date of the document or date on which the information was communicated;

    (c)    identify the originator of the document or communicator of the information, the person to whom the document was addressed or information was transmitted and all persons who received the documents or information; and

    (d)    describe the type of document or information transmitted and the subject matter to which it pertains.

3.    Plaintiffs shall produce responsive documents within its possession, custody or control and within the possession, custody or control of its agents, attorneys or representatives.

4.    If a document requested was, but is no longer, in the possession, custody, or control of Plaintiffs, explain whether the document is missing or lost, has been destroyed, has been transferred to another person, or has been disposed of in some other manner.  Also, explain the manner of such disposition, give the date or approximate date of such disposition, and provide the name and last known residence and business address of each person with knowledge of the circumstances surrounding such disposition.

5.     This request shall be deemed continuing, so as to require further and supplemental production promptly if Plaintiffs receives, locates or generates additional documents called for herein between the time of original production and the entry of judgment in this action.

## DOCUMENT REQUESTS

1.     All documents and things that concern or support the allegations set forth in Count I of the Complaint.

2.     All documents and things that concern or support the allegations set forth in Count II of the Complaint.

3.     All documents and things that concern or support the allegations set forth in Count III of the Complaint.

4.     All documents and things that concern or support the allegations set forth in Count IV of the Complaint.

5.     All documents and things that concern or support the allegations set forth in Count V of the Complaint.

6.     All documents and things that concern or support the allegations set forth in Count VI of the Complaint.

7.     All documents and things that concern or support the allegations set forth in Count VII of the Complaint.

8.     All documents and things that concern or support the allegations set forth in Count VIII of the Complaint.

9.     All documents and things that concern or support the allegations set forth in Count IX of the Complaint.

10.     All documents and things that concern or support the allegations set forth in Count X of the Complaint.

11.     All documents and things that concern or support the allegations set forth in Count XI of the Complaint.

12.     All documents and things that concern or support the allegations set forth in Count XII of the Complaint.

13.     All documents and things that concern or support the allegations set forth in Count XIII of the Complaint.

14.     All documents and things that concern or support the allegations set forth in the "Relief Sought" portion of the Complaint (pp. 28-32).

15.     All documents and things that concern or support the assertions made in paragraphs 10, 11, 13, 14, 17, 18, 19, 20, 25, 27 and 39 of the Complaint.

16.     All documents and things which Plaintiffs relied upon in forming their Initial Disclosures Pursuant to Federal Rule 26(a)(1).

17.     All documents and things that concern or support Plaintiffs' response to Count I of Defendant's Counterclaim.

18.     All documents and things that concern or support Plaintiffs' response to Count II of Defendant's Counterclaim.

19.     All documents and things that concern or support Plaintiffs' response to Count III of Defendant's Counterclaim.

20.     All documents and things that concern or support Plaintiffs' response to Count IV of Defendant's Counterclaim.

21.    All documents and things that concern or support Plaintiffs' response to Count V of Defendant's Counterclaim.

22.    All documents and things that concern or support Plaintiffs' response to Count VI of Defendant's Counterclaim.

23.    All documents and things that concern or support the assertions set forth in Plaintiffs' First Affirmative Defense to Defendant's Counterclaim.

24.    All documents and things that concern or support the assertions set forth in Plaintiffs' Second Affirmative Defense to Defendant's Counterclaim.

25.    All documents and things that concern or support the assertions set forth in Plaintiffs' Third Affirmative Defense to Defendant's Counterclaim.

26.    All documents and things that concern or support the assertions set forth in Plaintiffs' Fourth Affirmative Defense to Defendant's Counterclaim.

27.    All documents and things that concern or support the assertions set forth in Plaintiffs' Fifth Affirmative Defense to Defendant's Counterclaim..

28.    Any and all Document Retention Policies maintained by Plaintiffs.

29.    All documents and things which concern, refer to, or relate to Plaintiffs' intellectual property holdings regarding the BISA-BUGATTI Marks, including but not limited to the acquisition, usage and commercialization of same.

30.    All documents and things which concern, refer to, or relate to Plaintiffs' corporate relationship, if any, with the following entities:  (a) Bugatti International, SA, (b) Bugatti Automobiles SAS, (c) Bugatti Engineering GmbH, (d) the Bugatti Company, (e) Bugatti International Holdings, Inc., (f) Ettore Bugatti SrL Corporation, (g) Bugatti Automobili, (h) Ralston Investments, Inc., (i) Mullar SrL, (j) Vehicle Science Corporation, and (k) any

other entity designing, manufacturing, marketing, or distributing any product bearing the BISA-BUGATTI Marks under the direction or control of Plaintiffs.

31.    All documents and things which concern, refer to, or relate to Plaintiffs' history and/or relationship with The Bugatti Company founded by Ettore Bugatti in Molsheim, France as that history relates to the BISA-BUGATTI Marks, including but not limited to the acquisition, assignment or any other transfer of rights in the BISA-BUGATTI Marks.

32.    All documents and things which concern, refer to, or relate to the negotiations leading up to and surrounding the acquisition, assignment, or transfer of any of the BISA-BUGATTI Marks, including but not limited to any conversations, discussions, notes, or correspondence between the Plaintiffs, on one hand, and Messier Hispano-Bugatti or any other representative of The Bugatti Company founded by Ettore Bugatti in Molsheim, France, on the other hand.

33.    All documents and things which concern, refer to, or relate to the discussions or correspondence between the Plaintiffs and any third party regarding the negotiations leading up to and surrounding the acquisition, assignment, or transfer of any of the BISA-BUGATTI Marks.

34.    All documents and things which concern, refer to, or relate to Plaintiffs' registration or attempted registration of any of the BISA-BUGATTI Marks.

35.    All documents and things that concern, refer to, or relate to permission, licenses, or complaints (formal or informal), regarding use of the BISA-BUGATTI Marks by third parties.

36.    All documents and things that refer or relate to any objections, complaints, or lawsuits brought by a party against Plaintiffs concerning use or registration of the BISA-BUGATTI Marks in the United States or abroad.

37.    All documents and things that refer or relate to any objections, complaints, or lawsuits brought against Plaintiffs by or involving Aravis, SA.

38.    All documents, pleadings, and things produced by Plaintiffs in this or any other litigation, opposition proceedings, or cancellation proceedings brought by or against Plaintiffs and involving the BISA-BUGATTI Marks.

39.    All documents and things which concern, refer to or relate to any communication between Plaintiffs and Joao F. C. Rodrigues, including but not limited to any documents, pleadings, or correspondence related to Civil Action No. 04-80928, United States District Court, Southern District of Florida.

40.    All documents and things which concern, refer to, or relate to any communication between Plaintiffs and Erick Hufschmid.

41.    All documents and things which concern, refer to, or relate to any communication between the Plaintiffs and Defendant regarding purchase, licensure or any other dealings with the BISA-BUGATTI Marks and/or the BUGATTI Marks, including but not limited to any conversations, notes, or correspondence involving, but not limited to, Klaus le Vrang.

42.    All documents and things which concern, refer to, or relate in any way to any communication between Plaintiffs and Andres Butta.

43.    All documents and things which concern, refer to, or relate in any way to the use of the BISA-BUGATTI Marks or the BUGATTI Marks by Mario Dell'Orto and/or Heritage Mint, Ltd.

44.    All documents and things which concern, refer to, or relate to communications between Plaintiffs and its distributors which in any way concern, refer to, or relate to Defendant and/or the present lawsuit.

10

45.     All documents and things which concern, refer to, or relate to communications between Plaintiffs and any third party concerning, referring to, or relating to the Defendant and/or the present lawsuit.

46.     All documents and things that concern, refer to, or relate to the selection, adoption, and first use by Plaintiffs of the BISA-BUGATTI Marks.

47.     All documents and things that concern, refer to, relate to, or include surveys, marketing studies, focus group studies and polls regarding the BISA-BUGATTI Marks or the BUGATTI Marks.

48.     All documents and things that concern, refer to, or relate to any search or evaluation of any records conducted by or on behalf of Plaintiffs to determine whether use of the BISA-BUGATTI Marks would conflict with the rights of any other person or entity.

49.     All documents and things that concern, refer to, or relate to instances of actual confusion, or the absence of such confusion, between the BISA-BUGATTI Marks and the BUGATTI Marks.

50.     All documents and things that concern, refer to, or relate to Plaintiffs' use, design, advertising, display, promotion of, or plan to use or promote the BISA-BUGATTI Marks in the United States from inception through to the present day.

51.     All documents and things that concern, refer to, or relate to revenue, financing, advertising expenditures, sales data, or any other financial data regarding Plaintiffs' use of the BISA-BUGATTI Marks in the United States from inception through to the present day.

52.     All documents and things that concern, refer to, or relate to revenue, advertising, sales data, or any other financial data regarding Plaintiffs' use of the BISA-BUGATTI Marks in

connection with leather goods, clothing, writing utensils, watches, and/or jewelry in the United States.

53.    All documents and things including but not limited to customer lists or mailing lists, which concern, refer to or relate to the classes or types of consumers to whom Plaintiffs sell, intend to sell, market, or promote goods bearing the BISA-BUGATTI Marks in the United States.

54.    All documents and things sufficient to evidence Plaintiffs' annual expenditures on advertising, promotion and marketing for each good or service bearing the BISA-BUGATTI Marks since the date of first use in the United States.

55.    All documents and things relating to the volume of Plaintiffs' sales and/or revenues for each good or service bearing the BISA-BUGATTI Marks since the date of first use in the United States.

56.    All documents and things that concern, refer to, or relate to Plaintiffs' use of the BISA-BUGATTI Marks on its websites and in its catalogs and advertisements, including any authorization for such use.

57.    All documents and things relating to the registration, or attempted registration, of any domain name associated with or related to the BISA-BUGATTI Marks.

58.    Samples of all labels, tags, stickers, containers, packages, goods, signs, photographs, brochures, marketing and promotional materials, radio and television scripts, radio and television audio or video tapes, and advertisements used by Plaintiffs in connection with the sale or provision of goods and services under the BISA-BUGATTI Marks.

59.    All documents and things reflecting Plaintiffs' first awareness or knowledge of Defendant's use of the BUGATTI Marks, including but not limited to any investigative reports.

60. To the extent that Plaintiffs' contend that their use of the BISA-BUGATTI Marks have been continuous since first use, all documents and things evidencing or establishing such continuous use. If the BISA-BUGATTI Marks have not been in continuous use by Plaintiffs, all documents and things evidencing any interruption in use.

61. All documents and things which Plaintiffs rely upon in asserting that they have the right to use the BISA-BUGATTI Marks on leather goods in the United States.

62. All documents and things Plaintiffs rely upon in asserting that the BISA-BUGATTI Marks are famous or are purported to have secondary meaning.

63. All documents and things Plaintiffs rely upon in asserting that the BISA-BUGATTI Mark incorporating the red oval logo bearing the word "BUGATTI" as used on the body of the VEYRON automobile is famous or has secondary meaning.

64. Please make available for inspection and photographing in the United States a VEYRON automobile bearing the BISA-BUGATTI Marks.

65. All documents and things which show sales by Plaintiffs of goods bearing the BISA-BUGATTI Mark incorporating the red oval logo bearing the word "BUGATTI" in the United States.

66. All documents and things Plaintiffs rely upon in asserting that the VW Logo is famous.

67. In the event that Defendant is found liable in the present lawsuit, all documents and things which Plaintiffs will rely upon to show the damages for which Defendant is liable.

68. All documents and things which Plaintiffs rely upon to show actual or prospective damages or harm with respect to the BISA-BUGATTI Marks in the United States.

69.    All opinions of counsel Plaintiffs rely upon in asserting that they are justified in their use of the BISA-BUGATTI Marks.

70.    All documents and things Plaintiffs rely upon in responding to interrogatories propounded by Defendant.

71.    All documents and things which refine, contradict, tend to refute or tend to contradict Plaintiffs' responses to interrogatories propounded to Plaintiffs by Defendant.

72.    All communications Plaintiffs have had with any testifying expert in this case or any consulting expert who has provided information to a testifying expert.

73.    All reports, whether draft or final, prepared by any expert Plaintiffs may call to testify at the trial of this case.

74.    All documents, including but not limited to surveys, that have been sent to or received from any expert witness who may be called by Plaintiffs to testify at the trial of this case and all documents any testifying expert has relied upon or consulted in forming any part of his or her expert opinion in this case.

75.    All documents prepared by any testifying expert related to this case.

76.    All documents which refine, contradict, tend to refute, tend to contradict, any opinion of a testifying expert in this case, including all documents a testifying expert has rejected in forming an opinion in this case.

77.    All documents and things which Plaintiffs intend to rely upon at trial.

78.     All documents and things that concern, refer to, or relate to any joint defense

agreement or community of interest concerning the subject matter of the present lawsuit.

Respectfully submitted,

**THE BUGATTI, INC.,**

By its attorneys,

H. Joseph Hameline, BBO # 218710
Geri L. Haight, BBO #  638185
Philip J. Catanzano, BBO # 654873
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
    AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Dated: October 28, 2005

## CERTIFICATE OF SERVICE

I, Philip J. Catanzano, hereby certify that on October 28, 2005 I served upon the below-named counsel the foregoing **The Bugatti, Inc.'s First Request for Production of Documents and Things to Plaintiffs**:

BY HAND DELIVERY

David A. Brown (BBO# 556161)
Margaret H. Paget (BBO# 567679)
SHERIN AND LODGEN LLP
101 Federal Street
Boston, Massachusetts 02110

and

BY FEDERAL EXPRESS

Susan B. Flohr, Esq.
Michael D. White, Esq.
BLANK ROME LLP
600 New Hampshire Ave, NW
Washington, DC 20037

_____
Philip J. Catanzano

LIT 1546890v.1

16

**EXHIBIT L**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

VOLKSWAGEN AG, VOLKSWAGEN OF
AMERICA, INC. and BUGATTI
INTERNATIONAL, S.A.

      Plaintiffs and Counterclaim Defendants,

      v.

THE BUGATTI, INC.

      Defendant and Counterclaim Plaintiff.

Civil Action No.  05-11067-PBS

### THE BUGATTI, INC.'S FIRST SET
### OF INTERROGATORIES TO PLAINTIFFS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant The Bugatti, Inc.

(hereinafter, "The Bugatti" or "Defendant"), by their undersigned attorneys, requests that

Volkswagen AG ("VWAG"), Volkswagen of America, Inc. ("VWoA") and Bugatti International

S.A. ("BISA") (collectively "Plaintiffs") answer each of the following interrogatories within the time

specified by the Federal Rules and subject to the following instructions and definitions.

### DEFINITIONS

1.    "Plaintiffs" refers collectively to Plaintiffs and Counterclaim Defendants Volkswagen

AG, Volkswagen of America, Inc. and Bugatti International, S.A., including any parent companies,

subsidiaries, affiliates and divisions, and all officers, directors, employees, agents and representatives

thereof, and any predecessor or successor in interest.

2.    Volkswagen AG ("VWAG") means Plaintiff and Counterclaim Defendant

Volkswagen, AG, including any parent companies, subsidiaries, affiliates and divisions, and all

officers, directors, employees, agents and representatives thereof, and any predecessor or successor

in interest.  Unless otherwise appropriate, Volkswagen AG will be referred to as "Plaintiff(s)," a

term that collectively encompasses Volkswagen of America and Bugatti International, S.A.

3.    Volkswagen of America, Inc. ("VWoA") means Plaintiff and Counterclaim

Defendant Volkswagen of America, Inc. including any parent companies, subsidiaries, affiliates and

divisions, and all officers, directors, employees, agents and representatives thereof, and any

predecessor or successor in interest.  Unless otherwise appropriate, Volkswagen of America will be

referred to as "Plaintiff(s)," a term that collectively encompasses Volkswagen AG and Bugatti

International, S.A.

4.    Bugatti International, S.A. ("BISA") means Plaintiff and Counterclaim Defendant

Bugatti International, S.A. including any parent companies, subsidiaries, affiliates and divisions, and

all officers, directors, employees, agents and representatives thereof, and any predecessor or

successor in interest.  Unless otherwise appropriate, Bugatti International, SA will be referred to as

"Plaintiff(s)," a term that collectively encompasses Volkswagen AG and Volkswagen of America.

5.    "Defendant" refers to The Bugatti, Inc., including any parent companies, subsidiaries,

affiliates and divisions, and all officers, directors, employees, agents and representatives thereof, and

any predecessor or successor in interest.

6.    The "BISA-BUGATTI Marks" refer to any and all existing and pending BUGATTI

trademarks claimed by Plaintiffs in their Complaint for Damages and Injunctive Relief, including but

not limited to Reg. Nos. 1,407,200; 1,440,535; 1,440,536; 1,787,760; 2,299,293; 2,956,068; and

2,956,069; as well as Serial Nos. 75/599,753; 75/983,482; and 78/175,475, and any other mark

including the word "BUGATTI" as used by Plaintiffs.

7.    The "VW Marks" refer to the letter mark "VW" and the VW Concentric Circle Logo

as defined in ¶ 9 of Plaintiff's Complaint.  Except where specifically stated, the VW Marks are

considered separate from the BUGATTI Marks.

8.    The "BUGATTI Marks" refer to any and all existing and pending BUGATTI trademarks owned by Defendant, including but not limited to Reg. No. 1,158,090 (cancelled) and Application Serial No. 76/536,905, and any other mark including the word "BUGATTI" as used by Defendant.

9.    The "Complaint" refers to Plaintiffs' Complaint for Damages and Injunctive Relief, filed in the District of Massachusetts on or around May 23, 2005.

10.    The "Counterclaim" refers to Defendant's Amended Answer, Counterclaims and Jury Demand, filed in the District of Massachusetts on or around August 22, 2005.

11.    "Document" means all written, printed, or aural matter of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation (made on such copies or otherwise) including without limitation correspondence, memoranda, notes, speeches, press releases, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications, offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefaxes, voicemails, e-mails, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or aural records or representations of any kind (including without limitation photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures) and electronic, mechanical or electrical records or representations of any kind (including without limitation tapes, cassettes, discs and recordings).  A draft or non-identical copy is a separate document within the meaning of the term.

12.    Whenever an interrogatory inquires about documents, please furnish the following information as to each, or if Defendant prefers, furnish Plaintiffs' counsel with copies of each at such time as counsel mutually agree: (1) the date the document was created; (2) a general description of the document; (3) a general description of the subject matter to which it pertains; (4) the names and

3

addresses of the addressor, addressee and all persons receiving or shown the document or copies thereof; (5) the names and addresses of the persons in whose custody, possession or control the document is presently maintained.

13.     The words "identify," "identity," and "identification," when used with respect to a person means to state the full name and present or last known residence and business or permanent address of such person, and, if a natural person, his present or last known job title, and the name and address of his present or last known employer.

14.     The words "identify," "identity," and "identification," when used with respect to a document mean to describe the document by date, subject matter, the name of each person who wrote, signed, initialed, dictated or otherwise participated in the preparation of same, the name and address of each addressee (if any) and the name and address of each person who has possession, custody or control of such document.

15.     The words "identify," "identity," and "identification," when used with respect to an act, occurrence, statement or conduct, including an alleged violation or breach (hereinafter collectively called an "act"), mean to:

      a)   describe the substance of each event constituting such act and to state the date when such act occurred;

      b)   identify each person participating in such act;

      c)   identify each person present when such act occurred;

      d)   state whether the occurrence of such act was recorded or described in a document;

      e)   state whether such document or a copy thereof now exists; and

      f)   identify the person presently having possession, custody or control of each such document.

16.     "Media," in addition to its customary and usual meaning, means newspapers, magazines, television, the Internet, and radio and anyone associated therewith.

17.    "Confusion" and "likelihood of confusion," in addition to their usual and customary meanings, shall have the meanings ascribed to them by the Trademark Act, § 2(d), 15 U.S.C. § 1052(d).

18.    The term "person" is defined as any natural person or any business, legal or governmental entity or associate.

19.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

20.    "You" or "your" means Defendant, its predecessors in interest, its officers, directors, employees, partners, corporate parent, subsidiaries, franchisees or affiliates.

21.    The use of the singular form of any word includes the plural and vice versa. The present tense includes the past tense and vice versa.

## INSTRUCTIONS

1.    These interrogatories seek answers as of the date hereof and shall be deemed to be continuing, requiring Plaintiffs to serve upon Defendant such further supplemental or amended answers after Plaintiffs have acquired additional knowledge or information relating in any way to these interrogatories.

2.    In the following interrogatories, if Plaintiffs have withheld any information based upon any privilege, including that of attorney-client or attorney work product, identify:

    a)  the privilege asserted;

    b)  the date of the document or date on which the information was communicated;

    c)  the originator of the document or communicator of the information, the person to whom the document was addressed or information was transmitted and all persons who received the documents or information; and

    d)  describe the type of document or information transmitted and the subject matter to which it pertains.

## **INTERROGATORIES**

INTERROGATORY NO. 1

State in full and complete detail Plaintiffs' purported first use of the BISA-BUGATTI Marks, including:

(a)     The exact date(s) (month, day, year) of Plaintiffs' purported first use of each of the BISA-BUGATTI Marks in commerce and identify all documents supporting the date(s) of first use of each of the BISA-BUGATTI Marks by Plaintiffs;

(b)     The manner, extent, and duration of each such use(s), including the goods and/or services with which the BISA-BUGATTI Marks are/were used and any ancillary goods and services on which the BISA-BUGATTI Marks are/were used;

(c)     The identity of any and all persons having knowledge or information of the date of first use and duration of use of the BISA-BUGATTI Marks on any goods and/or services.

INTERROGATORY NO. 2

Describe in full and complete detail the acquisition, assignment, purchase, licensure, clearance, right to use, and/or adoption of each of the BISA-BUGATTI Marks referenced in the Complaint, including the date of acquisition, the form of acquisition, and the principle agents or employees of BISA who negotiated or were involved in such acquisitions. This description should include, but is not limited to, any communications and/or negotiations between BISA and the following entities:  (a) Bugatti International, SA, (b) Bugatti Automobiles SAS, (c) Bugatti Engineering GmbH, (d) the Bugatti Company, (e) Bugatti International Holdings, Inc., (f) Ettore Bugatti SrL Corporation, (g) Bugatti Automobili SpA, and (h) any other entity designing, manufacturing or marketing any product bearing the BISA-BUGATTI Marks under the direction, control, licensure or agreement of BISA.

INTERROGATORY NO. 3

Identify all persons with knowledge or information about, and all documents concerning, the proposal, conception, creation, design, selection, acquisition, purchase, clearance, right to use, assignment or adoption and use of each variation or form of the BISA-BUGATTI Marks, including any efforts to secure registration of the trademark rights in the BISA-BUGATTI Marks

INTERROGATORY NO. 4

Indicate each state in the United States in which Plaintiffs have sold leather goods, writing utensils, watches, jewelry, clothing, champagne or any other non-automotive product identified with the BISA-BUGATTI Marks. For each such sale, describe the channel of sale, trade and/or distribution and state the date of sale (including a summary of such sales if they are voluminous), the nature of the product, the purchase price of such goods, and produce copies of all documents evidencing, referring to, or relating to such sales, including but not limited to invoices or other financial data.

INTERROGATORY NO. 5

Indicate each state in the United States in which Plaintiffs have offered for sale, sold, or transported for sale automotive products identified with the BISA-BUGATTI Marks. For each such sale, describe the channel of sale, trade and/or distribution and state the date of sale, the nature of the product, the purchase price of such goods, and produce copies of all documents evidencing, referring to, or relating to such sales, including but not limited to invoices or other financial data.

INTERROGATORY NO. 6

Identify and describe in detail each and every product identified by the BISA-BUGATTI Mark that Plaintiffs advertise, distribute, sell, offer, or license for sale or use in the United States from the date of first use through the present. For each product, describe the distinct label, tag, sticker, container, package, good, sign, photograph, brochure, marketing and promotional material, radio and television advertising materials, or other advertising material used by Plaintiffs in connection with the sale or provision of such goods.

INTERROGATORY NO. 7

State the annual sales volume in dollars for each good and/or service featuring the BISA-BUGATTI Marks by country, indicating the first date and inclusive dates during which each such product has been or was advertised, sold, distributed, offered, or licensed and whether or not the products have been continuously available to the consuming public.

INTERROGATORY NO. 8

State Plaintiffs' annual expenditure in advertising and marketing by country, as well as the gross sales and gross profits, for each good and/or service featuring the BISA-BUGATTI Marks for each year such good or service has been offered.

INTERROGATORY NO. 9

Indicate whether any surveys, marketing studies, focus group studies or other consumer polls were conducted or commissioned by Plaintiffs that refer to or relate to the BISA-BUGATTI Marks and/or the BUGATTI Marks, and set forth the results of such survey, marketing study, focus group study or other consumer poll and the identities of all persons involved in same.

INTERROGATORY NO. 10

Identify and describe any instances of actual confusion or mistake by customers, prospective customers, members of the trade press, or others as a consequence of the concurrent use of any of the BISA-BUGATTI Marks by Plaintiffs and the BUGATTI Marks by Defendant, including but not limited to confusion as to source of the products or the affiliation between Defendant and Plaintiff. Produce all documents referring or relating thereto and all persons with knowledge thereof.

INTERROGATORY NO. 11

Identify and describe all investigations, searches, and/or inquiries undertaken by Plaintiffs relating in any way to Plaintiffs' adoption, acquisition, assignment, use, or determination of the availability and registrability of the BISA-BUGATTI Marks and produce any and all opinions of counsel, reports, or documents relating to such investigations, searches and/or inquiries.

INTERROGATORY NO. 12

State and describe the date upon which Plaintiffs first became aware of Defendant's use of the BUGATTI Marks, the manner in which Plaintiffs became aware of such use, and identify the individual(s) who investigated such use.

INTERROGATORY NO. 13

Identify and describe any evidence, including documents, surveys, market research studies, polls or investigations, showing that there is a likelihood of confusion (or no likelihood of confusion) between Plaintiffs' BISA-BUGATTI Marks and Defendant's BUGATTI Marks, and the name of each person with knowledge related thereto.

INTERROGATORY NO. 14

State and describe any objections, complaints, litigation, and/or opposition or cancellation

proceedings brought by or against Plaintiffs, individually or collectively, concerning the BISA-

BUGATTI Marks. For each objection, complaint, litigation, and/or opposition or cancellation

proceeding brought, please describe the outcome and provide the name of the agent of Plaintiffs

most knowledgeable on the subject.

INTERROGATORY NO. 15

State and describe any negotiations, discussions and/or communications regarding the

licensure, assignment, release, or other form of permission to use the BISA-BUGATTI Marks made

by Plaintiffs or any other third-party, including but not limited to Ralston Investments, Inc.,

MULLAR SrL, and Vehicle Science Corporation. For each response, please describe the outcome of

those negotiations, the terms of usage, the supervision of such usage, and provide the name of the

agent of Plaintiffs most knowledgeable on the subject.

INTERROGATORY NO. 16

State the name, address, title or position of each person Plaintiffs intends to call or rely upon

as a witness, and for expert witnesses, state the qualifications of the witness, the subject matter on

which such expert is expected to testify, the substance of the facts and opinions to which each expert

is expected to testify, a summary of the grounds for each opinion, and identify any documents each

such expert has reviewed or relied upon in formulating his or her opinion.

INTERROGATORY NO. 17

Describe any and all communications between Plaintiffs and the Defendant and identify the

content of such communications, the time and date, the location, and the persons involved.

INTERROGATORY NO. 18

Identify all persons with knowledge or information or documents concerning correspondence or comments made by or received by employees, officers, directors, stockholders, agents, or other representatives of Plaintiffs regarding Defendant's use of the BUGATTI Marks.

INTERROGATORY NO. 19

Identify all persons with knowledge or information or documents concerning the channels of trade in which Plaintiffs market or distribute any goods and/or services bearing the BISA-BUGATTI Marks, including customer and distribution names and locations where such goods and/or services are/were sold or offered for sale and the dates of sales or offers to sell.

INTERROGATORY NO. 20

Describe whether and under what circumstances Plaintiffs' distributors, automotive dealers, representatives, agents or any other third parties in the United States are licensed, authorized, or otherwise permitted to distribute, sell, or give leather goods bearing the VW Marks to customers, potential customers, sales associates, sales representatives, distributors, or any third party, including a description of what actions are taken with regard to distributors, automotive dealers, representatives, agents and any other third parties in the United States who are not not licensed, authorized, or otherwise permitted to distribute, sell, or give leather goods bearing the VW Marks.

INTERROGATORY NO. 21

Describe all actions taken by Plaintiffs against any third parties to enforce their rights to the BISA-BUGATTI Marks, including but not limited to any licensing or other agreements, and identify the content of such actions, the time and date, the location, and the persons involved, and any related documents.

Respectfully submitted,

THE BUGATTI, INC.,

By its attorneys,

_____
H. Joseph Hameline, BBO # 218710
Geri L. Haight, BBO #  638185
Philip J. Catanzano, BBO # 654873
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
    AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Dated: October 28, 2005

## CERTIFICATE OF SERVICE

I, Philip J. Catanzano, hereby certify that on October 28, 2005 I served upon the below-named counsel the foregoing **The Bugatti, Inc.'s First Set of Interrogatories to Plaintiffs**:

BY HAND DELIVERY

> David A. Brown (BBO# 556161)
> Margaret H. Paget (BBO# 567679)
> SHERIN AND LODGEN LLP
> 101 Federal Street
> Boston, Massachusetts 02110
>
> and

BY FEDERAL EXPRESS

> Susan B. Flohr, Esq.
> Michael D. White, Esq.
> BLANK ROME LLP
> 600 New Hampshire Avenue, NW
> Washington, DC 20037

Philip J. Catanzano

LIT 1546891v.1

13

**EXHIBIT W**

Los Angeles Times: 253 MPH and Still a Little Late
Page 1 of 6
Case 1:05-cv-11067-PBS    Document 41-12    Filed 02/23/2006    Page 2 of 7



ADVERTISEMENT

http://www.latimes.com/classified/automotive/highway1/la-et-bugatti10dec10,0,4346406.story?coll=la-class-autos-highway1

COLUMN ONE

# 253 MPH and Still a Little Late

## The Bugatti Veyron is a superlative on wheels. But for VW, which spent six years and about half a billion dollars, it may be obsession run wild.

By Dan Neil
Times Staff Writer

December 10, 2005

PALERMO, Sicily — At 200 mph, the Bugatti Veyron pounds a beautiful, howling hole in the sweltering haze hanging over the motorway.

This, the fastest production car in the world, is broad and low, an enameled ellipse in a spiffy two-tone paint scheme. By comparison, its now-vanquished supercar rivals, such as the Ferrari Enzo and McLaren F1, are all edges and blades and angles, like F-16 fighter planes or Japanese stunt kites.

The Veyron is not, strictly speaking, the fastest car I've ever driven, but the one that's faster had a jet engine and a parachute. The guardrail to my right is blurred into a dirty stream of quicksilver. Houses fly by before my brain has time to register the word "house."

**FOR THE RECORD:**
**Bugatti Veyron** —A graphic with an article in Saturday's Section A about the Bugatti Veyron said the car weighed four times more than the Dodge Viper. The Veyron weighs 4,300 pounds, approximately 1,000 pounds more than the Viper.

About nine seconds ago, I was dawdling at 100 mph. Then I squeezed the throttle. The seven-speed dual-clutch gearbox clicked twice, the engine took a huge lung-busting toke of atmosphere through its twin roof snorkels — and then things got interesting. Something slammed me from behind and I realize it was the seat. Captain, it appears we have fallen nose-first into a wormhole.

Two-hundred mph. And I'm not even in top gear.

BUG 14793

*... house....*

―――――――――

A superlative on four wheels, the Bugatti Veyron 16.4 is not only the world's fastest production car but also the most expensive: $1.25 million before taxes and richly deserved gas-guzzler penalties. Also, the most powerful: Its 8.0-liter 16-cylinder quad-turbo engine produces about 1,000 horsepower and churns it through a high-tech all-wheel-drive system and gob-smacking foot-wide tires. Also, the quickest: The Veyron accelerates to 60 mph in 2.1 seconds, faster than a Formula 1 car, but then it's just getting started. In 20 seconds — about the time it takes a fast reader to get through this paragraph — it reaches 200 mph. In 53 mind-blowing seconds, the Veyron reaches its marquee speed: 253 mph.

At that speed, the tires would begin to soften in about half an hour. Fortunately, at top speed, it runs out of gas in 12 minutes. "It's a safety feature," Wolfgang Schreiber, the Veyron's chief engineer, says with a smile.

The Veyron, which is making its way to the first customers this month, is many things: It's a mirror held to the automobile industry's near past of irrational exuberance. It's a monument to the ego of Ferdinand Piech, former chairman of Volkswagen AG, which purchased the Bugatti name in 1998. And it represents a defining moment in the history of the automobile, the likely pinnacle of production-car cost and performance. Six years and an estimated half a billion dollars in the making, the car trades on one of the most famous names in motoring. Revered among aficionados, Bugatti dominated Grand Prix racing for a time between the world wars and built sinfully beautiful works of transportation art, including the Type 57SC Atlantic and Bugatti Royale, which holds the Guinness record for the highest price paid for a car — $15 million.

Volkswagen was in tall cotton in 1998. Led by Piech, a prodigious engineer-designer and grandson of Porsche founder Ferdinand Porsche, the company went on a buying spree, acquiring the Italian carmaker Lamborghini, the British luxury marque Bentley and Bugatti.

This in itself wasn't unusual. The decade saw many storied firms absorbed by larger car companies: Ford, for instance, purchased Aston Martin and Land Rover, and BMW acquired Rolls-Royce. Volkswagen, riding a crest of record sales, had the money; its after-tax profit in 1998 was $1.2 billion.

Bugatti, however, seemed peculiarly cursed. It's doubtful that even Ettore Bugatti, the artist-engineer who founded the company in 1908, made money on the venture. In 1988, an Italian entrepreneur, Romano Artioli, purchased the rights to the name and built a state-of-the-art factory in Campogalliano, Italy, to produce a supercar called the EB110. Less than a decade later, in 1996, Bugatti was again bankrupt. What VW purchased amounted to no more than a glorious scrapbook.

Piech — unyielding and autocratic but possessed with a vision as pure, in its way, as that of Ettore Bugatti — promised that the new Bugatti would be VW's crown jewel, the ultimate in automotive technology. It was he who set the well-rounded parameters for the Veyron: 1,000 hp and faster than 400 kilometers per hour (248 mph). Such a car would eclipse the McLaren F1's seemingly unassailable record of 240.1 mph.

"Piech was maniacal," says Peter DeLorenzo, an industry analyst and founder of

BUG 14794

Autoextremist.com. "He was one of the great engineering geniuses of the late 20th century, but he proved that brilliance on the engineering side doesn't necessarily transfer to managerial vision."

Indeed, Volkswagen AG is a company in crisis, beset by plummeting market share around the world, high labor costs and — particularly in the crucial United States market — a dearth of new products in its bedrock brands such as VW. In addition to other problems, the company is embroiled in a sex scandal involving allegations the company paid for "sex junkets" for its labor representatives. Last week on the Frankfurt stock exchange, a VW share hovered around the 45 Euro mark, less than half its peak value in 1998. Piech was replaced as chairman in 2002 by Bernd Pischetsrieder, former chief executive of BMW.

By most accounts, Piech's failing was of the classical Greek hubris variety. "He was obsessed with putting VW onto a par with Ferrari," says DeLorenzo.

Piech's effort to drive the VW brand upscale produced the VW Phaeton, an eight- or 12-cylinder luxury sedan that costs as much as six figures in the United States (the company announced last month the Phaeton model was being discontinued). The Phaeton directly competes with another of VW Group's offerings, the Audi A8 sedan.

"I think [Piech's] crazy," says Mike Kamins, a professor at USC's Marshall School of Business. "The Phaeton just didn't make any sense. VW doesn't have that image and you can't change an image that fast. People ask what you paid for your car and you say, '$100,000,' and they say, 'Well, what kind of Porsche is it?' You say, 'No, it's a VW.' They say, 'What, are you stupid?' "

VW's bigger problem, analysts say, is that during Piech's reign it took its eye off developing its core product — cars like Golf, Jetta and Passat — while diverting engineering resources to exotica like the Phaeton, the new Bentleys, Lamborghinis and, of course, the Veyron.

"I think the Bugatti venture gets lost in the rounding error for the overall VW Group," says Jay N. Woodworth of Woodworth Holdings Ltd. "What really matters is that the successor to the main VW car lines has been delayed."

The result is that the Veyron — named after one of Bugatti's most successful race drivers, Pierre Veyron — has been born into a world very different from the one in which it was conceived. Other super-exotics, including Mercedes-Benz Maybach limousines, the SLR McLaren and Porsche's Carrera GT, haven't sold as briskly as was hoped when they were drawn up in the bubbly days of the late 1990s.

And, it should be noted, the executives who lead German car companies — people like Piech and Pischetsrieder, former DaimlerChrysler chief Jurgen Schremp and others — are intensely competitive, and the Veyron project had an almost irresistible logic for Europe's biggest automaker.

"I don't think it's dramatically different than the relationship among auto executives at country clubs at Detroit," Woodworth says.

Whatever the cause, the result is this artifact called the Veyron, a heroic and historic automobile.

———————————

**BUG 14795**


Meanwhile, back at 200 mph, technical director Schrieber is urging me on. "This makes fun,

doesn't it?" he asks.

The main autostrada of Sicily is not exactly glass-smooth, nor particularly straight, and as I bend the car into a sweeping right-hander at about 205 mph, a flock of butterflies the size of vampire bats alights in my solar plexus. The suspension is working hard and I can feel the static of the tires coming through the stitched-leather steering wheel. I am very curious to see if the car will hold the line in the corner or slide off into the heavenly yonder.

As fast as it is, the Veyron is actually late for its own party. The first Veyron 16.4 concept car appeared at the Tokyo Auto Show in fall 1999, and the final draft, so to speak, appeared in September 2001 at the Frankfurt auto show. The plan was to have cars to customers by the end of 2003, but the Veyron posed an unprecedented engineering challenge: a car capable of 250 mph that is civilized, safe and reliable — passing all the durability and crash-test standards that a VW Golf has to pass.

"Its performance was achieved through state-of-the-art engineering rather than simply shoehorning a giant engine into thinly disguised race car," says Csaba Csere, editor of Car and Driver magazine, who performed a max-speed test on the car this fall. "The Veyron is completely usable on the road and can be piloted by anyone with a regular driver's license."

When Schreiber took over the project in spring 2003, he says, there were about 500 technical issues with the car. It was too heavy. The dual-clutch gearbox was too noisy. The fuel pumps weren't sufficient to supply the gallons per minute the engine requires at full honk. And everything was too hot. The car now has 10 radiators, cooling components such as the hydraulics system and the gear-box oil.

But the biggest problem was air. At 200-plus mph, air is not the insubstantial nothingness of everyday experience but a thick, turbulent fluid that wants to pull the car off its wheels. To thwart what is known as aerodynamic lift, the Bugatti — like most race cars — has a wing, as well as a smaller spoiler, deployed on aircraft-grade hydraulics on the back. These keep the car from fluttering off the road like a thrown playing card. However, the same wing that provides down force also creates drag. As recently as March, the car was falling well short of the target speed of 248 mph.

Only when Schreiber and his engineers created what is now called the "top speed" configuration was the car able to achieve its maximum speed. It works like this: When the car reaches 137 mph, hydraulics lower the car until it has a ground clearance of about 3 1/2 inches. At the same time, the wing and spoiler deploy. This is the "handling" mode, in which the wing helps provide 770 pounds of down force, holding the car to about 230 mph. This drag-limits the car to about 230 mph.

To go faster, drivers have to stop the car and activate the top speed mode with a special key in a lock to the left of the driver's seat. This lowers the car to a ground-skimming clearance of about 2 1/2 -inches and retracts the rear wing so that it just peeks out over the bodywork. At 250 mph, a little wing angle is all you need. At the same time, openings for aerodynamic tunnels built into the car close, creating a fully flat-bottom car.

In April, Schreiber and his team had hit upon the ideal setup for the car and were putting down consistent 250 mph runs.

The Veyron has a lot of other tricks up its carbon-fiber sleeve. When the brakes are activated at high speed, the rear wing tilts to 70 degrees, creating what is effectively an air brake — should the

BUG 14796

15-inch carbon-ceramic disc brakes not prove to be enough. Here is a fun fact: In a panic stop from 253 mph, the Veyron comes to a halt in less than 10 seconds — hard enough to pull the sunglasses off your face.

"My philosophy is that you should be able to brake better than you can accelerate," Schreiber says.

So it can go like the hammers of hell and stop on a pfennig. But will it sell? That is the $1.25-million question.

"It remains to be seen," says Peter Mullin, a Los Angeles car collector who owns several vintage Bugattis. "They certainly have put the resources into it. I just wonder what is the appetite for a car that can go 250 mph on the street? It's kind of a limited market."

And yet the "fastest car" superlative is indispensable to the car's mystique. The Veyron is the latest in a long list of what you might call dorm-room poster cars — cars with names like Lamborghini, Ferrari, Koenigsegg and Saleen.

"Once this car comes out, it will be the car that people think of when they think ultimate sports car," says Leslie Kendall, curator of the Petersen Automotive Museum. "It will be the new standard."

Bugatti has said it will build no more than 300 of the cars, optimally 50 to 80 per year. There will be 20 dealerships worldwide, including O'Gara Coach Company in Beverly Hills. Ehren Bragg, president of O'Gara, says the dealership has four orders in hand. The down payment is $413,000, enough to buy six Chevrolet Corvette Z06s.

O'Gara is expecting to make its first deliveries in August or September 2006, but it will have a demonstrator model. Bragg wouldn't be surprised if that car is bought off the showroom floor. "Here in Beverly Hills," he says, "when people can't have something, they want it more than they thought they did."

Even if Bugatti sells every car, it won't make a dime. "Volkswagen will only net about $350 million from the Veyron," says Car and Driver's Csere. "That's hardly enough to pay for the engineering, development and manufacturing costs of this car. But making a profit was never the point. The goal was to relaunch the Bugatti brand as a builder of noteworthy cars. That the Veyron has done."

Bugatti's president, Thomas Bscher, has said as much in the media. The idea is that the glow of the Veyron's halo will light up other products to come, possibly a four-seat coupe. But under VW Group's current financial constraints — and the fact that the gas-hungry world has shifted under the company's feet — it's possible the Veyron will turn out to be a magnificent anomaly.

"I would have some healthy skepticism of the survivability of these proposed products," Woodworth says. "They may never get off the launch pad."

When asked what he thinks of the Veyron's legacy, automotive marketing analyst Daniel Gorrell, in a literary turn, recalls some lines from Percy Bysshe Shelley:

*"My name is Ozymandias, King of Kings:*

*Look on my works, ye Mighty, and despair!"*

**BUG 14797**

Copyright 2006 Los Angeles Times | Privacy Policy | Terms of Service
Home Delivery | Advertise | Archives | Contact | Site Map | Help

partners: ktla 5  Hoy

BUG 14798