UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VOLKSWAGEN AG,<br>VOLKSWAGEN OF AMERICA, INC.,<br>and BUGATTI INTERNATIONAL, S.A.,<br><br>　　　Plaintiffs,<br><br>V.<br><br>THE BUGATTI, INC.,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　CASE NO. 05-11067 PBS<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW OF DEPONENT,
ARBELLA PROTECTION INSURANCE CO. IN SUPPORT OF ITS
MOTION FOR PROTECTIVE ORDER AND TO QUASH PLAINTIFF'S SUBPOENA**

In its complaint, the Volkswagen plaintiffs allege that they have, pursuant to certain federal, state and common law rights, obtained the protection of certain letter marks and concentric circle logo marks which they have collectively identified in their complaint as "VW marks". Apart from certain rights which are owned by Volkswagen, Bugatti International also maintained, it is alleged, certain priority rights in BUGATTI marks and that Bugatti International eventually was sold or was purchased by one or more of the Volkswagen plaintiffs. It is asserted by the plaintiffs that the defendant improperly has applied or affixed the VW marks to leather goods and other accessories all in violation of both statutory and common law rights.

Once the litigation was commenced, Arbella Protection Insurance Co. (hereinafter Arbella) was notified by defendant Bugatti of the action. Arbella's first notice of the loss was the filing of the law suit and the receipt of the summons and complaint in July from personal counsel to Bugatti. (Exhibit 6) Arbella wrote a general liability policy of insurance for Bugatti which included, inter alia, coverage for personal and advertising injury. Personal and advertising injury is defined in the policy at Section V "Definitions" (Exh. 5 at p.14) as including, but not limited to:

"g. Infringing upon another's copyright, trade dress, or slogan in your "advertisement"."

These provisions, like others in the policy, have certain exclusions that may be applicable to this claim. (Exhibit 5 at p.6) After receiving notice of the instant action, Arbella first notified Bugatti that it intended to undertake an investigation (Exhibit 6; July 20, 2005 letter) and then retained counsel for and on behalf of its insured. (Exhibit 6; September 26, 2005 letters) It followed those letters with a reservation of rights letter. (Exhibit 6; October 26, 2005 letter)  Defense counsel retained by the insurer filed an answer on behalf of the defendant.

In October of 2005, a deposition notice was issued to Arbella to produce certain documents (Exh. 2).  There was no designation of subjects for testimony and it appears that the notice was directed to the keeper of records.  In reply, Arbella produced documents and supplemented its reply upon further inquiry from the plaintiff (Exh. 3, 4).  These documents also respond to plaintiffs' current request for documents in paragraphs 1 through 9 of Schedule B of Exhibit 1. Hence, Arbella provided to the plaintiffs the insurance policy of Bugatti in effect in 2005 along with the original flurry of correspondence regarding whether a defense would be provided.

The plaintiffs have issued a deposition notice to Arbella pursuant to F.R.C.P. Rule 30(b)(6) requesting that Arbella designate a person to speak to twenty-six paragraphs of inquiry and to produce certain documents. (Exh. 1, Sch. A and Sch. B)  As is stated in the motion for a protective order and to quash, Arbella asserts that the deposition should not go forward as the plaintiffs are not entitled to the information sought, some of the information is irrelevant to the instant case, the request is so broad and vague that it would require Arbella to produce a number of deponents, the notice imposes an undue burden on Arbella and some of the information is privileged as work product.  Plaintiffs are entitled to know of insurance coverage of Bugatti, see, F.R.C.P. Rule 26(a)1(D), but the current request go well beyond that limited inquiry.

1.  **Some of the information requested is privileged work product (Exh. 1, Sch. A, para. 12-16, 18-20, Sch. B, para. 10-11, 18).**

The work product doctrine provides a qualified immunity to "documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . ." F.R.C.P. Rule 26(b)(3). Documents prepared by or for an attorney retained by a party and prepared in anticipation of litigation are protected by the work product doctrine. See, U.S. v. Willis, 565 F. Supp. 1186,

1219 (D.C. Iowa 1983). Depositions may be taken of officers and agents of a party's insurers, but they cannot be required to answer questions on matters that are learned or created in anticipation of litigation that is protected work product. See, Colpak v. Hetterick, 40 F. Supp. 350 (D.C.N.Y. 1941); Seligson v. Camp Westover, 1 F.R.D. 733 (S.D.N.Y. 1941).

In Hickman v. Taylor, 329 U.S. 495 (1947), the Court ruled that the work product privilege protects information sought in the absence of undue prejudice or hardship to the party seeking discovery. In that case, the Court held that the petitioner sought discovery of information that is readily available to him, and therefore there was no compelling reason to produce information that is protected as work product. See also, Applegarth v. General Cinema, 15 Mass. L. Rptr. 38 (Mass. Super. Ct. 2002).

In the present case, the information sought by the plaintiffs is protected work product and the plaintiffs have not made any showing that the information, if not produced, will result in undue prejudice or hardship. The documents now sought by the plaintiffs were generated once counsel was assigned by Arbella to defend the action. Any documents generated since October of 2005, after plaintiff's subpoena for documents and defendant's reply to the initial request, are privileged work product. Plaintiffs are, in part, seeking the same category of documents originally sought in October (see para. 1-9) and want the after acquired documents. Plaintiffs are not entitled to the developing claims file of the insurer.

A number of the requests sought by plaintiffs identify the business dealings of Bugatti and what information, if any, Arbella has concerning the use of certain marks. If Arbella has come into any such information, it was during the course of the investigation of the subject matter and therefore it should be protected as work product (Exh. 1, Sch. A, para. 12-16). There was no claims file before the litigation was commenced.

Any matters that concern settlement discussions in the instant lawsuit should not form the basis of any disclosure to the plaintiffs. Ongoing discussions regarding possible settlement falls within F.R.C.P. Rule 26(b) that is information generated in the course of litigation as trial preparation materials and should be protected from disclosure. The plaintiffs should not be entitled to depose the insurer to understand the nature of the defendant's defense and trial strategy by interrogating the insurer's representative in this action. (Exh. 1, Sch. A, para. 18-20, Sch. B, para. 10-11, 18). It appears that plaintiffs want to know of the degree of involvement by

Arbella in settlement discussions. That is not a topic that should have any relevance to plaintiffs' claim.

**2.   Some of the information requested is related only to insurance policy coverage, not to the instant case of trademark infringement, and therefore is irrelevant (Exh. 1, Sch. A, para. 8-11, 17).**

F.R.C.P. Rule 30(b)(6) allows a party to seek a deposition of a non-party witness and the notice must describe with reasonable particularity the matters upon which examination is requested. In any subpoena issued pursuant to F.R.C.P. Rule 30(b)(6), the examination requested must be described with reasonable particularity. F.R.C.P. Rule 26(b)(1) states that a party generally "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . [or which] appears reasonably calculated to lead to the discovery of admissible evidence." See also, Hickman v. Taylor, 329 U.S. 495, 499-501 (1947). "The parties and the court should focus on the actual claims and defenses involved in the action." F.R.C.P. Rule 26(b)(1) Advisory Committee's Note, 2000 amendments.

In the instant matter the scope of the examination sought by the plaintiffs is unreasonable, burdensome and improper. There is no dispute between the plaintiffs and defendant that centers on insurance coverage. The plaintiffs are aware that there may be insurance coverage as the policy written by Arbella has been previously produced as has the correspondence to the insured. (Exh.3,4,6) The plaintiffs seek a deponent to address several provisions in the policy. It is not appropriate for the plaintiffs to demand that a deponent interpret policy provisions where this is not an action involving a coverage dispute. The policy language speaks for itself. There is no declaratory action between Bugatti and its insurer regarding what these provisions mean (Exh. 1, Sch. A, para. 8-11, 17). For example, paragraph 17 concerns the insurer's right to investigate and settle claims. There is no basis for the plaintiffs to demand that Arbella provide a deponent to address how Arbella is handling this claim or what these provisions of the policy mean.

The obligation of the insurer to defend is based on the allegations in the four corners of the complaint, not on facts proven at trial. See, Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989). It appears from the topics identified that plaintiffs wish to have someone from Arbella tell them what is covered and what is not covered under the policy. That determination has not yet been made while the underlying case is proceeding and may not be known until trial. This is the very reason why the reservation of

rights letters were sent (Exhibit 6) and why Arbella has stated that until the investigation of the facts (though the discovery process) is concluded, that determination may not be known. This entire area of inquiry should not be available to plaintiffs. They are entitled to the policies written and the early correspondence and they have been given the same. The inquiry should end there.

**3.    Some of the categories of information requested is overly broad and vague and imposes an undue burden on the defendant; it also is not reasonably calculated to lead to admissible evidence (Exh. 1, Sch. A, para. 1-7, 21-26).**

The purpose of a notice of deposition and subpoena duces tecum pursuant to F.R.C.P. Rule 45 is to compel the production of documents and the attendance of a deponent to speak to certain matters which are facts in issue in the pending litigation. U.S. v. Santiago-Lugo, 904 F. Supp. 43, 46-47 (D.P.R. 1995). A notice of deposition will be inappropriate if it is believed that the subpoena and the information sought along with the documents requested are unreasonable or oppressive. Williams v. City of Dallas, 178 F.R.D. 103, 109 (N.D. Tex. 1998). A subpoena which seeks documents should set forth with reasonable particularity the documents sought to be produced. Linder v. Calairo-Portocarrerro, 180 F.R.D. 168, 173 (D.D.C. 1998). It is generally held that a subpoena which is no more than a fishing expedition is deemed to be improper.

F.R.C.P. Rule 45(c) states in part that a party or an attorney responsible for the issuance of a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person that is subject to that subpoena. The Rule also provides that Arbella may, pursuant to F.R.C.P. Rule 45(c)(2)(B), serve within the appropriate time a written objection to the inspection or a copying of any of the designated materials. One of the bases for the court to consider in determining whether a party should appear for a deposition is whether it subjects the person who has been subpoenaed to undue burden. F.R.C.P. Rule 45(c)(3)(A)(iv).[1]  Determining whether there is undue burden generally raises the question of the reasonableness of the subpoena. The court must balance the interest served by demanding compliance with a subpoena against the interest furthered by quashing it. The court must consider the importance of the information to the requesting party as well as the burden producing the requested information will place on the witness. See, Linder v. Department of Defense, 133 F.3d 17, 24 (C.A.D.C. 1998).

---

[1] This provision within F.R.C.P. Rule 45 was added in 1991 effective December 1, 1991. See, generally, Exxon v. US Department of Interior, 34 F.3d 774 (9th Cir. 1994).

Even if information sought might be deemed to be relevant, discovery will not always be permitted where no need has been shown by the party issuing the subpoena or where compliance is unduly burdensome. See, Manington Mills, Inc. v. Armstrong World Industries, Inc., 206 F.R.D. 525, 529 (D. Del. 2002). Ultimately, the court must consider whether the information is necessary. See, e.g., New York State Energy Research & Development Authority v. Nuclear Fuel Services, 97 F.R.D. 709 (D.C.N.Y. 1983).

The scope of inquiry that can be allowed under subpoenas is the same as the standard applied under F.R.C.P. Rule 34 and other discovery rules. If the court is satisfied that the information sought has no possible bearing upon the issues raised in the action, then the allowance of a motion to quash is appropriate. See, Dart Industries, Inc. v. Liquid Nitrogen Processing Corp. of Cal., 50 F.R.D. 286, 292 (D. Del. 1970). Although a strict rule of admissibility at trial is not the standard to apply, the information sought must reasonably be calculated to lead to admissible evidence as set forth in F.R.C.P. Rule 26(b)(1).

In the present case, Arbella previously produced a number of documents to the plaintiffs as noted in Exhibit 3, 4 and now plaintiffs seek a deponent to speak to those documents already produced and additional documents now sought. (Exh. 1, Sch. A and Sch. B). To require Arbella to produce someone to speak to documents produced (complaint, insurance policy, research of coverages for earlier years, letters on reservation and the assigning of counsel) is irrelevant to the instant action and, more importantly, beyond any reasonable areas of inquiry beyond production of the documents. Plaintiffs are entitled to know of insurance coverage, see, F.R.C.P. Rule 26 (a)1(D) and the inquiry should end there.

The insurance policy in effect in 2005 is identified as policy no. 8500001451. The plaintiff seeks a deponent to appear (Exh. 1, Sch. A, para. 4-5) to speak to this policy for 2005, all prior years and for 2006 as well. It is not clear why the plaintiffs are entitled to this information or even what will be gained by having a deponent identify one or several insurance policies.

Finally, the plaintiff seeks a deponent to speak to information contained in either correspondence or notations on documents previously produced (Exh. 1, Sch. A, para. 21-26). The plaintiff is aware that a demand was made for coverage for this action, the communications that Arbella had, and the fact that counsel was assigned. That is the extent to which Arbella should be required to assist the plaintiffs. The letters speak for themselves. Specifically, there

were a number of letters in the Arbella claims file which were produced in October of 2005. (Exh. 3,4). They were handwritten notes entered on a letter from personal counsel for Bugatti indicating that based upon research, policies were found dating back to 1998. (Exh. 6, letter July 12, 2005; see also Exh. 1, Sch. A, para. 21) Plaintiff seeks a deponent to speak to the contents of these handwritten notes which are self-explanatory. Likewise, there is an accord, first notice of loss, of July 15, 2005 (Exh. 6) with a general description of the nature of the claim and that Arbella may need coverage counsel. Again, these handwritten notes are self-explanatory. (Exh. 1, Sch. A, para. 22). The plaintiffs seek a deponent to speak to the contents of the following letters which are self-explanatory: letter dated July 20, 2005 in which Arbella wrote to Bugatti, care of its counsel, indicating that Arbella would undertake an investigation without a waiver of any rights (Exh. 1, Sch. A, para. 23); letter dated September 26, 2005 in which an adjuster at Arbella wrote to personal counsel for Bugatti indicating that Arbella has agreed to defend the case and that Mintz Levin will be assigned (Exh. 1, Sch. A, para. 24); and letter dated September 26, 2005 to Mintz Levin from Arbella and a letter of October 26, 2005 from Arbella to Bugatti which are engagement letters indicating that counsel has been assigned and that the case will be defended.[2] (Exh. 1, Sch. A, para. 25-26) It is unreasonable and oppressive to require Arbella produce the authors of these letters to speak to issues that clearly show that the matter would be defended with the assistance of the insurer, an investigation would be undertaken, and a reservation of rights was asserted.

**4.     Conclusion**

The information for which plaintiffs seek a deponent(s) and production of documents should be precluded for the reasons set forth above. Arbella requests that this Honorable Court enter a protective order that the "disclosure or discovery not be had" F.R.C.P. Rule 26(c)1 and that the subpoena be quashed.[3] F.R.C.P. Rule 45 (c).

---

[2] In the letter of September 26, 2005 to Mintz Levin by Daniel Clough, claims manager at Arbella, he indicates that the Arbella litigation guidelines should be followed. This concerns claims handling and reporting by counsel. In Schedule B to Exhibit 1, the plaintiff seeks to have the Arbella litigation guidelines produced. The instant matter does not involve claims handling or whether Arbella or counsel have followed the guideline.

[3] As previously stated Arbella will be producing policies and excess coverage for prior years as requested in Schedule B at para. 12-17 of Exhibit 1.

|  |  |
|---|---|
|  | ARBELLA PROTECTION INSURANCE CO.<br>By its attorney, |
| DATED: 3/3/06 | /s/Lewis C. Eisenberg<br>Lewis C. Eisenberg, Esq. / BBO #152140<br>COSGROVE, EISENBERG and KILEY, PC<br>803 Hancock Street - P.O. Box 189<br>Quincy, MA 02170<br>(617) 479-7770 |

Case 1:05-cv-11067-PBS   Document 53   Filed 03/03/2006   Page 8 of 9

**CERTIFICATE OF SERVICE**

    I, Lewis C. Eisenberg, Esq., as attorney for Arbella Protection Insurance Co., hereby certify that on this date a copy of the within Memorandum of Law in Support of the Motion to Quash Deposition was served on the below attorneys, by hand delivery:

    Margaret H. Paget, Esq.
    Sherin & Lodgen
    101 Federal Street
    Boston, MA 02110

    Geri L. Haight, Esq.
    Mintz, Levin, Cohn, Ferris,
    Glovsky & Popeo, PC
    One Financial Center
    Boston, MA 02111

and by facsimile and first class mail to:

    Michael D. White, Esq.
    Blank Rome, LLP
    Watergate
    600 New Hampshire Ave., NW
    Washington, DC 20037

    /s/Lewis C. Eisenberg
    LEWIS C. EISENBERG, ESQ.

    DATED: 3/3/06