# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

VOLKSWAGEN AG, VOLKSWAGEN OF
AMERICA, INC. and BUGATTI
INTERNATIONAL, S.A.

      Plaintiffs and Counterclaim Defendants,

    v.

THE BUGATTI, INC.

      Defendant and Counterclaim Plaintiff.

**Civil Action No. 05-11067-PBS**

---

### APPENDIX OF UNPUBLISHED LEGAL AUTHORITIES CITED
### IN THE MEMORANDUM IN OPPOSITION OF THE BUGATTI INC.'S MOTION TO
### COMPEL RESPONSES TO OUTSTANDING DISCOVERY REQUESTS FROM
### PLAINTIFFS VOLKSWAGEN A.G. AND BUGATTI INTERNATIONAL S.A.

*Foxworthy v. Sun Art Designs, Inc.*, No. 96-3372, 1997 U.S. Dist. LEXIS 6411
(Mar. 4, 1997)...................................................................................Tab A

*Murata Mfg. Co., Ltd. v. Bel Fuse Inc.*, No. 03 C 2934, 2004 U.S. Dist. LEXIS 9771
(May 26, 2004)...................................................................................Tab B

*Administration of Estate of Tupac Shakur v. Thug Life Clothing, Co.*,
Cancellation No. 28,968 2001 TTAB LEXIS 158 (Feb. 28, 2001)............ .................Tab C

*Kegan v. Lane*, Opp. No. 102,966, 1997 TTAB LEXIS 492
(Dec. 1, 1997)...................................................................................Tab D

*Kegan v. Lane*, Opp. No. 102,966, 1998 TTAB LEXIS 276
(April 15, 1998)...................................................................................Tab E

*Tab A*

LEXSEE 1997 U.S. DIST. LEXIS 6411

**JEFF FOXWORTHY, Plaintiff, vs. SUN ART DESIGNS, INC., and YOAV (JOE) BITTON, Defendants.**

**Case No. 96-3372-CIV-FERGUSON**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

*1997 U.S. Dist. LEXIS 6411; 42 U.S.P.Q.2D (BNA) 1317*

**March 4, 1997, Decided**
**March 4, 1997, FILED**

**DISPOSITION:** [*1] Motion to Compel as to Defendants' customer list DENIED.

**COUNSEL:** For JEFF FOXWORTHY, Plaintiff: John C. Rawls, Blanc Williams Johnston & Kronstadt LLP, Los Angeles, CA. Sean R. Santini, Rubin, Baum, Levin, Constant et al, Miami, FL. Suzanne V. Wilson, Blanc Williams Johnston & Kronstadt LLP, Los Angeles, CA.

For SUN-ART DESIGNS, INC., YOAV (JOE) BITTON, Defendants: Jennifer Karen Lawson, Malloy & Malloy, Miami, FL. John Cyril Malloy, III., Malloy & Malloy, Miami, FL.

**JUDGES:** LINNEA R. JOHNSON, UNITED STATES MAGISTRATE JUDGE

**OPINIONBY:** LINNEA R. JOHNSON

**OPINION:**

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

**THIS MATTER** is before the Court on the Motion to Compel filed by Plaintiff, Jeff Foxworthy ("Foxworthy").

**I. Background.**

Plaintiff is a comedian and television actor that has merchandised his "redneck" humor in various media, including books, calendars, and clothing. Defendant, Sun Art Designs, Inc. ("Sun Art"), and its president, Yoav (Joe) Bitton ("Bitton"), (collectively "Defendants"), are in the business of manufacturing iron-on t-shirt transfers, which are sold to t-shirt shops around the country. Plaintiff has accused Defendants of, inter alia, copyright vio-

lations [*2] and unfair competition arising from the use of allegedly similar jokes and phrases on one of Defendants' transfer designs ("accused design"). This case began with an ex parte seizure of the accused designs and related records by Plaintiff with the assistance of the U.S. Marshall.

**II. Documents and Things Seized by U.S. Marshall.**

In response to several document requests, Defendants state that responsive documents were seized by the Marshall or otherwise made available to Plaintiff's counsel at the time of the seizure. However, Plaintiff complains that the Marshall sealed these items in a box pursuant to the Court's Order. Since the filing of the Motion to Compel, the box has been unsealed by agreement of counsel. All issues related to its contents are, therefore, moot.

Plaintiff further complains that Defendants' written responses to the discovery requests do not specifically state whether all responsive documents were seized. 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2213 (1994). Accordingly, it is reasonable to require Defendants to serve supplemental responses, as set forth below.

**III. Defendants'** [*3] **Customer List.**

In response to several other documents requests, Defendants' produced a detailed computer-generated sales summary containing the particulars of every sales transaction for the accused design. However, Plaintiff is dissatisfied that the summary is assembled according to customer codes, rather than customer names.

Defendant Sun Art has made a reasonable showing that its customer list is confidential. Defendants refuse to produce the customer list because Plaintiff's counsel has expressed an intention to contact Defendants' customers

1997 U.S. Dist. LEXIS 6411, *; 42 U.S.P.Q.2D (BNA) 1317

to develop evidence relating to the likelihood of confusion. The existing Stipulated Protective Order does not address this situation.

Defendants rely on *Volkswagenwerk A.G. v. Westburg, 260 F. Supp. 636, 151 U.S.P.Q. (BNA) 544 (E.D. Pa. 1966),* for the proposition that opposing counsel should not be permitted to contact customers in an intellectual property action. That case is on point and has never been overruled, yet Plaintiff criticizes it as old and discredited. The cases cited by Plaintiff to overcome the Volkswagenwerk case were not intellectual property cases; they are distinguishable for that reason and because their unique facts [*4] necessitated contact with customers. Moreover, Defendants have cited the renown treatise on trademark law, 1a Jerome *Gilson, Trademark Protection and Practice § 8.05*[4], which indicates that Volkswagenwerk is still applicable in intellectual property cases. Id. ("prohibit one party from contacting the customers and former customers of the other party on the subject matter of the action.").

Significantly, Plaintiff's reason for contacting Defendants' customers is the same reason that was rejected in Volkswagenwerk: "Plaintiff argues that its questioning of defendant's customers is merely discovery, to shed light on... customer confusion...." *151 U.S.P.Q. (BNA) at 545.* But, evidence of actual confusion is not a necessary element of proof to Plaintiff's case. Id.; *Playboy Enter., Inc. v. P.K. Sorren Export Co. Inc. of Fla., 546 F. Supp. 987 (S.D. Fla. 1982).* Moreover, the type of evidence that Plaintiff hopes to gather is not reasonably calculated to lead to admissible evidence. *Fed.R.Civ.P. 26; Glen Raven Mills, Inc. v. Ramada Int'l Inc., 852 F. Supp. 1544, 31 U.S.P.Q.2D (BNA) 1734( M.D. Fla. 1994)*(evidence of actual confusion acquired after prompting by plaintiff is [*5] inadmissible as hearsay and as lacking foundation). The customer list need not be produced.

## IV. Sales Summary Marked "CONFIDENTIAL - ATTORNEY EYES ONLY."

The "Sales Analysis Report by Item" does not contain any information identifying defendants' customers. No harm can befall defendants from the dissemination of the Sales Analysis Report to plaintiff himself and his non-lawyer representatives. Defendants' bald claim that this information is confidential is not sufficient to justify it being withheld from plaintiff and his non-lawyer representatives. Thus, these documents must be redesignated as "Confidential" rather than "For Attorneys' Eyes Only."

**WHEREFORE,** it is hereby **ORDERED AND ADJUDGED:**

1. Defendants shall, within ten (10) days, conduct a reasonable inquiry to determine whether all responsive documents have been produced with respect to Requests for Production Nos. 1, 3, 7, and 9, and serve supplement responses including a certification of same and a list of documents withheld;

2. The Motion to Compel as to Defendants' customer list is DENIED.

3. The "Sales Analysis Report By Item" (Document Nos. 000001-000006) is hereby redesignated, pursuant [*6] to the terms of the Protective Order as "Confidential" and shall no longer be considered "For Attorneys'Eyes Only."

**DONE AND ORDERED** this 4 day of March, 1997.

LINNEA R JOHNSON

UNITED STATES MAGISTRATE JUDGE

*Tab B*

LEXSEE 2004 US DIST LEXIS 9771

**MURATA MANUFACTURING CO., LTD., Plaintiff, v. BEL FUSE INC. and BEL FUSE LTD., Defendants.**

**Case No. 03 C 2934**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 9771*

**May 25, 2004, Decided**
**May 26, 2004, Docketed**

**SUBSEQUENT HISTORY:** Motion denied by *Murata Mfg. Co. v. Bel Fuse Inc., 2004 U.S. Dist. LEXIS 19840 (N.D. Ill., Sept. 30, 2004)*

**DISPOSITION:** [*1] Plaintiff's Renewed Motion to Compel denied, and Defendants' Motion For Protective Order granted.

**COUNSEL:** For MURATA MANUFACTURING CO., LTD., plaintiff: Michael E. Barry, Peter J. Meyer, Brian C. Rupp, Patrick Joseph Kelleher, Gardner Carton & Douglas LLP, Chicago, IL. Andrea Maria Augustine, Gardner Carton & Douglas LLP, Chicago, IL.

For BEL FUSE INC, defendant: David J. Sheikh, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL. Martin G. Raskin, Joshua L. Raskin, Andres N Madrid, Steinberg & Raskin P.C., New York, NY.

For MURATA MANUFACTURING CO., LTD., counter-defendant: Michael E. Barry, Brian C. Rupp, Patrick Joseph Kelleher, Gardner Carton & Douglas LLP, Chicago, IL. Andrea Maria Augustine, Gardner Carton & Douglas LLP, Chicago, IL.

For BEL FUSE INC, counter-claimant: David J. Sheikh, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL. Martin G. Raskin, Joshua L. Raskin, Andres N Madrid, Steinberg & Raskin P.C., New York, NY.

**JUDGES:** Geraldine Soat Brown, United States Magistrate Judge. Judge Joan B. Gottschall.

**OPINIONBY:** Geraldine Soat Brown

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

Before the court are Plaintiff's Renewed [*2] Motion to Compel Bel Fuse Inc. to Produce Documents Identifying Customers [dkt 56] and Defendants' Motion For Protective Order that Defendant Not Be Required to Identify its Customers and to Preclude Plaintiff from Discussing this Litigation with Defendant's Customers [dkt 79]. The parties also have submitted supplemental briefs on the issues contained in their motions. [Dkt 85, 86.] For the reasons set forth below, Plaintiff's Motion is DENIED and Defendants' Motion is GRANTED.

**Background**

This case concerns Murata's Patent No. 5,069,641 ("the '641 patent"). (Am. Compl. P7.) According to Murata, the patent claims a "modular jack," within which is a "printed board" containing an "electronic element for suppressing noise." (Murata's Br. Supp. Renewed Mot. Compel ("Pl.'s Br.") at 3). Murata has accused the defendants (collectively, "Bel Fuse") of infringing its '641 patent. (*Id.* at 4.) Murata defines the term "accused products" to mean Bel Fuse's modular jacks, including the "belMag" modular jack, although it is not clear whether all of Bel Fuse's modular jacks contain a noise suppression element. (Murata's Br. Supp. Second Mot. Compel: Financial Information, Ex. A, [*3] Murata's First Set Requests Prod. Bel Fuse, Definitions 5 and 6.) [Dkt 35.] Bel Fuse describes the item at issue as an integrated connector module or "ICM." (Bel Fuse Br. Supp. Mot. Protective Order ("Defs.' Br."), Decl. Dennis Ackerman P3). [Dkt 79.] The ICM or modular jack is useful in a variety of devices, such as computers, modems, routers, data network switches and telephones. (Pl.'s Br. at 3.) Bel Fuse sells ICMs on an active basis to between 50 and 100 U.S. customers. (Ackerman Decl. P7.) Murata states

Case 1:05-cv-11067-PBS    Document 57    Filed 03/10/2006    Page 7 of 21

Page 2
2004 U.S. Dist. LEXIS 9771, *

that it does not sell any product made according to the '641 patent. (Pl.'s Br. at 4.) However, Bel Fuse asserts that Murata licenses its patent to at least one company that markets items containing the patented feature. (Bel Fuse Suppl. Br. Supp. Mot. Protective Order at 1-2.) [Dkt 85.] Bel Fuse has filed affirmative defenses and counterclaims alleging, *inter alia,* that the claims of the '641 patent are invalid as obvious.

Murata sought in discovery "documents. . . showing all [Bel Fuse's] sales, by volume (in units and dollars), by price, by model, by date, and by customer of Modular Jacks to date." (Murata's First Set Requests Prod. Bel Fuse, Request 4.) In its [*4] present motion, Murata seeks the identity of Bel Fuse's ICM customers and the relative sizes of their purchases of ICMs. (Pl.'s Br. at 1-2.) Murata knows some of Bel Fuse's customers because they are listed on Bel Fuse's website, and some of those customers are apparently also customers of Murata. But Murata does not know all of Bel Fuse's customers and does not know if the common customers purchase ICMs from Bel Fuse or the quantity of such purchases. Murata asserts that such information is relevant to commercial success and long-felt need, two of the "secondary considerations" of nonobviousness upon which Murata intends to rely to counter Bel Fuse's obviousness defense. (Pl.'s Br. at 2, 4.) n1 Bel Fuse has moved for a protective order requesting that it not be required to disclose the identity of its customers and that Murata be precluded from discussing any aspect of this litigation with any entity known to Murata to be an ICM customer of Bel Fuse. (Defs.' Mot. at 1.)

n1 In its Second Motion to Compel, Murata argued that it needed the names of Bel Fuse's customers because Bel Fuse had provided inconsistent financial information relating to damages. Bel Fuse was subsequently ordered to supplement its discovery responses to provide Murata with information relating to damages. (Order, Feb. 20, 2004.) [Dkt 66.] Thus, the only remaining purpose for which Murata seeks the identity of Bel Fuse's customers is to respond to the obviousness defense.

[*5]

**Legal Background**

In order to determine obviousness, factual inquires must be made concerning: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) secondary considerations of nonobviousness. *Ruiz v. A.B. Chance Co., 234 F.3d 654, 662-63 (Fed. Cir. 2000)* (citing *Graham v. John Deere Co., 383*

*U.S. 1, 17-18, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966)).* If the alleged infringer succeeds in establishing a prima facie case of obviousness based on the first three factors, the burden of production shifts to the patent holder to offer objective indicia of nonobviousness, such as evidence of the commercial success of the invention (or alleged infringing product) or satisfaction of a long-felt need. *Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1350 (Fed. Cir. 2000); Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1572 (Fed. Cir. 1996).*

When a patent holder asserts that commercial success supports its contention of nonobviousness, there must be a sufficient relationship between the commercial success [*6] and the patented invention. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392 (Fed. Cir. 1988).* "The term 'nexus' is often used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the determination of nonobviousness." *Id.* The burden of proof as to the nexus resides with the patent holder, and, as such, the patent holder must come forward with evidence sufficient to constitute a prima facie case of nexus. *Id.* A prima facie case of nexus is generally established when the patent holder "shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent." *Id.* n2 The analysis becomes more complex when the patented invention is only a component of the commercially successful product. *Id.*

n2 *See also In re Huang, 100 F.3d 135, 140 (Fed. Cir. 1996)* ("Even assuming that [the patent holder] had sufficiently demonstrated commercial success, that success is relevant in the obviousness context only if there is proof that the sales were a direct result of the unique characteristics of the claimed invention -- as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter. In other words, a nexus is required between the sales and the merits of the claimed invention." (internal citation omitted)); *Rogers v. Desa Int'l., Inc., 166 F. Supp. 2d 1202, 1211 (E.D. Mich. 2001)* ("In order for commercial success to rebut the compelling evidence of obviousness, plaintiff must establish a factual nexus between the features of the claimed invention and its commercial success. 'Such a nexus is required to prove that the commercial success is not ascribable to other irrelevant commercial and economic factors.'" (internal quotation omitted)).

[*7]

However, if the marketed product embodies the claimed features, and is coextensive with them, a nexus is presumed and the burden shifts to the party asserting obviousness (the alleged infringer) to present evidence to rebut the presumed nexus. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1130 (Fed. Cir. 2000).* The alleged infringer may rebut the presumed nexus by showing that the product's commercial success was attributable to factors unrelated to the technology claimed in the patent, such as advertising, packaging, or superior workmanship. *Id. See also J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co., 106 F.3d 1563, 1571 (Fed. Cir. 1997).*

The effect of all of this is that secondary considerations of nonobviousness may become relevant if Murata shows that Bel Fuse's product infringes Murata's patent, Bel Fuse asserts the defense of obviousness, and there is a question as to the nexus between the commercial success of Bel Fuse's product and the infringing features of the product.

**Parties' Arguments**

The heart of the controversy is that Murata does not simply want the names of Bel Fuse's customers, Murata wants [*8] to contact those customers and depose them for this litigation. n3 Murata argues that testimony of customers' reasons for purchasing the claimed invention is highly relevant to commercial success or whether the invention satisfied a long-felt need, and that, indeed, it is reversible error for a district court to fail to consider customer testimony on the issue of obviousness. (Pl.'s Br. at 2, 4-6.) Murata suggests that sales and market share evidence may not be sufficient to establish the required nexus between the commercial success of Bel Fuse's product and the patented features of the product, and that it would be unfairly prejudiced if Bel Fuse were permitted to "hide" evidence of commercial success and long-felt need since it was Bel Fuse's decision to raise the obviousness defense. (Pl.'s Br. at 2, 6.)

n3 Bel Fuse has stated that it has no objection to disclosing the identities of its ICM customers to Murata under the terms of the court's Confidentiality Order "so long as Murata cannot subpoena, or otherwise contact, those customers in connection with this law suit [sic]." (Defs.' Reply at 1.) However, Murata will not agree to that condition; thus, Murata is incorrect in claiming that Bel Fuse's statement means that Murata's motion is "unopposed." (Murata Suppl. Submission at 4.)

[*9]

Balanced against those arguments is Bel Fuse's concern, supported by the declaration of Bel Fuse's Vice President of Operations, Dennis Ackerman, that any contact by Murata with Bel Fuse's ICM customers will have a "catastrophic" effect on Bel Fuse in the marketplace. (Ackerman Decl. P9.) Bel Fuse asserts that, given the market for ICMs, it would be easy for its customers to stop buying ICMs from Bel Fuse if the customer is served with a subpoena requiring it to appear for deposition or produce documents concerning its purchases from Bel Fuse. (Defs.' Br. at 9-10.) n4 Mr. Ackerman asserts that ICMs have become fungible commodities in the connector industry, and that there are several connector suppliers who offer ICMs very similar to those sold by Bel Fuse and at competitive prices. (Ackerman Decl. P5.) Bel Fuse further argues that "it has taken considerable effort, time and money for [Bel Fuse] to have acquired these customers, and if the list of [Bel Fuse's] ICM customers were publicized to [Bel Fuse's] competitors, it would seriously harm [Bel Fuse] from a competitive standpoint." (Defs.' Br. at 8) (citing Ackerman Decl. P3.)

n4 In further support of why its customers will want to stop purchasing ICMs from Bel Fuse, Bel Fuse argues that its customers "would also be considered by Murata to be infringers." (Defs.' Br. at 12.)

[*10]

Murata responds that Bel Fuse's customers are "sophisticated companies" who will not engage in a "mass customer flight" upon learning that Bel Fuse has been sued for patent infringement. (Pl.'s Br. at 10-11.) It argues that customers such as Cisco, which is identified on Bel Fuse's website, "receive *Rule 45* subpoenas on a regular basis" and "will know that the resolution of this litigation . . . will protect them from suit by Murata." (Murata's Opp'n Bel Fuse's Mot. and Reply Supp. Renewed Mot. Compel ("Pl.'s Reply") at 7.) [Dkt 75.] Murata claims that, in any event, Bel Fuse's customers already know (or will know) of the lawsuit based on a disclosure in Bel Fuse's annual report, and they are already "involved" in the litigation as they are potential witnesses with discoverable information. (Pl.'s Br. at 11; Pl.'s Reply at 8.) Murata further argues that Bel Fuse should not be concerned that it will steal Bel Fuse's sales or try to gain a competitive advantage because it does not compete in the relevant market. (Pl.'s Br. at 11; Pl's Reply at 5.) Lastly, Murata argues that Bel Fuse's concerns should

be alleviated by the Confidentiality Order already in place. (Pl.'s Reply at 2.) [*11]

Bel Fuse replies that the Confidentiality Order does not preclude Murata from serving subpoenas on Bel Fuse's customers, which is one of its main concerns. (Defs.' Reply at 7.) It further argues that, although some of Bel Fuse's customers may know of the lawsuit, they are not "actively involved," and will only be so if Murata succeeds in pursuing its "subpoena-serving campaign." (Id. at 6-7.) Bel Fuse also argues that the fact that Murata is not a competitor is irrelevant to its concerns regarding its loss of customers, who are free to take their business to the other competitors in the market should they see reason to do so. (Id. at 6-7.) Bel Fuse hints that Murata's intention to subpoena Bel Fuse's customers is an attempt to create leverage in settlement discussions. (Id. at 2.)

In addition to its arguments regarding the harm that it will suffer if required to turn over its customer lists, Bel Fuse argues that Murata's request should be denied because "there are many other ways of establishing nexus that are available to Murata." (Defs.' Mot. P6; Defs.' Br. at 10-11.) Bel Fuse argues that nexus can be shown through testimony by experts in the field; testimony by the [*12] patentee, Murata; evidence that other third parties, such as independent industry testing organizations, recognize the advantages of the patented features; evidence from Bel Fuse itself, such as whether Bel Fuse advertises the patented features or discusses the patented features with its customers; and evidence from Murata's purported licensee under the patent-in-suit, as well as its licensee's customers. (Defs.' Br. at 11; Defs.' Reply at 12-14; Defs' Suppl. Submission at 1-2.)

Murata argues that it is entitled to all relevant evidence of commercial success, regardless of the existence of other sources of evidence on that issue. (Pl.'s Reply at 12-13.) Murata also argues that experts will not be very helpful if they cannot examine the customers' motivations for purchasing the ICMs and that it is not aware of any independent organization that has commented on the advantages of the patented features. (Pl.'s Reply at 11-12.)

**Analysis**

Courts have considered the following as relevant to and probative of commercial success: volume of sales, evidence of share in the market place, growth in market share, replacing earlier units sold by others, dollar amounts, nexus between sales [*13] and the merits of the invention, evidence that the applicant has been able to license the invention, and evidence that licensees have been able to sell the product. *Chubb Integrated Sys. Ltd. v. Natl. Bank of Washington*, 103 F.R.D. 52, 57 (D.D.C. 1984) (citing *Kansas Jack Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983)). Commercial success can some-

times be established by sales evidence alone. *See, e.g., Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1360-61 (Fed. Cir. 1999) (stating that "based on [plaintiff's] sales evidence, the jury reasonably could have found that the invention enjoyed commercial success. . . . Although sales figures couple with market data provide stronger evidence of commercial success, sales figures alone are also evidence of commercial success."); *Rogers*, 166 F. Supp. 2d at 1211-12 (stating that, in case where patent holder had not marketed his invention, the alleged infringer's sales were "two and a half times their projected sales undeniably indicating the commercial success of the accused product"); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997); [*14] cf. *Minnesota Mining & Mfg. Co. v. Smith & Nephew, PLC*, 1992 U.S. Dist. LEXIS 22785, No. 3-91 CIV 274, 1992 WL 464352 at *2 (D. Minn. July 27, 1992) (Alsop, J.) (requiring defendant to provide data summarizing its sales of alleged infringing product based on its relevance to commercial success).

Murata has cited cases in which commercial success was established by sales and market share information, including the sales and market share information of the alleged infringer. *See, e.g., Brown & Williamson*, 229 F.3d at 1130 (relying on the market share of the alleged infringer as evidence of commercial success); *Gambro Lundia*, 110 F.3d at 1579 (relying on the sales of the alleged infringer as evidence of commercial success). Murata also has cited cases in which commercial success was established by customer testimony. *See, e.g., Ruiz*, 234 F.3d at 668; *Winner*, 202 F.3d at 1350-51; *Pro-Mold & Tool*, 75 F.3d at 1574; *Tate Access Floors Inc. v. Interface Architectural Resources*, 185 F. Supp. 2d 588, 604 (D. Md. 2002). Murata has not, however, cited any cases in which the *customers of the alleged infringer* [*15] provided the testimony, or where the alleged infringer, as opposed to the patent owner, was required to turn over the names of its customers to assist the patent owner in proving commercial success. n5 Nor has this court's research disclosed any such cases. The same is true with respect to the secondary consideration of long-felt need; specifically, the cases cited by Murata involved testimony from the *patent holder's customers* about their long-felt need, not the alleged infringer's customers. *See, e.g., Ashland Oil Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 307 (Fed. Cir. 1985).

---

n5 In *J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, No. CV-84-4438 (EHN), 1987 WL 17084 at *5 (E.D. N.Y. Aug. 31, 1987) (Caden, M.J.), a case not cited by Murata, the court held that before the *patent holder* (not the alleged infringer) would be required to produce its customer lists pursuant to an interrogatory requesting

information pertaining to commercial success, the parties must agree to a protective order that would safeguard the patent holder's interest in preserving the confidentiality of its customer lists.

[*16]

Conversely, Bel Fuse has cited cases wherein courts have denied motions to compel or granted protective orders to prevent the disclosure of a party's customers or to preclude a party from contacting customers of the other party, on the basis that the potential harm to the party from whom discovery is sought outweighs the importance of the information to the party seeking that information. *See* Defs.' Br. at 13-14. Several of those cases involved facts similar to those present here. For example, in *Joy Technologies, Inc. v. Flakt, Inc., 772 F. Supp. 842, 849 (D. Del. 1991)*, the defendant in a patent infringement suit was granted a protective order precluding the plaintiff from seeking discovery from the defendant's customers. The court observed that the parties were "fierce competitors" and that plaintiff had not demonstrated that it could not obtain the same information from the defendant itself. *Id. See also Chubb Integrated Sys., 103 F.R.D. at 57* (denying defendant's request for customer identity information but granting request for sales information as relevant to commercial success in patent infringement case and stating, "to the extent that [*17] [the request] seeks the number of customers, but not the names, it is an appropriate inquiry"); *Volkswagenwerk Aktiengesellschaft v. Westburg, 260 F. Supp. 636, 637 (E.D. Pa. 1966)* (granting a protective order directing plaintiff to refrain from initiating any contact with customers of defendant regarding subject matter of litigation or dealings between defendant and its customers in trademark infringement case); *May Coating Tech., Inc. v. Illinois Tool Works, 157 F.R.D. 55, 57 (D. Minn. 1994)* (ordering patent holder to refrain from directly contacting alleged infringer's customers for any purpose relating to litigation). *See also Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd., 2002 U.S. Dist. LEXIS 14466, No. 02 Civ. 2605 (AGS) (JCF), 2002 WL 1808419 at *3 (S.D. N.Y. Aug. 7, 2002)* (Francis, M.J.) (denying defendant's request for information such as individual customer complaints and customer returns as it "is not directly linked to commercial success").

The issue on the present motions is whether Murata's interest in contacting Bel Fuse's customers to obtain evidence to respond to Bel Fuse's obviousness defense outweighs Bel Fuse's concern about the effect [*18] on its sales of Murata's interrogating and subpoenaing those customers. Particularly significant is the fact that Murata is unable to cite a single case in which testimony from a customer of the alleged infringer was used to show

commercial success or long-felt need. In contrast, Bel Fuse has demonstrated a legitimate concern that its business could suffer substantial harm if its customers are dragged into this case as witnesses. Further tilting the scale in favor of Bel Fuse is the fact that there are other sources of evidence that Murata may use to prove commercial success and long-felt need, including the possibility of obtaining testimony from the customers of Murata's licensee and investigating the information available from Bel Fuse about how it markets its ICMs. Murata has not demonstrated that it has exhausted those options. Moreover, future decisions by the district judge could lead to summary judgment on the issue of infringement or invalidity which could eliminate the need for the discovery of Bel Fuse's customers altogether. Balancing the demonstrated potential harm to Bel Fuse against Murata's claimed need, Plaintiff's Renewed Motion to Compel is denied. n6

n6 Murata suggested that before deciding to grant Bel Fuse's Motion for Protective Order, the court consider limiting the number of customers Murata may contact to common customers only. (Pl.'s Reply at 14.) The court was hopeful that the parties could agree on a few common customers that could be jointly contacted and surveyed. However, Bel Fuse would not agree to such a procedure, arguing that it would not "even the playing field," as the customers who would be contacted only purchase the product at issue from Bel Fuse. (Defs.' Suppl. Submission at 3.) Murata likewise would only agree to this procedure if "a meaningful percentage" of the customers of Bel Fuse were also common customers, and further submitted that only document and deposition discovery would likely be possible, and not a survey. (Pl.'s Suppl. Submission at 3-4.) Thus, this suggestion does not appear to be a workable solution for the parties at this time.

[*19]

Additionally, Defendants' Motion For Protective Order is granted. Murata asserts that precluding it from contacting Bel Fuse's customers that Murata knows about to obtain evidence in this litigation is somehow a violation of Murata's *First Amendment* rights. (Pl.'s Reply at 2.) However, as Murata acknowledges, it is not a competitor of Bel Fuse, and there is no commercial reason for it to know about or contact Bel Fuse's customers. The only reason that Murata has advanced for learning the identity of Bel Fuse's customers or contacting those customers is for discovery in this lawsuit. *Federal Rule of Civil Procedure 26(c)* provides the court with authority to regulate discovery in order to avoid "annoyance, em-

Case 1:05-cv-11067-PBS    Document 57    Filed 03/10/2006    Page 11 of 21

Page 6
2004 U.S. Dist. LEXIS 9771, *

barrassment, oppression, or undue burden or expense." *Fed. R. Civ. P. 26(c).* That authority has from time to time been exercised by federal courts to prohibit one party from contacting the customers of its adversary, as demonstrated by the cases discussed above. Even giving Murata the benefit of assuming that its purpose in contacting Bel Fuse's customers would be to conduct discovery leading to evidence [*20] and not for an improper purpose such as settlement leverage, Bel Fuse has come forward with a factual basis demonstrating that there is a significant risk that it customer relationships would, in fact, be disrupted. In light of the alternatives available to Murata, and the absence of any precedent for the evidence Murata seeks, at this point there is no justifiable reason for requiring Bel Fuse to incur that risk. Murata is hereby ordered not to contact any customers of Bel Fuse Inc. or Bel Fuse, Ltd for the purpose of discussing this lawsuit, seeking information relating to the issues in this lawsuit or taking discovery in this lawsuit until further order of the court.

**Conclusion**

While it is conceivable that at a later stage of this litigation Murata may be able to show a valid reason for being permitted some limited discovery from Bel Fuse's customers, no need has been shown on the present state of the record, and the risk of injury to Bel Fuse is demonstrated and potentially irreparable. Thus, for the foregoing reasons, Plaintiff's Renewed Motion to Compel is denied, and Defendants' Motion For Protective Order is granted.

IT IS SO ORDERED.

Geraldine Soat Brown

United [*21] States Magistrate Judge

May 25, 2004

*Tab C*

LEXSEE 2001 TTAB LEXIS 158

The Administration of the Estate of Tupac Shakur v. Thug Life Clothing, Co.

Cancellation No. 28,968

Trademark Trial and Appeal Board

*2001 TTAB LEXIS 158*

February 28, 2001, Decided

**OPINION:**

[*1]

This case now comes up on respondent's motion (filed November 9, 2000) to compel discovery responses. The motion has been fully briefed.

Respondent's motion is denied in part and granted in part as discussed below.

*Respondent's Interrogatories*

Petitioner, in response to respondent's motion to compel, timely objected to the interrogatories as exceeding the limit provided for in Trademark Rule 2.120(d)(1).

Petitioner was acting entirely within the provisions of Trademark Rule 2.120(d)(1) when it elected to object to the number of interrogatories rather than answering them. Accordingly, the sole question to be determined is whether the interrogatories served upon petitioner exceed seventy-five, counting subparts.

In determining whether a set of interrogatories exceeds this limit, each subdivision of separate questions, whether set forth as a numbered or lettered subpart, or as a compound question or a conjunctive question, such as "sales and advertising" or "adoption and use," is counted as a separate interrogatory. See Jan Bell Marketing Inc. v. Centennial Jewelers Inc., 19 USQP2d 1636, 1637 (TTAB 1990). On the other hand, an interrogatory that requests only information [*2] with respect to one issue may simply be counted as one interrogatory. See, Carla Calcagno, *Tips from the TTAB: Discovery Practice Under Trademark Rule 2.120(d)(1), 80 Trademark Rep. 285, 288-289 (1990).*

Applying the above guidelines to respondent's first set of interrogatories, and looking at the substance of the interrogatories, the Board finds that the interrogatories exceed the limitation imposed by Trademark Rule 2.120(d)(1). Accordingly, petitioner's motion to compel responses to the interrogatories is denied.

In view of the above, respondent will be allowed time to serve on petitioner, interrogatories within the limitations provided for in Trademark Rule 2.120(d)(1).

With regard to petitioner's other objections, we note that entry of the protective agreement renders moot the objections based on the confidentiality of the information.

*Respondent's Request for Documents*

Respondent generally requests "confirmation either that the production to date is in fact complete and no additional documents remain to be produced, or a date by which production of the remaining responsive documents will be produced." In addition, respondent requests that [*3] petitioner respond to document requests nos. 1, 2, 3, 7, 8, 9, 11, 13, 19, 20, 21, 22 and 28.

Respondent's motion to compel responses to respondent's request for production of documents is granted to the extent indicated below.

In the event respondent re-serves interrogatories in compliance with Trademark Rule 2.120(d)(1), petitioner must produce documents in response to request no. 1.

2001 TTAB LEXIS 158, *

Petitioner must produce documents in response to request nos. 2, 3, 7, 8, 9, 19, 20, 21, 22 and 28 with the following limitations: documents covered by attorney-client privilege need not be produced; customer lists are not discoverable; and representative samples are sufficient for requests that involve a large number of documents.

Document request no. 11 is overbroad and document request no. 13 is too vague, therefore, petitioner need not respond to those requests.

Petitioner must confirm that its responses are complete.

Finally, respondent's requests for attorneys fees is not well taken. It is well established that the Board does not have authority to award attorneys' fees, other expenses to any party. See generally 37 CFR § § 2.120(f); 2.120(g)(1); 2.120(h); and 2.127(f). See also *Nabisco Brands Inc. v. Keebler Co., 28 USPQ2d 1237 (TTAB 1993);* [*4] *Scotch Whiskey Ass'n v. United States Distilled Products Co., 18 USPQ2d 1391 (TTAB 1991),* rev'd on other grounds, *952 F.2d 1317, 21 USPQ2d 1145 (Fed. Cir. 1991); Paolo's Associates Limited Partnership v. Paolo Bodo, 21 USPQ2d 1899* (Comm'r 1990); *Fort Howard Paper Co. v. C.V. Gambina Inc., 4 USPQ2d 1552 (TTAB 1987); Luehrmann v. Kwik Kopy Corp., 2 USPQ2d 1303 (TTAB 1987); Anheuser-Busch, Inc. v. Major Mud & Chemical Co., 221 USPQ 1191 (TTAB 1984); Fisons Ltd. v. Capability Brown Ltd., 209 USPQ 167 (TTAB 1980);* and *MacMillan Bloedel Ltd. v. Arrow-M Corp., 203 USPQ 952 (TTAB 1979).*

**Respondent's Attorney's Request to Withdraw**

The request, filed on February 5, 2001, to withdraw as respondent's counsel of record in this case is hereby denied without prejudice because it fails to comply with the requirements of Trademark Rule 2.19(b) and Patent and Trademark Rule 10.40.

Specifically, the motion does not include a statement that [*5] all papers and property that relate to the proceeding and to which the client is entitled have been delivered to the client. See Patent and Trademark Rule 10.40, 37 CFR § 10.40. *Cf. In re Legendary Inc., 26 USPQ2d 1478* (Comm'r 1992).

Once respondent's counsel demonstrates compliance with the above requirement, permission to withdraw will be granted.

In view thereof, counsel is allowed **THIRTY DAYS** from the mailing date of this order to submit a motion which complies with Trademark Rule 2.19(b) and Patent and Trademark Rule 10.40, failing which proceedings will go forward with the current attorneys of record.

Proceedings herein are **suspended** pending possible response to this order. The parties will be notified by the Board when proceedings are resumed, and appropriate dates, including respondent's time to serve interrogatories in compliance with Trademark Rule 2.120(d)(1) and petitioner's time to serve its complete responses to respondent's discovery requests in accordance with this order, will be reset. In addition, upon resumption trial dates, beginning with petitioner's testimony period, will be reset.

A copy of this order has been sent [*6] to all persons listed below.

Karen Kuhlke

Attorney, Trademark Trial and Appeal Board

*Tab D*

LEXSEE 1997 TTAB LEXIS 492

Daniel L. Kegan, dba Elan Associates v. Mark S. Lane

Opposition No. 102,966

Trademark Trial and Appeal Board

*1997 TTAB LEXIS 492*

December 1, 1997, Decided

**OPINION:**
[*1]

THIS DISPOSITION IS NOT CITABLE AS PRECEDENT OF THE T.T.A.B.

Opposer's motion, filed August 20, 1997, to compel responses to certain interrogatories and document requests is granted in part and denied in part as indicated below.

With respect to interrogatory no. 2, the names of a party's customers constitute confidential information and are generally are not discoverable even under a protective order. n1

n1 See *Johnston Pump/General Valve Inc. v. Chromalloy American Benjamin Ansehl Co., 229 USPQ 147 (TTAB 1985)* and *Varian Associates v. Fairfield-Noble Corporation, 188 USPQ 581 (TTAB 1975).* There are situations which dictate a need for the information outweighing the justification for protecting customer confidentiality. Such a situation would be where the issue of abandonment has been raised. See *Fisons Ltd. v. Capability Brown Limited, 209 USPQ 167 (TTAB 1980).* However, abandonment does not appear to be an issue in this case.

Interrogatory no. 6 is not understood.

With respect to interrogatory no. 8(9), applicant is required to identify any so-called "shadow" counsel. Questions pertaining to the [*2] fact of consultation or employment of an attorney, including date and general nature of the legal services performed, the identity of the lawyer and conditions of employment are not protected by the attorney-client privilege. However, applicant is not required to describe the attorney's training and/or experience.

With respect to document request 7, to the extent that opposer is seeking documents which relate to opinions of legal counsel, the information sought may be privileged. The document request appears to be otherwise vague and irrelevant. n2

n2 Information as to whether applicant has sought a legal opinion with respect to its use of the involved is discoverable but that is not the question asked by this request.

With respect to document request no. 11, a party is not required, during discovery, to specify the evidence it intends to present at trial. See, for example, *Charrette Corp. v. Bowater Communication Papers Inc., 13 USPQ2d 2040 (TTAB 1989).*

With respect to document requests nos. 14(15), 14(18) and 14(19), applicant is required to furnish sales figures (by number of customers and number of units) and advertising, promoting and marketing figures [*3] for each year given in round numbers, only for the involved mark as used in connection with the services identified in the application.

Document request no. 14(16) is not understood.

Document request no. 14(17) is irrelevant.

Accordingly, the motion to compel is denied as to interrogatories nos. 2, 6, 7 and 11; and document requests nos. 14(16) and 14(17). The motion to compel is granted to the extent indicated above as to interrogatory no. 8(9) and document requests nos. 14(15), 14(18) and 14(19).

To the extent, if any, that applicant claims that the information sought or the documents requested are confidential, the parties are allowed until thirty days from the mailing date of this order to confer with each other and work out a suitable protective under which such confidential information and materials are to be provided. n3 Then applicant can provide any such information and materials pursuant to the terms of the protective order.

n3 For further information concerning provisions which are typically included in protective agreements, see: Rany L. Simms, TIPS FROM THE TTAB: Stipulated Protective Agreements, *71 TMR 653 (1981).*

Applicant is allowed until [*4] twenty days thereafter to satisfy opposer's discovery needs to the extent indicated in the above discussion.

Opposer's uncontested motion for an extension of the discovery period is granted except that the discovery period is extended for sixty rather than ninety days.

**IN EACH INSTANCE,** a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party **WITHIN THIRTY DAYS** after completion of the taking of testimony. Rule 2.125.

THE PERIOD FOR DISCOVERY TO CLOSE:                              January 31, 1998

Testimony period for party in
position of plaintiff to close                                           April 1, 1998
(opening thirty days prior thereto)

Testimony period for party in
position of defendant to close                                          May 31, 1998
(opening thirty days prior thereto)

Rebuttal testimony period to close                                      July 15, 1998
(opening fifteen days prior thereto)

Briefs shall be filed in accordance with Rule 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Rule 2.129.

Terry E. Holtzman

Attorney, Trademark

Trial and Appeal Board

(703) 308-9330 ext. 223

*Tab E*

LEXSEE

Daniel L. Kegan, dba Elan Associates v. Marc S. Lane

Opposition No. 102,966

Trademark Trial and Appeal Board

*1998 TTAB LEXIS 276*

April 15, 1998, Decided

**OPINION:**

[*1]

Opposer filed a combined motion to compel and motion for an extension of the discovery period to which no response from applicant was received by the Board. On December 1, 1997, the Board issued an order granting in part and denying in part opposer's motion to compel and granting its motion for an extension of the discovery period as uncontested. Subsequent to the mailing date of that order, applicant's timely objection to opposer's combined motion was associated with the file for this case. n1

> n1 The Board has no record of having received applicant's original response to the motion to compel. A copy of the response, bearing a certificate of Express Mail dated September 8, 1997, was faxed to the Board on December 5, 1997.

We will reconsider the December 1 order in light of applicant's timely response to the motion. n2

> n2 In view of applicant's timely objection to opposer's motion to compel and our decision to reconsider the December 1 order, opposer's contested motion for sanctions (filed February 2, 1998) for failure to comply with the December 1 order is denied as moot.

At the outset, we note applicant's objections to the timeliness of the motion to compel and on the [*2] basis of opposer's alleged failure to make a good faith effort to resolve the matter before filing the motion. Nevertheless, considering all the circumstances of this case, the Board believes the motion should be decided on its merits.

I. MOTION TO COMPEL

Opposer is seeking further responses to the following discovery requests: Interrogatories nos. 1, 2, 6, 8(9) and document requests nos. 1, 2, 7, 8, 11, 14-19, and 32. n3

> n3 The Board inadvertently omitted any reference to interrogatory no. 1 and document requests nos. 1, 2, 8 and 32 in its December 1 order. The oversight is regretted.

We find as follows:

As to interrogatory nos. 2 and 8(9), and document request no. 11, the December 1 order stands as written.

As to interrogatory no. 1, applicant is required to provide the requested information about Samantha E. Blake. Opposer is entitled to information, including locations, of persons with knowledge of the facts, whether or not a party to the proceeding. See Fed. R. Civ. P. 26(a)(1)(A).

As to interrogatory no. 6 (and even considering the explanation provided by opposer in a communication filed with the Board on January 8, 1997) opposer has failed to demonstrate the relevance [*3] of the information sought by this interrogatory.

Document request no. 1 is acceptable to the extent that opposer has asked for documents relied on or referred to in responding to opposer's interrogatories and admission requests. The document request is sufficient to apprise applicant what documents are required and the subject matter to which the documents sought relate.

However, the portion of the document request which requires applicant to produce documents "relevant to our interrogatory requests or to our admissions requests" is overbroad and vague and may be disregarded in responding to the request.

As to document request no. 2, even though there might be properly discoverable information contained in the resume, the request is overbroad in scope considering the information which opposer is attempting to obtain. If opposer wanted information relating to applicant's educational and work experience, opposer should have asked for that specific information.

As to document request no. 7, applicant has indicated that he has produced all documents in his possession responsive to this request.

As to document request no. 8, opposer has apparently obtained the document requested.

As [*4] to document request nos. 14(15), 14(16), 14(17) and 14(19), the December 1 order stands, except to the extent that with respect to 14(15) and 14(19) the sales information does not have to be provided by number of units. The meaning of a "unit" as it relates to the identified services is unclear and unexplained by opposer. On the other hand, annual sales and advertising figures, stated in round numbers for a party's involved services sold under its involved mark are proper matters for discovery. See, for example, *J.B. Williams Co. v. Pepsodent GmbH, 188 USPQ 577 (TTAB 1975)*.

As to document request no. 14(18), opposer has failed to explain the relevance of the requested information.

Document request no. 32 is duplicative of document request no. 1.

Accordingly, the motion to compel is granted to the extent indicated above (and as indicated in our December 1 order, as appropriate) as to interrogatories nos. 1 and 8(9); and document requests nos. 1 n4, 14(15), 14(16), 14(17) and 14(19). Applicant is allowed until thirty days from the mailing date of this order in which to provide the requested documents and information to opposer.

        n4 Applicant need only produce documents for those interrogatories and admission requests which applicant has answered (even if over an objection) and, if the issue of applicant's objection to a particular interrogatory has been decided by the Board, to the extent that the Board has overruled that objection.

[*5]

The motion to compel is otherwise denied.

Applicant is once again reminded that protective orders under Fed. R. Civ. P. 26(c) are available as to confidential material, and opposer has offered to enter into such an agreement. Also if complete compliance with a particular request for discovery would be unduly burdensome, applicant may provide a representative sampling of the information sought.

## II. MOTION TO EXTEND DISCOVERY PERIOD

The motion for an extension of the discovery period is not well taken inasmuch as opposer has failed to show any cause, much less good cause, for the additional time.

Applicant had responded to opposer's first and second sets of discovery requests (the subjects of the present dispute) by January 13, 1997 and February 15, 1997, respectively. The discovery period, at the time, was set to close on January 13, 1997. Applicant filed a motion to compel responses to his own discovery requests on January 28, 1997 and opposer, in response thereto, pointed out alleged deficiencies in the responses to opposer's discovery requests and requested an extension of the discovery period.

By an order dated June 18, 1997, the Board granted the motion to extend and reset the [*6] discovery period to close on August 20, 1997. Although opposer complained about applicant's assorted failure to sufficiently respond to its discovery requests in its response to applicant's motion to compel, opposer took no further action with respect to the claimed inadequacy of the responses by either conferring with applicant regarding the responses or by filing a motion to

1998 TTAB LEXIS 276, *

compel until contacting applicant on July 22, 1997, more than five months after opposer's receipt of the second set of discovery responses. No explanation for this delay has been offered by opposer. Moreover, during that July 22 conversation, applicant apparently refused to indicate whether he would supplement his discovery responses. Although no further discussions took place between the parties, the motion to compel was not filed by opposer until nearly a month later on August 20, 1997, the last day of the discovery period.

We find that opposer's delay in attempting to obtain discovery from applicant was excessive and unjustified, and that the circumstances do not warrant an extension of the discovery period. Consequently, the motion for an extension of the discovery period is denied.

Trial dates, beginning [*7] with opposer's testimony period, are reset as indicated below.

**IN EACH INSTANCE,** a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party **WITHIN THIRTY DAYS** after completion of the taking of testimony. Rule 2.125.

THE PERIOD FOR DISCOVERY TO CLOSE:              CLOSED

Testimony period for party in
position of plaintiff to close              June 30, 1998
(opening thirty days prior thereto)

Testimony period for party in
position of defendant to close              August 29, 1998
(opening thirty days prior thereto)

Rebuttal testimony period to close          October 13, 1998
(opening fifteen days prior thereto)

Briefs shall be filed in accordance with Rule 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Rule 2.129.

Terry Holtzman

Attorney, Trademark

Trial and Appeal Board

(703) 308-9330 ext. 223